**2014-1617, -1619**

# United States Court of Appeals

# for the Federal Circuit

LEXMARK INTERNATIONAL, INC.,

*Plaintiff-Cross-Appellant*

*v.*

IMPRESSION PRODUCTS, INC.,

*Defendant-Appellant*

QUALITY CARTRIDGES, INC., JOHN DOES, 1-20, BLUE TRADING LLC,
EXPRINT INTERNATIONAL, INC., LD PRODUCTS, INC.,
PRINTRONIC CORPORATION, TESEN DEVELOPMENT (HONG KONG)
CO. LTD., and BENIGNO ADEVA AND HIS COMPANIES,

*Defendants.*

*Appeal from the United States District Court for the Southern District of
Ohio in Case No. 1:10-CV-00564-MRB, Judge Michael R. Barrett*

## RESPONSE AND REPLY BRIEF FOR DEFENDANT-
APPELLANT IMPRESSION PRODUCTS, INC.

EDWARD F. O'CONNOR, ESQ.
THE ECLIPSE GROUP LLP
550 West C Street, Suite 2040
San Diego, California 92101
(619) 239-4340
*Counsel for Appellant*

NOVEMBER 12, 2014

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF RELATED CASES ........................................................1

JURISDICTIONAL STATEMENT .............................................................1

STATEMENT OF THE CASE......................................................................1

SUMMARY OF ARGUMENT .....................................................................2

STANDARD OF REVIEW ...........................................................................3

ARGUMENTS ...............................................................................................3

   I.    INTRODUCTION ...............................................................................3

   II.  RESTRICTIONS ON USE OF PRODUCTS SOLD IN THE
       NORMAL STREAM OF COMMERCE DO NOT PREVENT
       EXTINGUISHMENT OF PATENT RIGHTS...............................4

      A. Lexmark's Arguments Regarding The Decision Of The Lower
         Court Misstate The Decision Of The Lower Court.....................4

      B. Both The Court Below And The District Court In Static II
         Correctly Determined That *Quanta,* At Least In Part, Overturned
         The Law On Restrictions Of Post Sale Use Of Patented Products,
         As Set Forth In *Mallinckrodt*....................................................5

   III. THE DISTRICT COURT DID IN FACT ERR IN DECIDING THAT
       *JAZZ PHOTO* CONTINUES TO BE THE LAW REGARDING
       OVERSEAS FIRST SALES. ..........................................................7

      A. The District Court Did Not Correctly Apply Binding Precedent of
         This Court and the Supreme Court............................................8

      B. *Kirtsaeng* Clearly Overruled *Jazz Photo*..............................11

C. *Jazz Photo* Does Not Represent the Soundest Approach to
International Exhaustion.............................................................................17

CONCLUSION ..................................................................................................20

CERTIFICATE OF SERVICE ...........................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE
REQUIREMENTS ...............................................................................................23

# TABLE OF AUTHORITIES

*Page*

## Cases

*Bobbs-Merrill Co. v. Straus,*
   210 U.S. 339, 28 S. Ct. 722, 52 L. Ed. 1086, 6 Ohio L. Rep. 323 (1908).... 12, 14

*Boesch v. Gräff,*
   133 U.S. 697 (1890) ................................................................... 9, 11

*Bowman v. Monsanto,*
   133 S. Ct. 1761 (2013) ...................................................................12

*Electronics, Inc. v. Pulse Electronics, Inc.,*
   Nos. 2013-1472,-1656 (Oct. 22, 2014) ..............................................9

*General Talking Pictures Corporation v. Western Electric Company*,
   304 U. S. 175 (1938) ........................................................................4

*Jazz Photo Corp. v. International Trade Commission,*
   133 S. Ct. 1351 (2013) ...........................................1, 2, 7-11, 15-18, 20

*John D. Park & Sons Co. v. Hartman,*
   153 F. 24, 5 Ohio L. Rep. 5 (6th Cir. 1907)........................................15

