# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| Lexmark International, Inc., | ) | |
| | ) | |
|    Plaintiff-Cross-Appellant, | ) | |
| | ) | |
|        v. | ) | Nos. 14-1617 & |
| | ) | 14-1619 |
| Impression Products, Inc., | ) | |
| | ) | |
|    Defendant-Appellant-Cross-Appellee, | ) | |
| | ) | |
| Quality Cartridges, Inc., John Does, 1-20, | ) | |
| Blue Trading LLC, Exprint International, Inc., | ) | |
| LD Products, Inc., Printronic Corporation, | ) | |
| Tesen Development (Hong Kong) Co. Ltd., | ) | |
| Benigno Aveda And His Companies, | ) | |
| | ) | |
|    Defendants. | ) | |

**REPLY OF *AMICI CURIAE* INTERNATIONAL IMAGING TECHNOLOGY COUNCIL, AUTO CARE ASSOCIATION, AND AUTOMOTIVE PARTS REMANUFACTURERS ASSOCIATION IN SUPPORT OF AMENDED MOTION FOR LEAVE TO PARTICIPATE IN ORAL ARGUMENT IN SUPPORT OF DEFENDANT-APPELLANT-CROSS-APPELLEE**

In their Amended Motion, *amici curiae* International Imaging Technology Council, Auto Care Association, and Automotive Parts Remanufacturers Association (the "Remanufacturing Associations") added to their motion to participate in oral argument in support of defendant-

1

appellant Impression Products, Inc. a request for the Court to allow more than 15 minutes' argument per side. The motivation for the amendment is two-fold. First, it reflects the importance and complexity of the two legal issues presented by the appeal and cross-appeal. The issue addressed by *amici* is not, as Lexmark contends, just a question of applying facts to existing law. Rather, it first requires a determination whether the line of cases upon which Lexmark's claim relies remains good law. On that point, the *amici* have long expertise and multi-industry perspectives to offer the Court. Second, it arises from the legitimate concern that Impression Products would not have sufficient time to address both issues and the Court's questions in less than 15 minutes.[1] The Remanufacturing Associations believe that their perspectives will assist the Court's review of the law of patent exhaustion, and the additional time would enable the Court to consider the issue in both the specific context of this case and its impact on aftermarket industries generally.

    In Reply to Lexmark's opposition brief, the Remanufacturing Associations state as follows:

---

[1] While *Amici* disagree with Lexmark's paper at 1-2, *amici* agree that their Amended Motion does rectify a prior miscommunication pursuant to which counsel for *amici* believed unconditional consent had been given.

1.     Lexmark's suggestion that counsel for the *amici* would "hinder this Court's review" essentially resurrects the discredited view that *amici* cannot have an economic interest in the legal principles under decision. "The argument that an amicus cannot be a person who has 'a pecuniary interest in the outcome' also files in the face of current appellate practice. A quick look at Supreme Court opinions discloses that corporations, unions, trade and professional associations, and other parties with 'pecuniary' interests appear regularly as amici." *See Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 131-132 (3d Cir. 2002) (Alito, J.). In fact, these *amici* and their counsel have a long history as *amici* on the exhaustion principles being raised here by Lexmark. The Remanufacturing Associations and/or counsel have submitted briefs *amicus curiae* relating to the scope of patent exhaustion in *Bowman v. Monsanto Co.*, 133 S.Ct. 1761 (2013) and *Quanta Computer, Inc. v. LG Elecs., Inc.,* 553 U.S. 617 (2008); and concerning related copyright principles of exhaustion in *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S.Ct. 1351 (2013),[2] and before the Supreme Court and the Ninth Circuit in *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982 (9th Cir. 2008), *aff'd by equally divided court,* 131 S.Ct. 565 (2010). Thus, it is hardly surprising that *amici* might look to experienced counsel with whom they

---

[2] The Court cited *amici*'s brief in *Kirtsaeng*, submitted with the Retail Litigation Center, at 133 S.Ct. at 1365.

previously have worked to represent them again in this case. Moreover, counsel prevailed against virtually identical claims by Lexmark in a different case – the first case which held that this Court's precedents were overruled *sub silentio* by *Quanta*[3] and upon which the district court here based its opinion. This past experience reinforces why argument by *amici* may offer the Court informed views of the law of exhaustion, and thus further supports the grant of the Amended Motion.

    2.    Although Lexmark asks this Court to avoid deciding the "policy considerations" in this appeal, the brief of the *amici* demonstrates precisely why such considerations are front and center before this Court. Lexmark's cross-appeal necessarily requires this Court, post-*Quanta*, to address the vitality *vel non* of its "conditional sales" exception to patent exhaustion upon an authorized sale. Many domestic industries will be better or worse off depending upon the outcome of this case. Three such industries – aftermarket imaging product supply, vehicle repair, and engine and auto parts remanufacture – have illustrated the potential impact of this case from their perspectives as *amici*. Others, such as medical suppliers, have previously been affected by cases before this Court. Thus, this case does not turn on unique facts, such as how particular claim language reads on an

---

[3] *Static Control Components v. Lexmark Int'l, Inc.*, 615 F. Supp. 2d 575 (E.D. Ky. 2009).

allegedly infringing device. It will re-affirm or curtail the reach under patent laws of a legal doctrine dating back from more than 150 to approaching 500 years. This scope of exhaustion should be decided with eyes toward its historic roots and future policy impact, not with blinders on as Lexmark suggests. The Remanufacturing Associations respectfully submit that such important principles merit more than 15 minutes per side.

