# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# CINCINNATI DIVISION

| | |
|---|---|
| LEXMARK INTERNATIONAL, INC.<br><br>    Plaintiff,<br><br>        v.<br><br>INK TECHNOLOGIES PRINTER SUPPLIES, LLC, ET AL.<br><br>    Defendants. | Civil Action No.<br>1:10-CV-564-MRB |

## NOTICE OF STIPULATION OF REMOVAL OF CONFIDENTIALITY DESIGNATION

Plaintiff Lexmark International, Inc. ("Lexmark") and Defendant Impression Products, Inc. ("Impression") have jointly agreed to remove the confidentiality designation with respect to the attached Stipulated Order filed by the parties on May 29, 2014.

HAVING BEEN SEEN AND AGREED TO ON MARCH 17, 2015, by:

| /s/ Jason S. Shull | /s/ Edward F. O'Connor |
|---|---|
| P. Douglas Barr (Ohio Bar No. 20868)<br>Steven B. Loy<br>Anthony J. Phelps<br>STOLL KEENON OGDEN PLLC<br>300 West Vine Street, Suite 2100<br>Lexington, KY 40507<br>Telephone: (859) 231-3000<br>Facsimile: (859) 253-1093 | Edward F. O'Connor<br>*ADMITTED PRO HAC VICE*<br>THE ECLIPSE GROUP LLP<br>2020 Main Street, Suite 600<br>Irvine, California 92614<br>Phone: (619) 239-4340<br>Fax: (619) 239-0116<br>Email: efo@eclipsegrp.com |
| William J. Hunter, Jr.<br>STOLL KEENON OGDEN PLLC<br>2000 PNC Plaza<br>500 West Jefferson Street<br>Louisville, KY 40202<br>Telephone: (502) 333-6000<br>Facsimile: (502) 333-6099 | Crystal L. Maluchnik (0077875)<br>George H. Carr (0069372)<br>JANIK L.L.P.<br>3200 South Hill Blvd., Suite 300<br>Cleveland, Ohio 44147<br>440.838.7600<br>Fax: 440.838.7601<br>crystal.maluchnik@janiklaw.com |

| | |
|---|---|
| Timothy C. Meece<br>V. Bryan Medlock<br>Jason S. Shull<br>Audra Eidem Heinze<br>BANNER & WITCOFF LTD.<br>10 South Wacker Drive, Suite 3000<br>Chicago, Illinois 60606<br>Telephone: (312) 463-5000<br><br>*Attorneys for Plaintiff,*<br>*Lexmark International, Inc.* | george.carr@janiklaw.com |

2

## CERTIFICATE OF SERVICE

This is to confirm that a copy of the foregoing was electronically filed on March 17, 2015. A true and accurate copy of the foregoing will be served as indicated below:

*Via ECF Notice:*

David G. Kern
Roetzel & Andress
310 Chiquita Center
250 East Fifth Street
Cincinnati, OH 45202
513-361-0200
dkern@ralaw.com
*Attorneys for Interseroh Product Cycle GmbH. N & L Global Co., Onlinetechstores.com, Inc., Tech Optics, Inc., OW Supplies Corp., and Quality Cartridges, Inc.*

Glenn Dean Bellamy
2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202-2917
513-241-2324
gbellamy@whepatent.com
*Attorney for Blue Trading, LLC, and Eco Service Sp. zo.o.*

Gary M. Hnath
Jeffrey C. Lowe
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
202-263-3040
ghnath@mayerbrown.com
jclowe@mayerbrown.com
*Attorneys for Quality Cartridges, Inc.*

Jon E. Hokanson
Thomas S. Kidde
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012-2601
213-680-5050
hokanson@lbbslaw.com
kidde@lbbslaw.com
*Attorneys for John Does 1-20*

Andre A. Gibson
Andre Gibson, Chartered

115 NW 167th St, Suite 201
North Miami Beach, FL 33169
305-652-4900
aagibson@gibsontaxlaw.com
*Attorney for Blue Trading, LLC, and Eco Service Sp. zo.o.*