*Kirtsaeng v. John Wiley & Sons, Inc.,*
   133 S. Ct. 1351, 185 L. Ed. 2d 392 (2013)..............1, 7-11, 13, 14, 16, 17, 19, 20

*LifeScan v. Shasta*,
   734 F.3rd 1361 (Fed. Cir. 2013) .......................... 2, 7, 8, 11, 13, 17, 20

*Mallinckrodt, Inc. v. Medipart, Inc.,*
   976 F.2d 700 (Fed. Cir. 1992)...........................................................5

*Princo Corporation v. International Trade Commission*,
   616 F.3d 1318 (Fed. Cir. 2010)..........................................................4

*Quanta Computer, Inc. v. LG Elecs., Inc.,*
   553 U.S. 617 (2008) .......................................................... 2, 5, 6, 20

*Straus v. Victor Talking Mach. Co*.,
   243 U.S. 490, 37 S. Ct. 412, 61 L. Ed. 866,
   1917 Dec. Comm'r Pat. 403 (1917) ............................................................ 14, 15

## Other Authorities

1 E. Coke, *Institutes of the Laws of England* § 360, p. 223 (1628) ........................15

## STATEMENT OF THE ISSUES

1.    The statement of issues regarding Appellant's appeal related to *Jazz Photo* and international sales extinguishment of patent rights has been set forth in Appellant's original brief

2.    As to the cross-appeal, the issue is whether Lexmark's third-party attempted patent restrictions on those who purchase Lexmark prebate cartridges, in the ordinary stream of commerce, are valid.

## STATEMENT OF RELATED CASES

Appellant is not aware of any cases in this or any other court that will be directly affected by or will directly affect this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

Appellant agrees with Appellee that this Court has jurisdiction for the reasons stated by both parties.

## STATEMENT OF THE CASE

In spite of the fact that Appellee's statement of the case is approximately 15 pages long, the issues in this case are very simple and straightforward.

As discussed in Appellant's opening brief, the Court below determined that under *Jazz Photo* patent rights are not extinguished upon first sale by a patentee, if the first sale occurs outside of the United States. It is clear from the express statements made in the *Kirtsaeng* case, decided by the U.S. Supreme Court, as well

as the express statements made by this Court in *LifeScan*, that *Jazz Photo* is no longer the law, and that in fact first sales of patented products extinguish patent rights, without regard to whether those sales are made within the United States.

In Appellee's cross-appeal, the Court below concluded that the U. S. Supreme Court in *Quanta* determined that authorized sales to purchasers in the ordinary stream of commerce terminate patent rights, regardless of attempts by patentee to reserve patent rights.  In particular the Court held that Lexmark's attempted use restrictions through label license did not preserve Lexmark's patent rights.

Both issues are straightforward questions of law.

## SUMMARY OF ARGUMENT

Appellant's summary of argument regarding its appeal was set forth in its appellate brief.

Appellant Impression's summary of argument in response to the cross-appeal of Lexmark is essentially that set forth in its statement of the issues. The facts in this case are not in dispute. Lexmark's products sold in the United States were allegedly subject to Lexmark maintaining the patent rights by a label license.

The Court below correctly recognized that the U.S. Supreme Court in the *Quanta* case determined that an authorized first sale of a product, in the ordinary

stream of commerce, extinguishes the patentee's patent rights to control the use, by the purchaser, of its product.

## STANDARD OF REVIEW

Both parties agree that the standard of review as to both appeals is a question of law subject to *de novo* review.

## ARGUMENTS

## I.     INTRODUCTION

Appellee Lexmark has combined its initial brief in support of its appeal, regarding the Lexmark prebate program, with its opposition to the initial brief of Impression.

Impression will address both issues in this brief.  It will first address the issues relating to the prebate program (II), and will then address the issues relating to Impression's appeal (III).

It is notable that both cases involve U.S. Supreme Court cases that reinforce first sale extinguishment of intellectual property rights, and crack down on patentees' attempts to hold onto patent rights in products they have sold.