      3.      The Remanufacturing Associations also correctly stated that this case presents the first occasion to address this Court's prior "conditional sales" exception in light of *Quanta*'s holding that the authorized sale of an article "prevents the patent holder from invoking patent law to control postsale use of the article." 533 U.S. at 638. All district courts to have considered the question have held, and a majority of commentators have reasoned, that *Quanta*'s reversal of this Court's *Bizcom* decision[4] necessarily reversed *sub silentio* the principles that dictated the outcome in *Bizcom*. Lexmark's citations to two post-*Quanta* opinions of this Court are inapposite. In *Monsanto Co. v. Bowman*, the Court discussed the conditional sales exception when recounting earlier cases, but concluded there could be no exhaustion defense to a claim that regeneration of seeds commits new acts of infringement. 657 F. 3d 1341, 1347-1348 (Fed. Cir. 2011). Similarly,

---

[4] *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364 (Fed. Cir. 2006).

*Princo* discussed *Mallinckrodt* and *B. Braun* in the context of patent misuse; exhaustion was not at issue in the case, and was not even mentioned in the initial panel opinion.[5] These are precisely the types of arguments that could be elucidated in oral argument, and that merit both the grant of additional time and participation in oral argument by *amici*.

    4.    Lexmark's assertion that the Court could rely solely on the Remanufacturing Associations' brief applies to any party. There is no right to oral argument, and the Court can decide any appeal (as it does in many cases) solely on the briefs. However, in cases such as this which present far-reaching issues of law, the Court clearly would benefit from oral argument to probe the issues and to answer the Court's questions beyond the four corners of a brief. This rationale for oral argument applies here to the *amici*. Impression Products reserved three (3) pages of its Reply for Lexmark's "conditional sales" argument. The Remanufacturing Associations devoted their entire brief to the law and policies pertinent to this important issue. Thus, the brief of the *amici* presents the Court with the more comprehensive discussion of the issue, from the perspective of different industries that would be affected profoundly by the Court's decision. In view of the *amici*,

---

[5] *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318 (Fed. Cir. 2010) (*en banc*), citing *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419 (Fed. Cir.1997), and *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992).

the concomitantly greater interest of these remanufacturing industries in the outcome of this fundamental doctrine justifies the grant of additional time and the privilege of oral argument.

     5.    Finally, while the decision to invite or permit oral argument by an *amicus* is always within the Court's discretion, extraordinary circumstances justify the exercise of such discretion here. Unlike the typical case affecting primarily the parties to the dispute, this Court's decision could affect many thousands of businesses and hundreds of billions of dollars in commerce annually in the United States. *See* Br. of Remanufacturing Associations at 1-5. The Remanufacturing Associations respectfully suggest that the potential impact of this Court's decision, and the demonstrably broader interest of the *amici* in the outcome of the cross-appeal, constitute extraordinary circumstances that merit the grant of this Motion.

WHEREFORE, the Remanufacturing Associations respectfully request that their Amended Motion be granted: that the Court should allot additional time for oral argument, and that the Remanufacturing Associations should be granted leave to participate in oral argument.

Date:  January 23, 2015              Respectfully submitted,

*/s/ Seth D. Greenstein*
Seth D. Greenstein
*sgreenstein@constantinecannon.com*
CONSTANTINE CANNON LLP
1001 Pennsylvania Avenue, NW
Suite 1350 North
Washington, D.C.  20004
Telephone: (202) 204-3500
Facsimile:  (202) 204-3501

Attorneys for *Amici Curiae* International Imaging Technology Council, Auto Care Association, and Automotive Parts Remanufacturers Association

# CERTIFICATE OF INTEREST

*Amici curiae* International Imaging Technology Council, Auto Care Association, and Automotive Parts Remanufacturers Association are not-for-profit associations that have no parent corporations, and no publicly held corporation owns 10 percent or more of the stock in any of the *amici*.

Date:  January 23, 2015  /s/ Seth D. Greenstein
SETH D. GREENSTEIN
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., N.W.
Suite 1300N
Washington, D.C. 20004
(202) 204-3500

*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I certify that on January 23, 2015 the foregoing Reply in Support of the Amended Motion was served on all parties or their counsel of record through the CM/ECF system.

/s/ Seth D. Greenstein
SETH D. GREENSTEIN
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., N.W.
Suite 1300N
Washington, D.C. 20004
(202) 204-3500

*Counsel for Amici Curiae*