Crystal L Maluchnik
George H Carr
Janik L.L.P
9200 South Hills Blvd., Suite 300
Cleveland, OH 44147
440 838 7600
crystal.maluchnik@janiklaw.com
george.carr@janiklaw.com
*Attorneys for Impression Products, Inc.*

Karl Stephen Kronenberger
Kronenberger Rosenfeld, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
415-955-1155
Karl@KRInternetLaw.com
*Attorneys for LD Products, Inc.*

Marc N. Bernstein
Will Barnett Fitton
The Business Litigation Group, P.C.
555 Montgomery Street, Suite 1650
San Francisco, CA 94111
(415) 765-6624
mbernstein@blgrp.com
wfitton@blgrp.com
*Attorneys for LD Products, Inc.*

Edward F O'Connor
The Eclipse Group, LLP
2020 Main Street, Suite 600
Irvine, CA 92614
619-239-4340
efo@eclipsegrp.com
*Attorneys for Impression Products, Inc.*

Andrew B. Chen
Saeid Mirsafian
Sang N. Dang
Blue Capital Law Firm, P.C.

4

600 Anton Blvd., Ste. 1000
Costa Mesa, CA 92626
714-839-3880
achen@bluecapitallaw.com
sm@bluecapitallaw.com
sdang@bluecapitallaw.com
*Attorneys for N&L Global Co.*

Daniel William Wolff
Brian M. Koide
Crowell & Moring
1001 Pennsylvania Avenue NW
Washington, DC 20004
202-624-2621
dwolff@crowell.com
bkoide@crowell.com
*Attorneys for Recyca BVBA*

Jack S. Gatlin
Freund Freeze and Arnold
105 E. 4th Street
Suite 1400
Cincinnati, OH 45202
513-587-3907
jgatlin@ffalaw.com
*Attorneys for Sinotime Technologies, Inc.*

Hongwei Shang
9130 S. Dadeland Blvd., Ste. 1620
Miami, FL 33156
786-581-9759
hshanglaw@gmail.com
*Attorneys for Sinotime Technologies, Inc.*

Michael P Foley
Rendigs, Fry, Kiely & Dennis
600 Vine Street, Suite 2650
Cincinnati, OH 45202
513-381-9200
mfoley@rendigs.com
*Attorneys for TonerLand*

                                                    /s/ Jason S. Shull
                                                    Attorney for Lexmark International, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

**FILED UNDER SEAL**

FILED
MAY 29 2014
JOHN P. HEHMAN, Clerk
CINCINNATI, OHIO

LEXMARK INTERNATIONAL, INC.

Plaintiff,

v.

INK TECHNOLOGIES PRINTER SUPPLIES, LLC, ET AL.

Defendants.

Civil Action No.
1:10-CV-564-MRB

**JOINT MOTION FOR ENTRY OF STIPULATED ORDER REGARDING SUPPLEMENTATION OF RECORD, LIMITED RECONSIDERATION TO THE EXTENT NECESSARY TO PRESERVE APPELLATE RIGHTS, FOR NON-INFRINGEMENT WITH RESPECT TO TONER CARTRIDGES FIRST SOLD INSIDE THE UNITED STATES, FOR INFRINGEMENT FOR TONER CARTRIDGES FIRST SOLD OUTSIDE THE UNITED STATES, AND FOR ENTRY OF FINAL JUDGMENT**