## II.  RESTRICTIONS ON USE OF PRODUCTS SOLD IN THE NORMAL STREAM OF COMMERCE DO NOT PREVENT EXTINGUISHMENT OF PATENT RIGHTS

### A.  Lexmark's Arguments Regarding The Decision Of The Lower Court Misstate The Decision Of The Lower Court.

On page 22 of its brief, Lexmark states "a conditional sale subject to a limited license agreement does not exhaust all patent rights."

That is not what the lower Court held. What is missing from Lexmark's statement is the term "in the ordinary stream of commerce".

The lower Court did not hold that, under no circumstances, could a party restrict the use of the patented technology. For example, in *General Talking Pictures Corporation v. Western Electric Company*, 304 U. S. 175 (1938), the patent owner licensed another company the right to manufacture and sell patented sound amplifiers only for private, commercial use. The licensee violated the terms of the license. The United States Supreme Court explained that patentees may provide restrictive licenses to certain uses of licensed technology. This is not the same as saying that a patentee may restrict the rights of purchasers of its products, in the ordinary stream of commerce, to use their purchased products as they see fit.

*Princo Corporation v. International Trade Commission*, 616 F.3d 1318 (Fed. Cir. 2010), relied upon by Lexmark, involved license restrictions that limited the use of the patent to manufacture and produce the product in accordance with

certain standards. It did not concern products that have been placed into the stream of commerce for use in ordinary pursuits of life.

> **B.    Both The Court Below And The District Court In Static II Correctly Determined That *Quanta,* At Least In Part, Overturned The Law On Restrictions Of Post Sale Use Of Patented Products, As Set Forth In *Mallinckrodt***

The Court below as well as the District Court in Static II went into detailed history of the development of the law of patent extinguishment including the law relating to the attempts by patentees to control the use and sale of their products after sales and licensing.

Both courts determined that *Mallinckrodt* allowed post sale label license use restrictions. Lexmark argues that such post sale label license use restrictions are still valid. Accordingly, there is a direct conflict between the law as argued by Lexmark and the law as determined by both of the District Courts that have considered this issue subsequent to the United States Supreme Court decision in *Quanta*.

As noted by the lower Court, the only court to consider the legality of the Lexmark prebate program, subsequent to *Quanta,* is the District Court in Kentucky which issued both of the prior decisions relating to Lexmark's program. In its decision before *Quanta*, that Court determined that the prebate program was valid. In its post *Quanta* decision that Court determined that, in fact, *Quanta* reversed *Mallinckrodt* at least insofar as *Mallinckrodt* purported to hold that attempts to

restrict the use of patented products, sold in the ordinary stream of commerce, were enforceable.

Both lower courts correctly analyzed *Quanta* as saying that an authorized sale to consumers in the ordinary stream of commerce prohibited a patentee from restricting the use of those products by those purchasers, regardless of any attempted restriction, including restriction by label license. As correctly noted by the Court below, in *Quanta* the defendants were fully aware of the attempted use restriction, and yet mere awareness was not sufficient to allow the attempted reservation of patent rights to succeed.

In short, *Quanta* made it very clear that attempts by patentees to retain gossamer threads of control over the use of products, by those that purchase those products, will not be allowed.

Both the lower Court in this case and the lower Court in Static II clearly understood the decision in *Quanta* as prohibiting exactly the kind of conduct in which Lexmark is attempting to engage in the implementation and enforcement of its prebate program.

The lower Court's decision was well reasoned, thorough, and correct.

## III.    THE DISTRICT COURT DID IN FACT ERR IN DECIDING THAT *JAZZ PHOTO* CONTINUES TO BE THE LAW REGARDING OVERSEAS FIRST SALES.

On page 43 of its brief Lexmark states that Impression's only response is to note that a different rule would apply in the copyright context. That is an incorrect representation of Impression's argument. In fact, it is the opposite of Impressions argument.  Impression does not state that a different rule would apply in the copyright context.  Impression's position clearly is that the same rationale which was applied in *Kirtsaeng* in a copyright case applies equally to patent cases.  (That is essentially what this Court said in *LifeScan v. Shasta*, 734 F.3rd 1361 (Fed. Cir. 2013).)