Comes the Plaintiff Lexmark International, Inc. ("Lexmark") and Defendant Impression Products, Inc. ("Impression"), by counsel, and hereby jointly move the Court for entry of a "Stipulated Order:" (a) supplementing the district court record for appellate purposes, (b) reconsidering ECF 615 (*i.e.*, the Court's Opinion and Order regarding Lexmark's Return Program) in view of the supplemented record to the extent that the Court deems it necessary, (c) subject to and without waiver of Lexmark's appellate rights, entering judgment of no infringement under 35 U.S.C. § 271(a)—based on the Court's ruling in ECF 615—in favor of Impression and against Lexmark for Impression's sales of Return Program Cartridges (defined *infra*) that were first sold *inside* the United States, (d) subject to and without waiver of Impression's appellate rights, entering judgment of infringement under 35 U.S.C. § 271(a)— based on the Court's ruling in ECF 617—in favor of Lexmark and against Impression for its

Case: 14-1617 Document: 78-2 Page: 7 Filed: 03/18/2015

sales of Toner Cartridges (defined *infra*) that were first sold *outside* the United States and (e) directing entry of final judgment under Rule 58, Fed. R. Civ. P., based on the Stipulated Order. In support thereof, Lexmark and Impression jointly stipulate and agree as follows:

### Background on the Parties

1. Lexmark is in the business of developing, manufacturing and selling laser printers and toner cartridges including toner cartridges for use with monochrome laser printers, including the Lexmark E120, Lexmark E220, Lexmark E230, Lexmark E232, Lexmark E234, Lexmark E238, Lexmark E240, Lexmark E250, Lexmark E260, Lexmark E320, Lexmark E322, Lexmark E321, Lexmark E323, Lexmark E330, Lexmark E332, Lexmark E340, Lexmark E342, Lexmark E350, Lexmark E352, Lexmark E360, Lexmark E450, Lexmark E460, Lexmark T520, Lexmark T522, Lexmark X520, Lexmark X522, Lexmark T610, Lexmark T612, Lexmark T614, Lexmark T616, Lexmark T620, Lexmark T622, Lexmark X620, Lexmark T630, Lexmark T632, Lexmark T634, Lexmark T640, Lexmark T642, Lexmark T644, Lexmark T650, Lexmark T652, Lexmark T654, Lexmark T656, Lexmark X651, Lexmark X652, Lexmark X654, Lexmark X656, and the equivalent monochrome laser printers sold to original equipment manufacturers under private label, including, but not limited to, the Dell 1700, Dell 1700N, Dell 1710, Dell 1720, Dell 2230, Dell 2330, Dell 2350, Dell 3330, Dell 3333, Dell 3335, Dell 5200, Dell 5210, Dell 5300, Dell 5310, Dell 5230, Dell 5350, Dell 5530, Dell 5535, Dell E220, IBM 1116, IBM 1312, IBM 1412, IBM 1512, IBM 1512N, IBM InfoPrint 1120, IBM InfoPrint 1125, IBM InfoPrint 1130, IBM InfoPrint 1140, IBM InfoPrint 1332, IBM InfoPrint 1352, IBM InfoPrint 1372, IBM InfoPrint 1532, IBM InfoPrint 1552, IBM InfoPrint 1572, IBM InfoPrint 1832, IBM InfoPrint 1850, IBM InfoPrint 1852, IBM InfoPrint 1860, IBM InfoPrint 1870, IBM InfoPrint 1872, IBM InfoPrint 1880, IBM InfoPrint 1892, InfoPrint 1601, InfoPrint 1602, InfoPrint 1612, InfoPrint 1622,