As it is shown by the express language in *Kirtsaeng* presented in Impression's opening brief, the decision in *Jazz Photo* is in fact clearly irreconcilable with the Supreme Court decision in *Kirtsaeng*, and with this Court's decision in *LifeScan.*

Finally, in its introduction, Lexmark asserts that limiting the exhaustion of U.S. patent rights to domestic sales is the right rule in any event. As discussed in Impression's opening brief and as will be discussed *infra*, that statement could not be more wrong.

7

### A.    The District Court Did Not Correctly Apply Binding Precedent of This Court and the Supreme Court.

The statement appearing in Lexmark's first paragraph on page 44 relating to the territorial aspect of U.S. patent law is a complete red herring.  As will be shown *infra*, Lexmark continually uses the territorial language to create confusing and inappropriate arguments. The territorial aspect of patent law is the same as the territorial aspect of all U.S. law. U.S. law cannot be enforced in other countries. Other countries' laws cannot be enforced in the United States. Therefore, to state that patent law has territorial restrictions is a meaningless statement. The issue presented to this Court is whether conduct overseas can impact the ability to enforce a U.S. patent law in the United States. The U.S. Supreme Court has made it perfectly clear in *Kirtsaeng*, (as has this Court in *LifeScan*) that the general common law rule is that a sale of a product extinguishes property rights in that product, regardless of where that sale occurs. That has nothing to do with any extraterritorial reach of U.S. patent laws.

On page 46 of its brief, Lexmark states that Impression offers no legal or factual basis to distinguish the *Jazz Photo* decisions from this case. Once again, that is a statement which is not correct. Factually, it is correct. Both cases involved the question of first sale extinguishment of patent rights resulting from an overseas sale. As a matter of law, however, it is fairly obvious by now that Impression has taken the position that the *Jazz Photo* decision has been effectively overturned by *Kirtsaeng* and *LifeScan*.

Further on page 46, Lexmark states that the principle of law relating to the territorial limits of U.S. patent law was made clear, not only by *Jazz Photo*, but by the 1890 U.S. Supreme Court decision in *Boesch v. Gräff*. The fact that Lexmark has gone through such mental gymnastics to try to justify *Jazz Photo's* decision based on *Boesch*, should clearly illustrate to this Court the intellectual paucity of the *Jazz Photo* decision. The decision in *Boesch* had nothing whatsoever to do with first sale by a patentee or a patentee's assignee. All the decision in *Boesch* stated was that regardless of whether a product can be lawfully made or sold under the patent laws of another country, this does not mean that that product is not subject to U.S. patent laws when that product is attempted to be sold in the United States. That is an obvious well-known and noncontroversial statement of the law as it has always been understood in this country. It has absolutely nothing to do with first sale extinguishment of patent rights, and this Court should never have based its decision in *Jazz Photo* on the decision in *Boesch.*[1]

---

[1]    On October 30, 2014, Lexmark submitted additional authority (*Electronics, Inc. v. Pulse Electronics, Inc.,* Nos. 2013-1472,-1656 (Oct. 22, 2014) in support of its statements that U.S. patent laws makes no claim to extraterritorial effect. Extraterritorial effect means enforcement in other countries or for conduct in other countries. No one in this case is claiming it does. This is a complete red herring intended to distract this Court from the issue of first sale extinguishment which was not involved in that case at all.

No one is asserting that U.S. patent laws are to be enforced against those who sell their products abroad. The same arguments made here by Lexmark would have prevented the decision in *Kirtsaeng*. U.S. copyright laws also have no extraterritorial effect.