InfoPrint 1822, IBM InfoPrint 1823, IBM InfoPrint 1930, IBM InfoPrint 1940, Lenovo LI3900, LG 3510, LG 3350, LG 3850, LG 4010, Okidata MB780, Okidata MB790, Okidata 5500, Okidata 7180, Okidata 7190, Ricoh Afficio SP 4400, Ricoh Afficio SP 4410, Ricoh Afficio SP 4420, Sindoricoh 5000, Sindoricoh 5005, Sindoricoh 5050, Sindoricoh 4450, Sindoricoh 4550, Sindoricoh 4555, Sindoricoh 5450, Sindoricoh 5550, Source Technologies 9116, Source Technologies 9130, Source Technologies 9140, Source Technologies 9325, Source Technologies 9335, Source Technologies 9340, Source Technologies 9530n, Source Technologies 9550, Source Technologies 9552, Source Technologies 9630, Source Technologies 9650, Source Technologies 9620, Source Technologies 9622, Source Technologies ST 9120, Source Technologies 9125, Toshiba e-Studio 20P, Toshiba e-Studio 25P, Toshiba e-Studio 30P, Toshiba e-Studio 40P, Toshiba e-Studio 400P, Toshiba e-Studio 430, Toshiba e-Studio 530, Toshiba e-Studio 450P, Toshiba e-Studio 500P, Toshiba e-Studio 500P, Unisys 134, Unisys 136, Unisys UDS 130, Unisys UDS 132, Unisys UDS 640n, Unisys UDS 650n, Unisys UDS 140, Unisys UDS 142, Unisys UDS 540n, Unisys UDS 544n, Unisys UDS 630, and Unisys UDS 635dn (collectively, "Toner Cartridges").[1]

2. Lexmark owns and has standing to sue for infringement of United States Patent Nos. 5,337,032; 5,634,169; 5,758,231; 5,758,233; 5,768,661; 5,802,432; 5,875,378; 5,995,772; 6,009,291; 6,078,771; 6,397,015; 6,459,876; 6,487,383; 6,496,662; 6,678,489; 6,816,692; 6,871,031; 6,879,792; 7,139,510; 7,233,760; and 7,305,204 (the "Patents-in-Suit").

3. Each of the Toner Cartridges literally satisfies one or more claims of one or more of the Patents-in-Suit as shown in the following Table 1.

---

[1] Exhibit A attached hereto is a chart identifying which laser printer models sold under private label are equivalent to Lexmark's laser printer models.

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Table 1

| Patents-in-Suit | Toner Cartridges* | | | | | | |
|---|---|---|---|---|---|---|---|
| | E120 | E23X/E24X/ E33X/E34X | E260/ E360/E460 | E25X/ E35X/E45X | T52X/T61X/ T62X/T63X/ T64X/T65X | E320/ E322 | E220 and E321/E323 |
| 5,337,032 | | | | | 1,5,6 | | |
| 5,634,169 | | | 32,36,42 | | 1-3,32-34, 36, 42 | 32,36,42 | 32,36,42 |
| 5,758,231 | | 1-16 | 1-16 | 1-16 | | 1-16 | 1-16 |
| 5,758,233 | | | | | 1-4 | | |
| 5,768,661 | | | | | 1,2,3,6 | | |
| 5,802,432 | | | | | 1-3, 7-9 | | |
| 5,875,378 | | | | | 1-3,12-14,24 | | |
| 5,995,772 | | | 14,15,22, 32-34 | | 1-3,5,7-9, 12,14- 18,20,21 | 14,15,22, 32-34 | 14,15,22, 32-34 |
| 6,009,291 | 1-2 | 1-2 | 1-2 | 1-2 | 1-2 | | |
| 6,078,771 | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,5,6,10, 12,13,15 | 1,2,5,6,10, 12,13,15 | | |
| 6,397,015 | | | 1,2,4, 9,17,19 | | 1-4,7-12, 14-19,22-24 | 1,2,4, 9,17,19 | 1,2,4, 9,17,19 |
| 6,459,876 | | | | | 1-28 | | |
| 6,487,383 | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6, 10,15,19 | 1,2,6,10, 11,15,19 | 19 | 19 |
| 6,496,662 | | 1,3,5,7 | | 1,3,5,7 | | | |
| 6,678,489 | | 5, 6 | 5, 6 | 5, 6 | | | |
| 6,816,692 | 1-13 | 1-13 | 1-13 | 1-13 | | | |
| 6,871,031 | | 1-6,8-12 | 1-6,8-12 | 1-6,8-12 | | | |
| 6,879,792 | | 1-11 | 1-11 | 1-11 | | | |
| 7,139,510 | | 1-10 | 1-10 | 1-10 | | | |
| 7,233,760 | 1-10, 11,12,14 | 1-10, 11,12,14 | 1-10, 11,12,14 | 1-10, 11,12,14 | | | |
| 7,305,204 | | 1-20 | 1-20 | 1-8,10-13 | | | |

\* The private label models corresponding to the Toner Cartridges identified in Table 1 are likewise covered by the respective Patents-in-Suit. *See* Exhibit A.