On page 47, Lexmark asserts that *Jazz Photo II* expressly relied on the fact that the United States patent system does not provide for extraterritorial effect. It's true that this Court based its decision in *Jazz Photo* partially on the belief that it was being fair to U.S. patentees. The theory being that a U.S. patentee should be entitled to the value of its patent, and that it can only have that value when a patent is enforced in the United States. The U.S. Supreme Court in *Kirtsaeng* could have said exactly the same thing as it relates to copyright laws. The analysis is identical. U.S. copyright laws can only be enforced in the United States, and following this Court's prior reasoning, copyright rights should not be extinguished until the copyrighted products are sold in the United States. Obviously the United States Supreme Court rejected this line of reasoning in *Kirtsaeng*. Incidentally, in *Jazz Photo*, this Court never once referenced the common-law general rule about extinguishment of property rights, regardless of place (including country) of sale, which was the basis for the U.S. Supreme Court decision in *Kirtsaeng*. As correctly noted in Impression's opening brief, this court created *Jazz Photo* out of thin air. The *Jazz Photo* policy basis for this Court's decision was one for Congress to make, not this Court.

**B.** ***Kirtsaeng* Clearly Overruled *Jazz Photo*.**

It did not overrule *Boesch*, which has nothing to do with the first sale extinguishment of patent rights, other than the fact that it was improperly relied upon by this Court in the *Jazz Photo* decision.

On page 48, Lexmark states that the District Court correctly recognized that *Jazz Photo* remains good law. As pointed out in Impression's opening brief, the lower Court also made clear that the statements in *Kirtsaeng* could be interpreted so as to support Impression's position.

On page 48, Lexmark references pages 1358, 1364 of *Kirtsaeng*. If one actually reads pages 1358-1364, it is quite clear that the reasoning of *Kirtsaeng* requires the overturning of *Jazz Photo*. What the U.S. Supreme Court did, was to extensively analyze the language in the copyright act to determine whether or not the first sale provision of the copyright law was limited to first sales within the United States. After complete and thorough analysis, the U.S. Supreme Court concluded that the language of the copyright law did not limit first sales to U.S. sales. The Court then stated the general common law rule, which it traced all the way back to the Age of Enlightenment in England (Lord Coke) and stated that unless there is a provision in the statute which overturns the common law, the common law governs.  This Court likewise quoted the same quote, on first sale, from Lord Coke, in *LifeScan*.  Since there was no provision in the copyright law

11

which distinguished it from the general common law rule, the general common law rule was determinative. The general common law rule, which applies to the sale of all property, is that a first sale of property extinguishes all rights. The U.S. Supreme Court went on to say that there is no reason to limit that common-law rule to U.S. sales, but that all sales, regardless of country, extinguish all property rights, unless there is an exception in the statute.

Lexmark does not argue, because it cannot, that there is anything in the statute which in any way says that extinguishment of patent rights is limited to U.S. sales. In fact, the subject is not even discussed in the statute.

On page 1363 of its decision, the U.S. Supreme Court stated:

"A relevant canon of statutory interpretation favors a non-geographical reading. When a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law.…

The first sale doctrine is a common law doctrine with an impeccable historic pedigree.…

The common law doctrine makes no geographical distinctions… A straightforward application of Bobbs-Merrill would not preclude the first sale defense from applying to authorized copies made overseas… And we can find no language context purpose or history that would rebut a straightforward application of that doctrine here."

In its footnote on page 49, Lexmark references the fact that the Justices had considered patent exhaustion in *Bowman v. Monsanto* and therefore patent law was fresh on the Justices' minds. Obviously no one knows what is fresh on any

12

Justice's mind, at any time. The *Bowman* case, once again had nothing to do with first sale patent exhaustion, particularly as it relates to overseas sales. The *Bowman* case basically held that just because you buy patented seeds, does not mean that you have the right to use those seeds to reproduce other patented seeds. It is indeed a puzzlement how one can conclude that that case having been, at one time, on the Justices' minds, has anything to do with this case.

In another footnote, in another exercise of judicial mental telepathy, Lexmark asserts that the Supreme Court apparently recognized the dispositive distinction between patent and copyright law because it remanded two copyright cases, in light of *Kirtsaeng*. Since *Kirtsaeng* directly dealt with the same copyright issues, as were involved in those other two cases, the Supreme Court obviously was going to remand them. It would be completely inappropriate to attempt to extrapolate anything from those remands as being related to this case.