4. Impression is accused of, among other things, importing, remanufacturing, selling and offering to sell (1) Toner Cartridges first sold outside of the United States and (2) Toner Cartridges first sold in the United States under Lexmark's Return Program (defined *infra*).

### The Court's Rulings on Impression's Rule 12(b)(6) Motions to Dismiss

5. On July 30, 2013, Impression filed a Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., with respect to Toner Cartridges first sold *outside* the United States. (ECF No. 335.) On September 16, 2013, Impression filed a Second Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., with respect to Lexmark's Return Program Cartridges first sold *inside* the United States. (ECF No. 395.)

6. On March 27, 2014, the Court issued its Opinions and Orders on Impression's Rule 12(b)(6) Motions to Dismiss (ECF Nos. 615 and 617). In the Opinion and Order granting Impression's Second Motion to Dismiss, the Court stated:

> Lexmark does not allege that the authority of the sellers of the Return Program cartridges were restricted or conditioned in any way. In other words, the facts alleged by Lexmark do not suggest that the sellers had anything other than full authority to sell the Return Cartridges that practiced Lexmark's patents. Instead, Lexmark alleges only that the Return Program cartridges contained notices of a license restriction which bound the ultimate purchaser. Under *Quanta*, those post-sale use restrictions do not prevent patent rights from being exhausted given that the initial sales were authorized and unrestricted.

(ECF No. 615 at 11.)

7. The parties stipulate that Lexmark was not required to include allegations, or provide evidence, to rebut Impression's affirmative defense of patent exhaustion under the standards applicable to Impression's Second Motion to Dismiss under Rule 12(b)(6), Fed. R. Civ. P. Nonetheless, in order to ensure that all appellate rights are preserved, to confirm that there is a complete record for the purposes of appeal, and to promote further judicial economy by obviating any need for Lexmark to file a motion for leave to amend its Second Amended Complaint under Rule 15, Fed. R. Civ. P., in order to address the Court's statement that there was a "lack of specific allegations in the Second Amended Complaint" with respect to

Lexmark's contracts for its Toner Cartridges sold under the Return Program (ECF No. 615 at 2), the parties jointly stipulate to supplement the record as set forth herein.

**The Lexmark Return Program**

8.  Lexmark offers purchasers of its Toner Cartridges two options: (1) a Toner Cartridge sold without conditions and for which Lexmark receives full compensation (hereafter, "Regular Cartridge(s)"), and (2) a Toner Cartridge that is physically identical to the Regular Cartridge, but is sold subject to express contractual conditions and a conditional single-use license and for which Lexmark receives reduced compensation (hereafter, "Return Program Cartridge(s)").[2] In particular, purchasers of a Return Program Cartridge receive an up-front discount on the purchase price of the Return Program Cartridge in exchange for agreeing to use the Return Program Cartridge only once (the single-use license) and to return the empty Return Program Cartridge only to Lexmark for remanufacturing or recycling (hereafter, the "Return Program condition").[3] The price of the Return Program Cartridge reflects the value of the property interest and use rights conveyed to the purchaser under the express terms of the conditional sale contract and conditional single-use license conferred by Lexmark.