Ironically, in footnote 15, page 51, Lexmark misses the entire point of the *LifeScan* decision by this Court.   While the ultimate decision in that case was that first sale doctrine applied equally to sales and to gifts, Impression is not asserting that that is the precise issue involved in this case. What the *LifeScan* case did do, which is entirely relevant to this case, is to look to the decision in *Kirtsaeng* (a copyright case) to assist it in making a decision regarding a patent case. It concluded that copyright first sale doctrine applies to patents as well. This case is

13

even stronger, however, in that *Kirtsaeng* sets forth the general proposition,

adopted by *LifeScan*, that the common law should prevail unless there is a statutory

exception to the common law and that the common law extinguishes all property

rights upon first sale, regardless of country of sale. There is no reason, and

Lexmark has presented no reason, why that decision is not equally applicable to

this case.  In fact, this Court essentially held that the decision in *Kirtsaeng* as it

relates to overseas first sales and extinguishment of **copyright** rights applies

equally to **patent** rights.  *LifeScan* 734 F.3d 1361, pp. 1375-1377:

> Additionally, while not "controlling" regarding issues of patent law,
> *see Bobbs-Merrill Co. v. Straus,* 210 U.S. 339, 346, 28 S. Ct. 722, 52
> L. Ed. 1086, 6 Ohio L. Rep. 323 (1908) (quotation marks omitted),
> copyright cases further reinforce our conclusion that patent exhaustion
> applies to gifts. In the Supreme Court's recent decision in *Kirtsaeng v.
> John Wiley & Sons, Inc.,* the Court held that the first sale doctrine in
> copyright law (**comparable to the patent exhaustion doctrine**)
> applies equally whether the copyrighted work is manufactured in the
> United States or abroad. 133 S. Ct. 1351, 1355-56, 185 L. Ed. 2d 392
> (2013).  Although copyright's first sale doctrine, unlike patent
> exhaustion, has been codified by statute, *see* 17 U.S.C. § 109 (a), the
> Supreme Court looked to the doctrine's common law roots to interpret
> that provision. *Kirtsaeng,* 133 S. Ct. at 1363 ("The 'first sale' doctrine
> is a common-law doctrine with an impeccable historic pedigree.").
> The Court explained that the first sale doctrine was traceable to "the
> common law's refusal to permit restraints on the alienation of
> chattels." *Id.* To elaborate on that common-law policy, the Court
> quoted at length from Lord Coke's Institutes of the Laws of England,
> stating:
>
> > [If] a man be possessed of…a horse, or of any other
> > chattel…and *give or sell* his whole interest . . . therein upon
> > condition that the *Donee* or *Vendee* shall not alien[ate] the same,
> > the [condition] is voi[d], because his whole interest . . . is out of

14

him, so as he hath no possibilit[y] of a Reverter, and it is against Trade and Traffi[c], and bargaining and contracting betwee[n] man and man: and it is within the reason of our Author that it should ouster him of all power given to him.

Id. (quoting 1 E. Coke, *Institutes of the Laws of England* § 360, p. 223 (1628)) (omissions and alterations in original) (emphasis added). Thus, the policy underlying the first sale doctrine draws no distinction between gifts and sales. The same policy **undergirds the doctrine of patent exhaustion**. See *Straus v. Victor Talking Mach. Co.*, 243 U.S. 490, 500-01, 37 S. Ct. 412, 61 L. Ed. 866, 1917 Dec. Comm'r Pat. 403 (1917) (explaining that a patentee's attempt "to place restraints upon [a patented product's] further alienation [was] such as have been hateful to the law from Lord Coke's day to ours").