9.  Each Toner Cartridge also includes a microchip that securely communicates with the printer once installed.

10. The microchip on a Return Program Cartridge has certain performance-related functions. In addition, the microchip enforces the express contractual Return Program condition. For example, using some of the patented technology at issue in this case (e.g., the encoder wheel of U.S. Pat. No. 6,397,015), the printer and microchip in many of the Toner

---

[2] Although a Regular Cartridges and its corresponding Return Program Cartridge are physically identical, as discussed in the following paragraphs, the Regular Cartridges and Return Program Cartridges employ different microchips.

[3] Return Program Cartridges were previously referred to as "Prebate" cartridges.

CONFIDENTIAL – OUTSIDE COUNSEL ONLY

Cartridges at issue in this case[4] keep track of how much toner is remaining in the Return Program Cartridge. The printer uses this information to improve print quality characteristics as toner is depleted over time through use. When all of the toner has been used, the microchip stores this fact in memory. If the Return Program Cartridge subsequently is refilled without authorization and an attempt is made to re-use the Return Program Cartridge in a printer in breach of the contractual terms and single-use license under which it was sold, the microchip in combination with the printer will recognize this fact and enforce the Return Program condition by precluding use of the unauthorized cartridge.

11. To circumvent this technological measure for enforcing the express contractual Return Program condition, third parties have "hacked" Lexmark's microchips and created their own "unauthorized replacement" microchips. These "unauthorized replacement" microchips are publicly sold by third parties who have no affiliation with Lexmark, no authorization from Lexmark to hack its microchips, and no authorization from Lexmark to sell its microchips. Thus, "unauthorized replacement" microchips exist in the marketplace and, if an unauthorized replacement microchip is installed on a Return Program Cartridge, the printer is fooled into believing that the Return Program Cartridge is authorized and can be used, overriding the technological protection despite the continued existence and effectiveness of the express contractual restriction on re-use of Return Program Cartridges.

12. The microchip on a Regular Cartridge performs the same toner monitoring function in order to maximize print quality characteristics. However, after all of the toner has been depleted, the Regular Cartridge can be refilled with toner or otherwise remanufactured without any problem. The Regular Cartridge can then continue to be re-used without limitation

---

[4] These Toner Cartridges include, but are not limited to, the E260, E360, E460, T52X, T61X, T62X, T63X, T64X, T65X, E320, E322, E220, E321, and E323 model cartridges.

because it was sold without restrictions on re-use or sale, and at a price that reflected those greater rights; no technological measure prevents such authorized re-use. Consequently, the microchip on a Regular Cartridge never needs to be replaced and can be re-used as many times as desired.

13. The Return Program condition is identified on the Return Program Cartridges and on their packaging (in multiple languages), as well as on Lexmark's website. For example, the following language, or substantially similar language, is placed on the outside packaging of every Return Program Cartridge:

> RETURN EMPTY CARTRIDGE
> TO LEXMARK FOR RECYCLING
>
> Please read before opening. Opening this package or using the patented cartridge inside confirms your acceptance of the following license agreement. The patented Return Program cartridge is sold at a special price subject to a restriction that it may be used only once. Following this initial use, you agree to return the empty cartridge only to Lexmark for recycling. If you don't accept these terms, return the unopened package to your point of purchase. A regular price cartridge without these terms is available.

*See, e.g.*, Exhibit B, photographs of the Return Program condition as it appears on the cartridge and the packaging of a Lexmark T650/T652/T654/T656 Return Program Cartridge.

14. Lexmark sells the Toner Cartridges, including Regular Cartridges and Return Program Cartridges, directly to end-user customers and directly or indirectly to certain authorized resellers ("Resellers"). The Resellers include direct sales by Lexmark to authorized supplies dealers, authorized distributors, office superstores, and original equipment manufacturers and indirect sales by Lexmark to independent dealers and direct marketing resellers.