***

Absent a valid contractual restriction, restraints upon the downstream use or sale of a patented product 'offend against the ordinary and usual freedom of traffic in chattels,' *see John D. Park & Sons Co. v. Hartman*, 153 F. 24, 39, 5 Ohio L. Rep. 5 (6th Cir. 1907)…

***

In summary, we hold that patent exhaustion principles apply equally to **all** authorized transfers of title in property,….(emphasis added)

On pages 50 and 51 Lexmark acknowledges that there is nothing in the patent law statutes which provide for an exception to the first sale common-law doctrine. In addition, Lexmark states that the patent exhaustion **case law** concerns whether patentees have been duly compensated for their invention. Of course the **case law is *Jazz Photo*, the very case at issue in this appeal**. Other than *Jazz Photo*, there is no common law regarding whether patentees have been duly compensated for a first sale abroad.

15

In fact, this is fundamentally what is wrong with *Jazz Photo*. The patentee is rewarded by receiving money for the sale of its product, whether that product is sold in the U.S. or abroad. That is the fundamental principle that *Jazz Photo* misses. Because of *Jazz Photo*, patentees are now able to double dip. The *Ninestar* case, referenced by Lexmark is a perfect example of *Jazz Photo* run amok. Epson, which sold its ink jet cartridges for full value in the open market was then able to claim damages for patent infringement for those same cartridges. Epson made that claim in the Federal District Court in Oregon, as well as before the ITC. In the ITC appeal, the undersigned asked this Court to revisit *Jazz Photo*.  It did not. Hopefully, in light of the Supreme Court decision in *Kirtsaeng*, this Court will overturn *Jazz Photo* once and for all. It's not just a matter of a principle of common law. It is the unfairness of allowing manufacturers, patentees, from receiving full value for their products in the open market, outside of the United States, and then allowing those same patentees to recover a second time, for the same products at the expense of those who have paid full value for those products.

On page 52, Lexmark makes the interesting statement that "Any inference that might be drawn in the copyright context regarding the canon against interpreting statutes to be in derogation of the common law… has no purchase where Congress and the courts have already set forth distinct rules on this question." The fact that the courts (i.e., this Court in *Jazz Photo*) has set forth a

rule, clearly in derogation of the common-law rule set forth by the U.S. Supreme Court in *Kirtsaeng*, is exactly the issue before this Court. The question is whether this Court had a right to create a rule, out of thin air, which is directly contrary to the well-established common-law. The statement by Lexmark above, to the extent to which it includes the representation that Congress has set forth distinct rules on this question is completely false. As set forth above, and as acknowledged by Lexmark, the patent laws do not address this issue at all. The Supreme Court has said that the copyright statutes don't address it either and this Court has affirmed, in *LifeScan*, that the extinguishment of rights from sales applies to patent law as well as copyright law.

### C.    *Jazz Photo* Does Not Represent the Soundest Approach to International Exhaustion

Lexmark argues that *Jazz Photo* represents the soundest approach to international exhaustion, on pages 53 through 56 of its brief. As a first order of business, whether *Jazz Photo* is the soundest approach or not is a matter for the legislature, not this Court. The issue before this Court is not whether *Jazz Photo* is good public policy, but whether it is the law. As discussed above, it clearly is not the law as articulated by the U.S. Supreme Court.

On pages 53 through 55, Lexmark presents arguments that are best found in a classroom involving the international implications of patent laws as they relate to business and economic development. These are issues that belong in Congress, not

17

the Courts. That is precisely why the U.S. Supreme Court stated that the common-law rules apply unless Congress changes them. It is certainly within the power of Congress and the President to modify the patent laws so as to create the *Jazz Photo* outcome. Ironically this is even acknowledged by Lexmark in its own brief on pages 55-56 where it says "Even if these considerations militated in favor of an adjustment in the patent exhaustion regime, it is abundantly clear that Congress rather than the courts is best positioned to act. Courts are not well-suited to weigh, for all patented products, the trade-off between incentives for creation and distribution, and the risk of traps for unwary purchasers of used foreign goods."[2]

On page 54 Lexmark says that Impression fails to demonstrate that under *Jazz Photo* patents are enforced against unsuspecting American buyers of foreign **used** cars. The issue raised by Impression had nothing to do with used cars. It had