15. Lexmark has an express and enforceable contractual agreement with each of its end-user customers, including those end-user customers who purchase Toner Cartridges directly from Lexmark. In exchange for agreeing to the express Return Program condition, those end-user customers receive consideration in the form of an up-front discount on the purchase price of the Return Program Cartridge. If an end-user customer does not wish to accept the Return Program condition and conditional single-use license of the Return Program Cartridge, and instead wishes to acquire a Toner Cartridge not subject to any conditions or restrictions on use or disposition, such an end-user costumer has the option of purchasing a Regular Cartridge and receiving such additional property interests and rights in return for paying full price. *See* Exhibit B; *Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 987 – 88 (9th Cir. 2005).

16. Lexmark has an express and enforceable contract with each of the authorized supplies dealers and authorized distributors. *See* Authorized Supplies Dealer Contracts attached collectively as Exhibit C and Authorized Distributor Contracts attached collectively as Exhibit D. Each contract provides that Lexmark may issue bulletins that change the terms of said contract. Lexmark has issued bulletins for each of the Toner Cartridges that bind each authorized supplies dealer[5] and authorized distributor to the Return Program condition and further provide that each Return Program Cartridge is sold pursuant to a conditional single-use license. *See* Supplies Marketing Bulletins attached collectively as Exhibit E.

17. Authorized supplies dealers participate in a marketing program called the Platinum Preferred Program, and authorized distributors participate in a marketing program called the Universal-Preferred Program. Both the Platinum Preferred Program and Universal-

---

[5] Lexmark's agreement with Reynolds and Reynolds, one of its authorized supplies dealers, obligates the dealer to review the terms of the Return Program with end-users, including the Return Program condition.

Preferred Program contain contractual terms that bind the authorized supplies dealers and authorized distributors, respectively, to the Return Program condition and further provide that each Return Program Cartridge is sold pursuant to a conditional single-use license. *See* Platinum Preferred Program Announcement attached as Exhibit F; Universal-Preferred Program Announcement attached as Exhibit G.

18. Lexmark has an express and enforceable contract with each of the independent dealers that participates in a marketing program called the S.T.A.R. Program. Each contract provides that the participating independent dealer agrees to be bound by the terms and conditions of the S.T.A.R. Program. *See* S.T.A.R. Program Enrollment Form exemplar attached as Exhibit H. The terms and conditions of the S.T.A.R. Program bind each participating independent dealer to the Return Program condition and further provide that each Return Program Cartridge is sold pursuant to a conditional single-use license. *See* S.T.A.R. Toner Supplies and Parts Rebate Program Announcement attached as Exhibit I.

19. Lexmark has an express and enforceable contract with each of the direct marketing resellers. Each contract provides that the direct marketing reseller agrees to be bound by the terms and conditions of the Direct Marketing Reseller Program. *See* Lexmark Supplies Program for DMR Resellers Enrollment Form exemplar attached as Exhibit J. The terms and conditions of the Direct Marketing Reseller Program bind each direct marketing reseller to the Return Program condition and further provide that each Return Program Cartridge is sold pursuant to a conditional single-use license. *See* Platinum Preferred Program Announcement attached as Exhibit K.

20. Participating independent dealers and direct marketing resellers purchase Toner Cartridges only from authorized distributors.

21. Lexmark has an express and enforceable contract with each of the office superstores that incorporates the terms of the Return Program. *See* Office Superstore Contracts attached collectively as Exhibit L.

22. Lexmark has an express and enforceable contract with each original equipment manufacturer ("OEM") identified in paragraph 1. *See* OEM Contracts attached collectively as Exhibit M. Pursuant to these contracts, Lexmark sells Toner Cartridges to OEMs who then sell the Cartridges under their own brand name. While Lexmark also sells Toner Cartridges to IBM, Lexmark is excluding IBM from the definition of "OEM" as used herein because Lexmark is not asserting infringement as to the Return Program Cartridges that it sells to IBM. Each of the OEM contracts incorporate the terms of the Return Program.