---

[2] On page 53 Lexmark states that "the patent act expressly acknowledges that patented articles lawfully acquired and owned abroad can result in infringement upon entry into the United States. It cites section 272. While that is not of particular significance, it is reflective of Lexmark's approach to essentially misrepresentations of the law, which appear throughout its brief, as discussed herein. That particular section does not talk about infringement that can occur, it's just the opposite. It provides that articles, which might otherwise infringe, can be exempt from infringement under certain circumstances, such as if they are on a boat which is only temporarily in the United States. Of course, if those articles are sold or permanently used in the United States they would infringe under U.S. patent laws. So Lexmark has taken a statutory section which provides an exception to the general rules of infringement and presented that as though Congress for policy reasons has made some special determination that products sold abroad are nonetheless subject to infringement. Once again, this has absolutely nothing to do with patent extinguishment resulting from sales by the patentee.

to do with **new** cars, or any other new products first sold overseas and later brought into this country. For example, if a person in Montréal were to purchase a new American car, which is filled with patented components, and then brought that car into the United States, that person would be a patent infringer, regardless of whether or not that person was actually sued. The point is that *Jazz Photo* creates absurd results.

On page 55, Lexmark draws distinctions, of a practical nature, between patent law and copyright law. Of course there are distinctions. That doesn't change the fact that the first sale common-law extinguishment of all property rights (obviously the term "all" includes patent and copyright rights) remains the law, until and unless it is changed by Congress and the President. *Kirtsaeng* makes it unambiguously clear that the first sale doctrine includes overseas non-U.S. sales, as well as U.S. sales. Lexmark does not, because it cannot, point to any legislative language to the contrary.

## CONCLUSION

The lower Court was correct in invalidating the Lexmark prebate program. It followed the analysis of the U.S. Supreme Court in *Quanta* and the District Court in Kentucky.

The lower Court followed *Jazz Photo* but made it clear that the U.S. Supreme Court's decision in *Kirtsaeng* may very well serve as the basis for overturning *Jazz Photo*.  This Court's decision in *LifeScan* makes it clear that this Court will apply the general copyright rule re first extinguishment to patents. Doing so extinguishes *Jazz Photo* as well.

Dated: November 12, 2014

> Respectfully submitted,
>
> /s/ Edward F. O'Connor
> Edward F. O'Connor, Esq.
> THE ECLIPSE GROUP LLP
> 550 West C Street, Suite 2040
> San Diego, California 92101
> (619) 239-4340
> *Counsel for Appellant*

# United States Court of Appeals
# for the Federal Circuit

*Lexmark International, Inc. v. Ink Technologies Printer*, 2014-1617, -1619

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THE ECLIPSE GROUP LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **November 12, 2014,** counsel has authorized me to electronically file the foregoing **Response and Reply Brief for Defendant-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Timothy Colin Meece
(principal counsel)
Auda Carol Eidem Heinze
Bryan Medlock, Jr.
Jason S. Shull
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Chicago, IL 60606
312-463-5420
tmeece@bannerwitcoff.com
aheinze@bannerwitcoff.com
bmedlock@bannerwitcoff.com
jshull@bannerwitcoff.com

Benjamin Beaton
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
202-736-8000
bbeaton@sidley.com

Steven B. Loy
Stoll, Keenon & Park, LLP
300 West Vine Street, Suite 2100
Lexington, KY 40507-1380
859-231-3000
steven.loy@skofirm.com

Constantine L. Trela, Jr.
Sidley Austin LLP
Bank One Plaza
1 South Dearborn Street
Chicago, IL 60603
312-853-7000
ctrela@sidley.com

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

November 12, 2014

/s/Elissa Matias
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains 4,808 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

November 12, 2014 _____      /s/ Edward F. O'Connor _____
                          Edward F. O'Connor, Esq.
                          THE ECLIPSE GROUP LLP
                          Counsel for Appellant