23. Lexmark sells the Return Program Cartridges to the Resellers at a discounted price, which reflects the value of the property rights and interests conveyed by Lexmark under the express conditional sale contract between the parties and the conditional single-use license conferred by Lexmark. The Resellers are only authorized to resell the Return Program Cartridges subject to the contractual Return Program condition. Lexmark also sells Regular Cartridges to the Resellers; in those unconditional transactions, the Resellers receive full rights to the Regular Cartridges and Lexmark receives full compensation in return.

### Determination of Infringement Based on March 27 Opinions and Orders

24. To the extent the foregoing does not disturb the holding of this Court's Opinion and Order of March 27, 2014 (ECF No. 615), Lexmark and Impression stipulate that under this Court's Opinion and Order of March 27, 2014 (*id.*), Impression's importation, remanufacture, sale, and offer for sale of Return Program Cartridges first sold in the United States does not constitute infringement of the Patents-in-Suit pursuant to 35 U.S.C. § 271 under the doctrine of

patent exhaustion. If the foregoing does disturb the holding of this Court's Opinion and Order of March 27, 2014 (ECF No. 615), Lexmark and Impression request that the Court reconsider and reissue its opinion regarding Return Program Cartridges.

25. Lexmark and Impression stipulate that under this Court's Opinion and Order of March 27, 2014 (ECF No. 617), Impression's importation, remanufacture, sale, and offer for sale of Toner Cartridges first sold outside of the United States constitutes infringement of the Patents-in-Suit pursuant to 35 U.S.C. § 271.

26. This Stipulated Order is subject to any appeal that Impression or Lexmark may take based on the Court's Opinions and Orders of March 27, 2014 (ECF Nos. 615 and 617).

27. Notwithstanding the provisions contained in this stipulation, Mr. O'Connor's personal opinion is that Lexmark's Return Program constitutes an invalid and unenforceable contract. Lexmark disagrees. Despite Mr. O'Connor's personal opinion, Impression and Lexmark have agreed to entry of this stipulation in order to promote judicial economy and to focus the issues on appeal. Lexmark and Impression expressly reserve all of their applicable rights (including all claims and defenses) on remand, if any.

28. Subject to and if appropriate in view of the qualifications of paragraph 24 *supra*, Lexmark and Impression respectfully request entry of the Stipulated Permanent Injunction attached as Exhibit N, and the Stipulated Final Judgment, attached as Exhibit O.

HAVING BEEN SEEN AND AGREED TO ON MAY 29th, 2014, by:

_____  
P. Douglas Barr (Ohio Bar No. 20868)  
Steven B. Loy  
Anthony J. Phelps  
STOLL KEENON OGDEN PLLC  
300 West Vine Street, Suite 2100  
Lexington, KY 40507  
Telephone: (859) 231-3000  
Facsimile: (859) 253-1093  

William J. Hunter, Jr.  
STOLL KEENON OGDEN PLLC  
2000 PNC Plaza  
500 West Jefferson Street  
Louisville, KY 40202  
Telephone: (502) 333-6000  
Facsimile: (502) 333-6099  

Timothy C. Meece  
V. Bryan Medlock  
Jason S. Shull  
Audra Eidem Heinze  
BANNER & WITCOFF LTD.  
10 South Wacker Drive, Suite 3000  
Chicago, Illinois 60606  
Telephone: (312) 463-5000  

*Attorneys for Plaintiff,*  
*Lexmark International, Inc.*

Edward O'Connor w/p/b _____  
Edward F. O'Connor  
*ADMITTED PRO HAC VICE*  
THE ECLIPSE GROUP LLP  
2020 Main Street, Suite 600  
Irvine, California 92614  
Phone: (619) 239-4340  
Fax: (619) 239-0116  
Email: efo@eclipsegrp.com  

Crystal L. Maluchnik (0077875)  
George H. Carr (0069372)  
JANIK L.L.P.  
3200 South Hill Blvd., Suite 300  
Cleveland, Ohio 44147  
440.838.7600  
Fax: 440.838.7601  
crystal.maluchnik@janiklaw.com  
george.carr@janiklaw.com