# EXHIBIT D

# DISTRIBUTOR CONTRACT 1

Lexmark International, Inc.

## AUTHORIZED SUPPLIES WHOLESALER AGREEMENT

Name and Address of Wholesaler:

Agreement No.: **LX00718**

Lexmark Office Address:
Lexmark International, Inc.
740 New Circle Rd NW
Lexington KY 40550

Contract Commencement Date: **01/28/04**

Thank you for selecting Lexmark as a supplier of Products, services, and support. Our goal is to be the best in the industry. If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc., (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States. Lexmark may issue Bulletins under this Agreement which change the terms of this Agreement. Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in written and electronic form from time to time. All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | | |
|---|---|---|---|---|
| 1.0 | DEFINITIONS | | 14.0 | TAXES |
| 2.0 | CONTRACT PERIOD | | 15.0 | STATUS CHANGE |
| 3.0 | RELATIONSHIP OF THE PARTIES | | 16.0 | TRADEMARKS AND TRADE NAMES |
| 4.0 | MARKETING TO RESELLERS | | 17.0 | PATENTS AND COPYRIGHTS |
| 5.0 | WHOLESALER RESPONSIBILITIES | | 18.0 | LIMITATION OF REMEDIES |
| 6.0 | ORDERS AND CANCELLATIONS | | 19.0 | INDEMNIFICATION |
| 7.0 | PRICES | | 20.0 | TERMINATION |
| 8.0 | PAYMENT | | 21.0 | CONFIDENTIAL INFORMATION |
| 9.0 | PRICE REDUCTION CREDIT | | 22.0 | GENERAL |
| 10.0 | INVENTORY ADJUSTMENTS | | 23.0 | WHOLESALER SPECIFIC INFORMATION |
| 11.0 | WARRANTIES | | | Minimum Renewal Criteria |
| 12.0 | SECURITY INTEREST | | | Authorized Locations |
| 13.0 | TITLE AND RIGHTS, RISK AND REWARDS | | | |
| | OF OWNERSHIP | | | |

**PAGES 2 THROUGH 6 ARE ALSO PART OF THIS AGREEMENT.** This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
Lexmark International, Inc.

Accepted by:

By _____    Authorized Signature

Joseph W. Jones    2/5/04
Name (Type or Print)    Date

12/31/02    Page 1 of 6

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2715

## 1.0  DEFINITIONS

Agreement means this Wholesaler Agreement, Bulletin(s), applicable Statements) of Limited Warranty and notices.

Authorized Location means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is not affiliated with your enterprise, who remarkets Products to End Users or Resellers. The term resellers means those customers of a Reseller who remarket the Products in the ordinary course of their business to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those items identified by Lexmark in notices that Lexmark sells to you for remarketing under the Agreement.

## 2.0  CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark.  The Agreement can be renewed by the parties for subsequent single 12 month contract periods.  Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date.  Either party can elect not to renew the Agreement with or without cause.

## 3.0  RELATIONSHIP OF THE PARTIES

As an independent contractor, you are not Lexmark's legal representative, franchisee, or agent for any purpose.

You will not make any warranties or representations on Lexmark's behalf other than those specified in the Agreement. Neither party will assume or create any obligations on the other's behalf except as specified in the Agreement.

You will market Products to Resellers at such prices and terms and conditions as you determine.  Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market Products which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the Minimum Renewal Criteria, for the Products you are approved to market.  Lexmark reserves the right to revise the objectives at any time.  Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews, including surveys of your Resellers, to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0  MARKETING TO RESELLERS

Your ability to provide high quality pre-sale and post-sale support, and to select quality Resellers to provide such support are key reasons Lexmark selected you as an authorized Wholesaler.  You, therefore, will market Products only to Resellers who can provide such support to End Users or resellers.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such an event, you are not authorized to market Products to the Reseller.

In order to better ensure End User satisfaction through your Resellers, Lexmark retains the option of issuing or not issuing Letters of Supply (or guarantees of supply) to you when you respond to any particular state, local or federal government procurement request.  Likewise, without Lexmark's written consent, you may not issue Letters of Supply relating to Lexmark Products to any reseller in connection with any government procurement.

## 5.0  WHOLESALER RESPONSIBILITIES

You agree to:

1) purchase from Lexmark the volume of products set forth in the Minimum Renewal Criteria;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users and resellers;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including Product explanation, demonstration, and ongoing support;
8) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety or support reasons;
9) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale. You must retain a copy of that sales receipt for one year from the date of sale or license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;
10) report your sales performance and inventory as requested by Lexmark;
11) receive and inventory Products only at your our Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;
12) advertise Products prominently in your marketing materials, advertising and catalogues;

12/31/02    Page 1 of 6

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2716

13) maintain a sufficient inventory of Products to satisfy
reasonably foreseeable Reseller demand;
14) maintain trained management, sales, support and
service personnel;
15) report promptly to Lexmark all suspected and actual
Product problems;
16) provide a Product business plan as required by
Lexmark;
17) notify Lexmark of any discrepancies between the
Lexmark shipping manifest and the Products received;
18) maintain good financial standing and provide financial
information and evidence of financial security upon
request;
19) maintain sufficient liability insurance to protect Lexmark
from all Reseller or End User claims for personal injury
arising out of any acts and/or omissions by you or your
employees or representatives. Upon request from
Lexmark, you are required to show proof of such
insurance;
20) allow Lexmark or its appointed auditor to audit, during
normal business hours, the above required records
and receipts.

## 6.0  ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast
requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request
for shipment dates subject to credit approval and Product
availability and consistent with Lexmark's production and supply
schedules.

Lexmark will insure for your benefit the order for risk of loss or
damage during the period it is in transit from Lexmark or its
agent up to its initial delivery to you or your designated ship-to
point.

You may cancel an order for any Product which Lexmark has
not shipped to you. Lexmark may charge you a Cancellation
charge of 2% of the canceled Product's Wholesaler price if the
cancellation was requested by you after the Product was
released for shipment by Lexmark.  A Product is generally
released for shipment one or two days before it ships.
However, you will not be liable for a cancellation charge if
Lexmark has postponed shipment of the Product for more than
15 days from its estimated shipment date, and you have
canceled your order for the Product before the Product's
shipment.

Lexmark will charge you a handling charge of 5% if you refuse
to accept delivery of any portion of a shipment you ordered. You
must prepay all transportation charges for return of the Product
to Lexmark.

## 7.0  PRICES

Lexmark will specify its Wholesaler prices in notices and an
electronic file.  Dealer prices are F.O.B. destination, unless
Lexmark specifies otherwise.  Lexmark may change its
Wholesaler prices at any time. Lexmark specified prices shall
apply in spite of any different pricing contained in Wholesaler
purchase orders, even if such purchase orders are accepted
and Product is shipped.

A Wholesaler price increase for a Lexmark Product is effective
on the date specified. Lexmark will announce a price increase
a minimum of 30 days prior to the effective date of the increase.
A price increase will not apply to a Product for which Lexmark
has accepted an order prior to the effective date, provided the
order specifies a requested ship date within the time frame
stated in the price increase notice.

A Wholesaler price decrease is effective on the date specified
and will apply to Products shipped on or after the effective date
of the decrease.

The MSRP is Lexmark's suggested resale price  and is subject
to change without notice. This price is for information purposes
only. Lexmark's and our remarketers prices may vary.
Lexmark may specify any additional fees and allowances in
notices.  Lexmark may change the fees and allowances at any
time.  Such changes will become effective on the date Lexmark
specifies.

Wholesaler Prices and minimum order quantities are set forth in
notices.  Each supply order for shipment to a single Authorized
Location must be for an amount of at least $2,500.

## 8.0  PAYMENT

You agree to pay Lexmark upon your receipt of an invoice,
unless otherwise specified by Lexmark. If you fail to pay,
Lexmark may:

1) impose a finance charge on the balance due;
2) exercise any of its rights provided in the Agreement or by
law;
3) require "cash with order" or "payment on account" prior
4) stop shipment of your orders if your account is past
due.

## 9.0  PRICE REDUCTION CREDIT

If Lexmark announces a Wholesaler price decrease for a
Product, you may be eligible to receive a price reduction credit.

The price reduction credit for supplies equals the credit amount
per item, as specified by Lexmark, multiplied by the quantity
shipped directly from Lexmark to you (minus returns from you) in
the prior sixty (60) days.

## 10.0 PRODUCT RETURNS/CLAIMS

### General Terms – Printer Products & Supplies
During a  contract period, you may return for credit
selected Products which you obtained directly from
Lexmark in the United States.  Lexmark will specify which
Products are returnable in notices or an electronic file.
Lexmark may issue notices clarifying Product return
policies that shall be effective on the date specified.

Lexmark may place limits on the amount of Product that
can be returned. All Product must be returned to Lexmark
within thirty (30) days after receiving authorization, to
ensure proper credit.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2717

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You may use such credit only against sums then or thereafter due Lexmark.

You must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark. For inkjet printers, marketable condition will include the presence of essential components as defined by Lexmark. Lexmark may impose a non-compliance fee on the Supplies Wholesaler if these essential components are not returned with the inkjet printer.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a handling charge of five percent (5%) multiplied by the Supplies Wholesaler price for any returned Product.

Lexmark may issue notices clarifying Product return policies, which shall be effective on the date, specified. For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

## Claims

For all claims that there has been a short ship of ordered Products (not all ordered Products were received) or all of the ordered Products were not received (mis-ship), you must submit a written claim to Lexmark within thirty (30) days of the scheduled/anticipated delivery date of the ordered Products relating to such claim. Any claims after of the above referenced thirty (30) days are expressly waived and Lexmark shall not be liable to you for any such claims (regardless of when you learned or could have learned of any of the facts surrounding the transaction or claim).

## Printer Products only - Stock Balance/Inventory Adjustment

One return shipment of any currently marketed printer Product for stock balancing is allowed per month.

Up to five percent (5%) of the prior quarter's purchases (rolling quarter) may be returned per month without a restocking charge. The Product returned must be accompanied by a new order of equal or greater value

than the return to avoid a five percent (5%) restocking charge.

## Printer Products only - Defective Product

Lexmark will replace printer Products or provide a credit to you for any currently marketed Lexmark printer Product found to be defective by you prior to the sale to the reseller. In addition, Lexmark will provide credit to you for any Lexmark printer Product returned defective by an End User within thirty (30) days of its purchase from your reseller.

The return of defective inkjet products must include the essential printer components as defined by Lexmark. Lexmark may impose a non-compliance fee to the supplies wholesaler if these essential components are not returned with the inkjet printer.

Defective discontinued printer Products to be eligible for credit must be returned to Lexmark within the dates specified by the discontinuance notice.

## Supplies - Stock Balance/Inventory Adjustment

Only four return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding twelve (12) months less any returns during that period.

The five percent (5%) Handling Charge for Supply Products, will be waived providing a replacement order worth 1.5 times the return value is provided by the supplies wholesaler at the same time of the return.

## Supplies - Defective Product

Lexmark will replace supplies Products or provide a credit to you for any found to be defective by you prior to the sale to the reseller. In addition, Lexmark will provide credit to you for any Lexmark supplies Product returned defective by an End User within the warranty period specified by Lexmark in the Statement of Limited Warranty.

Specific warranty process procedures are covered in separate warranty announcement letters.

## 11.0  WARRANTIES

Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2718

Unless Lexmark specifies otherwise, you will validate all warranty claims presented to you, and provide warranty support under the terms of the applicable Statement of Limited Warranty. Lexmark will honor your valid claims for warranty replacement product.

The performance of warranty support may be assigned to your Reseller. You will develop and maintain administrative procedures for providing warranty replacement Product for your Resellers. Only you can obtain warranty replacement Product from Lexmark in accordance with the procedures Lexmark provides you.

Your assignment of responsibility for warranty support does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty support reverts to you if the End User is not satisfied with the warranty support provided by your Reseller or if the Reseller loses your authorization to provide such warranty support.

## 12.0  SECURITY INTEREST

Lexmark reserves, and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 13.0  TITLE AND RIGHTS, RISKS AND REWARDS OF OWNERSHIP

Title and all rights, risks and rewards of ownership transfer to you upon shipment of the product from Lexmark, or its agent. Title for each copy of a licensed program remains with Lexmark.

Lexmark will insure for your benefit the order for risk of loss or damage during the period it is in transit from Lexmark or its agent up to its initial delivery to you.

## 14.0  TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a

refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 15.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise; or
4) relocation or closing of an Authorized Location.

## 16.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Wholesaler:

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States.

Except as provided for in this Section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Wholesaler" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing. At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Wholesaler" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2719

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively. You agree not to contest Lexmark or IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names. IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks or if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 17.0 PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a Product in your inventory, or the operation of a Product while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the Product or to replace or modify it so that it becomes noninfringing. However, if neither of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected Product, and you will return the Product in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned Product. However, Lexmark may, for selected Product, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the Product as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of Products or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you and your entire remedy for Products regarding infringement or the like.

## 18.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of Products located outside the United States. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark Product. In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such

damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in section 17.0 and the first paragraph of section 19.0, Lexmark's liability for actual damages will be limited to $100,000.

## 19.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 20.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Wholesaler as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Wholesaler, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than an Reseller.

Lexmark may also terminate the Agreement immediately in the event that a Wholesaler or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods and/or gray market goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have been acquired from a source other than IBM or Lexmark or an Authorized Lexmark Wholesaler or Distributor in the U.S.).

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, you will pay return-shipping charges. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2720

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, an Aggregator relationship, or specific Resellers.

## 21.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 22.0 GENERAL

Lexmark's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of Kentucky will govern the Agreement.

## 23.0 WHOLESALER SPECIFIC INFORMATION

### Minimum Renewal Criteria

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

The Minimum Renewal requirement for Supplies product is

### Authorized Ship to and Bill to Locations

All Authorized ship to and bill to Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.

| HQ/ Bill-to: | Customer# Locid# |
| --- | --- |

Authorized Ship-to locations:

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2721

# MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Agreement NO: LX00718

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Supplies Wholesaler Agreement, executed by and between the parties on or about January 2004 ("Wholesaler Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Wholesaler Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and [ ] will be deemed to have accepted the Offer, unless [ ] provides written notice to Lexmark within ten business days of receipt of the Offer indicating that [ ] does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, [ ] will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

*TERM*

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2722

A termination of this Agreement shall not result in the termination of the Distributor Agreement, but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ███████████ for resale to a Reseller, ████████████ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.  Offers cannot be combined with any special bid pricing or other promotional offer.

2.  Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.  Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.  All rebates are conditioned on ██████████ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.  Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in

██████████████  Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2723

full force and effect.

Accepted by:

**LEXMARK INTERNATIONAL, INC.**

By: _____
Authorized Signature

3/15/12   Bill Murdoch
Name (type/print) Date

Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2724

*Parent*
*6140309*

# DISTRIBUTOR CONTRACT 2

**Lexmark International, Inc.**

## AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.:    **LX00646**

███████████████

Contract Commencement Date:    **2-09-01**
New Revised Agreement Sent    **3-29-01**

Lexmark Office Address:
  740 New Circle Road
  Lexington, Ky  40550

Thank you for selecting Lexmark as a supplier of Products, services, and support.   Our goal is to be the best in the industry.   If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc., (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States.  Lexmark may issue Bulletins under this Agreement that change the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in written and electronic form from time to time.  All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | | |
|---|---|---|---|---|
| 1.0 | DEFINITIONS | | 19.0 | STATUS CHANGE |
| 2.0 | CONTRACT PERIOD | | 20.0 | TRADEMARKS AND TRADE NAMES |
| 3.0 | RELATIONSHIP OF THE PARTIES | | 21.0 | PATENTS AND COPYRIGHTS |
| 4.0 | MARKETING TO END USERS | | 22.0 | LIMITATION OF REMEDIES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | | 23.0 | INDEMNIFICATION |
| 6.0 | ORDERS AND CANCELLATIONS | | 24.0 | TERMINATION |
| 7.0 | PRICES | | 25.0 | CONFIDENTIAL INFORMATION |
| 8.0 | PAYMENT | | 26.0 | GENERAL |
| 9.0 | PRICE REDUCTION CREDIT | | 27.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 10.0 | PRODUCT RETURNS | | | Eligible Products |
| 11.0 | WARRANTIES | | | Minimum Renewal Criteria |
| 12.0 | WARRANTY SERVICE | | | Marketing Coverage Area |
| 13.0 | MAINTENANCE PARTS | | | Authorized Locations |
| 14.0 | ENGINEERING CHANGES | | | |
| 15.0 | LICENSED PROGRAMS | | | |
| 16.0 | SECURITY INTEREST | | | |
| 17.0 | TITLE AND RISK OF LOSS | | | |
| 18.0 | TAXES | | | |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT.** This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

By  *Ken Brooks*
  _____
  *Ken Brooks*    Authorized Signature    *6/13/01*
  Name  (Type or Print)                Date

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    **A2725**

## 1.0 DEFINITIONS

Agreement means this Distributor Agreement, Bulletin(s), applicable Statements) of Limited Warranty and notices.

Authorized Location means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is either not affiliated with your enterprise, or who could be affiliated if company owned, who remarkets Products to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those items identified in section 27.0 which you can market under this Agreement.

## 2.0 CONTRACT PERIOD

The Agreement has a single 12-month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12-month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0 RELATIONSHIP OF THE PARTIES

It is understood and agreed the Manufacturer and Distributor are independent contractors and each is engaged in the operation of its own business and neither will be considered the agent of the other for any purpose whatsoever. Nothing contained in the agreement will be construed to established a relationship that would allow either party to make representations or warranties on behalf of the other except as expressly set forth herein.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market Products, which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the Minimum Renewal Criteria, for the Products you are approved to market. Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0 MARKETING TO RESELLERS

The Products you market under the Agreement require your high quality individualized pre-sale and post-sale support. This support is necessary to achieve and maintain high Reseller and End User satisfaction. Your ability to provide this support, and to select quality Resellers to provide this support are key reasons Lexmark selected you as an authorized distributor. You, therefore, will market Products only to Resellers who can provide such support to End-Users.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

In order to better ensure End User satisfaction through your Resellers, , Lexmark retains the option of issuing or not issuing Letters of Supply (or guarantees of supply) to you when you are requested to provide a Letter of Supply by a Reseller responding to any particular state, local or federal government procurement request. Likewise, without Lexmark's written consent, you may not issue a Letter of Supply relating to Lexmark Products to any Reseller in connection with any government procurement.

Your agree not to market Lexmark Products to other distributors, except as agreed to by Lexmark.

## 5.0 DISTRIBUTOR RESPONSIBILITIES

You agree to:
1.   maintain a reasonable inventory of Products in order to satisfy anticipated sales thereof;
2.   develop and promote demand for the Products;
3.   ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users;
4.   ensure that End User satisfaction is maintained by your Resellers;
5.   pass through to your Resellers certain marketing programs as specified by Lexmark;
6.   treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7.   ensure that the Reseller is satisfied with all your Product marketing activities, including Product explanation, demonstration, and ongoing support;
8.   maintain a record for each unit of Product sold or licensed. Records are not required for Supplies. A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable. You must retain the record for all Products that are laser printers or that contain a video display for at least five years after the date of sale, and shall retain records for all other Products, excluding Supplies, for the longest period of time that you customarily retain such records. You must assist Lexmark, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons;
9.   ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety reasons;
10.  furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale or license and the serial number, if any, of the Product sold or licensed. You must retain a copy of that sales receipt for one year from the date of sale or

license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;

11. Report your sales performance and inventory as requested by Lexmark. You will submit reports to Lexmark by the 5th workday of every month. These reports will detail your on hand inventory and monthly sales performance. Updated reporting forms will be provided to you monthly, identifying the pertinent Lexmark products to be reported. Lexmark may change the reporting requirements from time to time, through Lexmark announcements.

12. receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;

13. advertise Products prominently in your marketing materials, advertising and catalogues;

14. maintain trained management, sales, and support personnel;

15. report promptly to Lexmark all suspected and actual Product problems;

16. provide a Product business plan as required by Lexmark;

17. notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;

18. maintain good financial standing and provide financial information and evidence of financial security upon request;

19. maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and

20. allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0  ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product, which Lexmark has not shipped to you. Lexmark may charge you a Cancellation charge of 2% of the canceled Product's Distributor price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a cancellation charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have canceled your order for the Product before the Product's shipment.

Lexmark will charge you a handling charge of 5% if you refuse to accept delivery of any portion of a shipment you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

Each order is required to have a single ship-to-address.

## 7.0  PRICES

Lexmark will specify its Distributor prices in notices and an electronic file. Distributor prices are F.O.B. destination, unless Lexmark specifies otherwise.    Lexmark may change its Distributor prices at any time. Lexmark specified prices shall apply in spite of any different pricing contained in Distributor purchase orders, even if such purchase orders are accepted and Product is shipped.

A Distributor price increase for a Lexmark Product is effective on the date specified. Lexmark will announce a price increase a minimum of 30 days prior to the effective date of the increase. A price increase will not apply to a Product for which Lexmark has accepted an order prior to the effective date, provided the order specifies a requested ship date within the time frame stated in the price increase notice.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

The MSRP is Lexmark's suggested resale price for product acquired by End Users directly from Lexmark and is subject to change without notice. This price is for information purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

### Printers

Your price schedule will be based on your annual revenue attainment for printers, features and options.

You may be put on a different price schedule based on actual performance. Lexmark will notify you in writing thirty (30) days prior to a change in your price schedule.

Your price schedule reflects full pallet prices. A non-full pallet freight/handling charge of 1% will be added to any non-full pallet order. This charge applies only to printers, not printer features. Mixed pallets do not qualify as full pallets. Lexmark may identify in notices those printer models that are not subject to the 1% non-full pallet charge.

### Typewriters

Price schedules for typewriters are based on a single order, with a single shipment to a single location unless Lexmark specifies otherwise.

| | | |
|---|---|---|
| Schedule  I  — | Invoice value under $10,000 |
| Schedule  II  — | Invoice value of at least $10,000 |
| Schedule  III  — | Invoice value of at least $20,000 |

All typewriter models may be aggregated for purposes of determining invoice value. Features may not be included for purposes of determining invoice value.

### Supplies

Distributor Prices and minimum order quantities are based on a single order with an invoice value of at least $500, ordered in minimum order quantities as set forth in notices, for a single shipment to a single location unless Lexmark specifies otherwise.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2727

## 8.0  PAYMENT

You agree to pay Lexmark upon your receipt of an invoice, unless otherwise specified by Lexmark. If you fail to pay, Lexmark may:

I.   impose a finance charge on the undisputed balance due; and
II.  exercise any of its rights provided in the Agreement or by law;
III. require "cash with order" or "payment on account" prior to accepting your orders; and/or
IV.  stop shipment of your orders if your account is past due.

## 9.0  PRICE REDUCTION CREDIT

If Lexmark announces a Distributor price decrease for a Product, you may be eligible to receive a price reduction credit.

### Printers, Printer features and Typewriters

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date specified in the notice.

In order to qualify for a price reduction credit, you must:

1)  provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2)  provide access, during normal business hours, to allow Lexmark to audit applicable records and inventory.

### Typewriter Features and Supplies, Printer Supplies

The price reduction credit for Typewriter features and supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior sixty (60) days.

## 10.0  PRODUCT RETURNS

### General Terms - Printers, Typewriters, Printer & Typewriter Features, Supplies

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices or an electronic file. Lexmark may issue notices clarifying Product return policies that shall be effective on the date specified.

Lexmark may place limits on the amount of Product that can be returned. All Product must be returned to Lexmark within thirty (30) days after receiving authorization, to ensure proper credit. Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You may use such credit only against sums then or thereafter due Lexmark.
You must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark. This requirement is not applicable to defective Product.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a handling charge of 5% multiplied by the Distributor price for any returned Product.

Lexmark may issue notices clarifying Product return policies, which shall be effective on the date, specified. For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

### Printer Products only - Stock Balance/Inventory Adjustment

One return shipment of any currently-marketed printer Product for stock balancing is allowed per month.

Up to 5% of the prior quarter's purchases (rolling quarter) may be returned per month without a restocking charge.  The Product returned must be accompanied by a new order of equal or greater value than the return to avoid a 5% restocking charge.

Replacement orders entered to qualify as a stock balancing Product return must be for normal delivery. Such orders do not qualify for deferred delivery schedules.

Cancellation of an order entered as stock balancing replacement order will result in a restocking charge to the Distributor that equals 5% of the value of the associated return.

Discontinued printer Products may be returned under the stock balancing returns provisions, as long as such return is within the dates specified by the discontinuance notice.

Additional returns above the stock balancing monthly 5% maximum are allowed up to a maximum return of 15% of prior quarter's purchases. These additional returns will be treated as inventory adjustments and charged a 5% restocking charge.

### Printer Products only - Defective Product

Lexmark will replace printer Products or provide a credit to you for any currently marketed Lexmark printer Product found to be defective by you prior to the sale to the Reseller. In addition, Lexmark will provide credit to you for any Lexmark printer Product returned defective by an End User within 30 days of its purchase from your reseller.

Defective discontinued printer Products to be eligible for credit must be returned to Lexmark within the dates specified by the discontinuance notice.

### Typewriter Features

The maximum number of features you may return is equal to the number of features shipped to you by Lexmark in the

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2728

immediately preceding six months less any returns during that period.

**Supplies**

Only four return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding twelve months less any returns during that period.

The 5% Handling Charge for Supply Products, will be waived providing a replacement order worth 1.5 times the return value is provided by the distributor at the same time of the return.

**11.0 WARRANTIES**

Lexmark will include the applicable Statement of Limited Warranty with machines shipped. Lexmark will provide you a copy of the Statement of Limited Warranty, which you are to provide to your Reseller for the End User at the time of sale to the End User. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End user knows how to obtain warranty service.

**12.0 WARRANTY SERVICE**

**Printer/Printer features**

Providing printer warranty service is optional for printer Distributors. If you desire to provide printer warranty service and receive warranty reimbursement from Lexmark, you must first sign a Lexmark Authorized Servicer Agreement and comply with its terms.

**Typewriters, Typewriter features and supplies**

The Service Support Guide is incorporated in the Agreement by reference.

Unless Lexmark specifies otherwise, for typewriters and supplies you will:

1) provide warranty service under the terms of the applicable Statement of Limited Warranty and in accordance with the Service Support Guide;
2) validate all warranty claims presented to you; and
3) maintain the capability to provide warranty service according to the requirements and procedures specified in the Service Support Guide.

Lexmark will:

1) provide at no fee, one (1) copy of requested self-education service materials per Authorized Locations.
2) make available to you, for a fee, a) service training for additional service personnel, and b) additional service materials; and
3) honor your valid claims for warranty reimbursement for parts or exchange of parts as specified in the Service Support Guide

The performance of warranty service may be assigned to your Reseller. The Reseller must have the required number of employees, whom you have trained, to perform warranty service in accordance with procedures Lexmark identifies to you. The Reseller must agree with you to accept the responsibility to provide warranty service for the products acquired from you. You must provide such Reseller with service updates, maintenance manuals and the necessary parts to perform warranty service.

You will develop and maintain administrative procedures for providing warranty reimbursement to your Reseller. Only you can obtain warranty reimbursement from Lexmark in accordance with the procedures Lexmark provides you.

Your assignment of responsibility for warranty service does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty service reverts to you if the End User is not satisfied with the warranty service provided by your Reseller or if your Reseller loses your authorization to provide such warranty service. You may subsequently reassign such responsibility consistent with the provisions of this section. In such event, you are responsible to provide the End User and the new Reseller written notice of the change.

**13.0 MAINTENANCE PARTS**

Lexmark will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers for the sole purpose of maintaining their machines.

**14.0 ENGINEERING CHANGES**

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed as specified by Lexmark on the machines. You, your Reseller, or their End User may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

**15.0 LICENSED PROGRAMS**

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement and any accompanying End User License Agreement or a third party agreement.
You agree to accept return of a licensed program, provided it is in its original, unopened package, and refund the money paid by an End User who does not wish to be bound by the license. If the license permits the return of a program with an accompanying specified Product, you agree to accept the return of the program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in Product announcement letters. In addition, certain programs, as identified in their accompanying End User license agreement,

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2729

when distributed to the U.S. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software.

## 16.0  SECURITY INTEREST

This section is not applicable to this agreement.

## 17.0  TITLE AND RISK OF LOSS

Title passes to you for each machine on its date of shipment from Lexmark.   Title for each copy of a licensed program remains in Lexmark.

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 18.0  TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement.  Such taxes do not include taxes based on Lexmark's net income.  You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Distributor (Reseller) Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement.  If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Distributor (Reseller) Exemption Certificate so provided.  You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Distributor (Reseller) Exemption Certificates.

## 19.0  STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise; or
4) relocation or closing of an Authorized Location.

## 20.0  TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor, or if you sell typewriter Products, as a Lexmark Authorized Master Dealer:

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States

Except as provided for in this Section, Lexmark does not grant you the right to use trademarks or trade names.  Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark

under the Agreement.  You may use the trademarks "Lexmark" or "IBM" only within the United States.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing.   At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement.  In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks, which are required to fulfill your warranty service, or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them.  You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill, which accrues because of your use of the trademarks "Lexmark" or "IBM", will become Lexmark's or IBM's property, respectively.  You agree not to contest Lexmark or IBM trademarks or trade names.  You agree not to use, employ or attempt to register any trademarks or trade names, which are confusingly similar to Lexmark or IBM trademarks or trade names.  IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks or if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 21.0  PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States.  Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim.  To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a machine in your inventory, or the operation of a machine while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2730

permit Lexmark, at its option and expense, either to secure the right for you to continue using the machine or to replace or modify it so that it becomes non-infringing. However, if neither of the foregoing alternatives is available on terms, which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected machines, and you will return the machines in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned machine. However, Lexmark may, for used machines, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the machines as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you and your entire remedy for machines regarding infringement or the like.

## 22.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of Products or programming located outside the United States. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark's entire liability and your exclusive remedy for actual damages from your use of licensed programs are as set forth in their accompanying program license agreement.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark Product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.
For any claim for any cause whatsoever, other than those provided for in section 21.0 and the first paragraph of section 23.0, Lexmark's liability for actual damages will be limited to $100,000.

## 23.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 24.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may also terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark).

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some of all of the current Lexmark Products in your inventory at the most current Lexmark Price. Lexmark may consider repurchasing some or all of Lexmark product which has been withdrawn from marketing at a price agreed to by both parties. In such event, return shipping charges will be paid by you. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, a specific Reseller relationship, or the approval to market to Distributor Associates.

## 25.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0  GENERAL

Either party's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of Kentucky will govern the Agreement.

## 27.0  DISTRIBUTOR SPECIFIC INFORMATION

### Eligible Products

You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices and an electronic file. Specific certification may also be required for certain Products.

Printers __YES___          Supplies __YES____

Typewriters _____      Other (as listed)

### Minimum Renewal Criteria

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

Product _____ Minimum Renewal Criteria

### Marketing Coverage Area

Your approved marketing coverage area(s), listed by Authorized Location, by county and state, is:

### Authorized Ship to and Bill to Locations

All Authorized ship to and bill to Locations must be approved in writing by Lexmark and listed on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark. *
*Please see attached list.

### Ship to a Non-Authorized Location

If you request Lexmark to ship to a Non Authorized Location, a 1% Drop Ship fee will be added to your order. The Drop Ship fee will be calculated on all Printer Products, which are being Drop Shipped to the Non-Authorized location. A minimum fee of $50.00 will be imposed.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2732

# AMENDMENT TO AUTHORIZED DISTRIBUTOR AGREEMENT LX00646

This Amendment ("Amendment") is made and entered this 20ᵗʰ day of July, 2004 (the "Effective Amendment Date") and modifies Authorized Distributor Agreement No. LX00646 (the "Agreement") by and between Lexmark International, Inc. ("Lexmark") and ███████████████ ("Distributor"). In the event of a conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment shall prevail. Except as expressly modified herein, the terms of the Agreement shall remain in full force and effect.

**Part I**

The pricing, rebates, and terms of Part I of this Amendment apply only to sales of products (i.e., inkjet printers, inkjet all-in-one products, inkjet cartridges, and other products specified in writing by Lexmark as eligible to participate in this program) to Distributor that shall be resold by Distributor to Retailer (as used in this Amendment, "Retailer" means ███████████ Lexmark incentives, promotions, rebates, and other marketing support (if any) and terms for products sold to Distributor for resale to other resellers shall be excluded from the re-sales described in Part I of this Amendment.

### 1.0 Orders

1.1    Retailer has designated Distributor as Retailer exclusive distributor for Lexmark Products. Distributor, at its sole expense, shall receive, accept, process, and fulfill Retailer orders for Lexmark products.

1.2    Lexmark shall not be responsible for any Retailer imposed routing/shipping fees, fines, or penalties.

### 2.0 Pricing and Invoicing

2.1    Pricing for products sold to ███ for resale to Retailer pursuant to this Amendment shall be at Lexmark's best dealer price for such products. Payment terms are net 30 days from invoice date.

2.2    Lexmark will rebate the following amounts to Distributor for products sold pursuant to this Amendment: (1) For printers and All-In-One units, ████ percent of net sales based on Lexmark's best dealer price (sales price less, e.g., returns, price protection, taxes, or other credits); (2) For inkjet cartridges, ████ percent of net sales based on Lexmark's best dealer price (sales price less, e.g., returns, price protection, taxes, or other credits); (3) for printers and cartridges returned to Distributor by Retailer, ████ per unit when claimed, provided, Distributor's claim shall include a detailed report listing sales to Retailer and Retailer returns, and further provided, the audit rights described in Section 9.0 (2) of the Agreement shall apply. The rebates will be paid via invoice credit against future purchases. Lexmark will use reasonable commercial efforts to process such invoice credits in the month following receipt of the required reporting. In no event shall Distributor be entitled to deduct from invoice the credits described in this Section 2.3 unless Lexmark has issued an invoice credit.

2.3    Distributor shall be solely responsible for invoicing and collecting payment for products sold by Distributor to Retailer. Distributor acknowledges and agrees that Lexmark does not guaranty, represent, warrant, or otherwise assure payment by Retailer corporation to Distributor for products sold by Distributor to Retailer.

### 3.0 Returns and Price Protection

3.1    Lexmark may from time to time remit to ████ "pass through" price protection dollars for goods in-transit to Retailer and for goods in Retailer inventory. Lexmark will designate such rebates as price protection pass through dollars. ████ will promptly forward 100 percent of all such price protection dollars to Retailer as directed by Lexmark. At Lexmark's sole and absolute discretion, such dollars may be remitted in the form of credit against future purchases by ████.

3.2    Lexmark will accept from ███ Retailer returns relating to defective products, provided all such returns conform to Lexmark's defective product return policies, which shall be provided upon request, and

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2733

AUG-05-04 THU 08:59 AM                                                    P. 05

further subject to ███ providing verification data and subject to the other conditions of this Section 3.3. Lexmark will provide credit against future purchases for accepted returns, and all credit shall be at ███ net purchase price (e.g., less any rebates, marketing support, and/or price protection). All defective product returns are subject to receipt of a Lexmark return authorization number and subject to Lexmark's return authorization policies. Lexmark will pay return shipment costs for authorized defective product returns.

### 4.0  Miscellaneous

4.1  Unless expressly permitted in this Amendment, Distributor shall not be entitled to set-off or deduct any amounts from Lexmark invoices.

4.2  Unless expressly authorized in the Amendment or via a subsequent written program letter from Lexmark, Distributor shall not be entitled to receive any discounts, co-op, MDF, rebates, or other marketing payments for products sold pursuant to this Amendment.

4.3  This Amendment supersedes and replaces all prior and contemporaneous discussions, negotiations, and agreements, whether oral or written, relating to its subject matter.

4.4  This Amendment may be terminated by Lexmark, with or without cause, on 90 days written notice.

4.5  This Amendment supercedes and replaces any and all prior agreements between the parties concerning resale of products to Retailer.

5.0  Termination
        Should Retailer decide to de-list a significant amount of Lexmark products sold to Distributor for resale to Retailer pursuant to this Agreement, then Lexmark will use commercially reasonable efforts to assist Distributor in locating alternative resellers for any such products returned to Distributor by Retailer.

**Part II**

The Agreement is further amended as follows:

Unless: (a) expressly required elsewhere in this Agreement, or (b) otherwise mutually agreed by Lexmark in writing, Lexmark shall not be obligated to accept any returns of products from Distributor.

AGREED TO AND ACCEPTED:

████████████████████

Lexmark International, Inc.

By: _~signature~_

Its: _Director FP&D - CPD_

Date: _8/5/04_

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2734

# MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Agreement N0:LX00646

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Distributor Agreement, executed by and between the parties on or about June 2001 ("Distributor Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Distributor Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and ▮▮▮ will be deemed to have accepted the Offer, unless ▮▮▮ provides written notice to Lexmark within ten business days of receipt of the Offer indicating that ▮▮▮ does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ▮▮▮▮▮▮ will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

*TERM*

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

A termination of this Agreement shall not result in the termination of the Distributor Agreement.

▮▮▮ Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  **A2735**

but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ███ for resale to a Reseller, ███ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.  Offers cannot be combined with any special bid pricing or other promotional offer.

2.  Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.  Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.  All rebates are conditioned on ███ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.  Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

███ Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2736

Accepted by:

**LEXMARK INTERNATIONAL, INC.**

By: _Jeff B Hoagland_
 Authorized Signature

_Jeff Hoagland 3/24/12_
Name (type/print) Date



Master Lexmark Promotion Agreement March 1, 2012

# DISTRIBUTOR CONTRACT 3

**Lexmark International, Inc.**

## AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.:   LP72111

Contract Commencement Date:   April 6, 2001

Lexmark Office Address:
    740 NEW CIRCLE ROAD
    LEXINGTON, KY 40550

Thank you for selecting Lexmark as a supplier of Products, services, and support.  Our goal is to be the best in the industry.  If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc., (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States.  Lexmark may issue Bulletins under this Agreement that change the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in written and electronic form from time to time.  All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | |
|---|---|---|---|
| 1.0 | DEFINITIONS | 19.0 | STATUS CHANGE |
| 2.0 | CONTRACT PERIOD | 20.0 | TRADEMARKS AND TRADE NAMES |
| 3.0 | RELATIONSHIP OF THE PARTIES | 21.0 | PATENTS AND COPYRIGHTS |
| 4.0 | MARKETING TO END USERS | 22.0 | LIMITATION OF REMEDIES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | 23.0 | INDEMNIFICATION |
| 6.0 | ORDERS AND CANCELLATIONS | 24.0 | TERMINATION |
| 7.0 | PRICES | 25.0 | CONFIDENTIAL INFORMATION |
| 8.0 | PAYMENT | 26.0 | GENERAL |
| 9.0 | PRICE REDUCTION CREDIT | 27.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 10.0 | PRODUCT RETURNS | | Eligible Products |
| 11.0 | WARRANTIES | | Minimum Renewal Criteria |
| 12.0 | WARRANTY SERVICE | | Marketing Coverage Area |
| 13.0 | MAINTENANCE PARTS | | Authorized Printer Locations |
| 14.0 | ENGINEERING CHANGES | | Printer Drop Ship Policy |
| 15.0 | LICENSED PROGRAMS | | |
| 16.0 | SECURITY INTEREST | | |
| 17.0 | TITLE AND RISK OF LOSS | | |
| 18.0 | TAXES | | |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT.**  This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement.  Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

By _Neal A._

Neal A. Quin                    Authorized Signature          4/17/01

Name  (Type or Print)                                    Date

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2738

## 1.0  DEFINITIONS

Agreement means this Distributor Agreement, Bulletin(s), applicable Statements) of Limited Warranty and notices.

Authorized Location means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is either not affiliated with your enterprise, or who could be affiliated if company owned, who remarkets Products to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those items identified in section 27.0 which you can market under this Agreement.

## 2.0  CONTRACT PERIOD

The Agreement has a single 12-month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12-month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0  RELATIONSHIP OF THE PARTIES

It is understood and agreed the Manufacturer and Distributor are independent contractors and each is engaged in the operation of its own business and neither will be considered the agent of the other for any purpose whatsoever. Nothing contained in the agreement will be construed to established a relationship that would allow either party to make representations or warranties on behalf of the other except as expressly set forth herein.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market Products, which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the Minimum Renewal Criteria, for the Products you are approved to market.  Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0  MARKETING TO RESELLERS

The Products you market under the Agreement require your high quality individualized pre-sale and post-sale support.  This support is necessary to achieve and maintain high Reseller and End User satisfaction.  Your ability to provide this support, and to select quality Resellers to provide this support are key reasons Lexmark selected you as an authorized distributor.  You, therefore, will market Products only to Resellers who can provide such support to End-Users.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

In order to better ensure End User satisfaction through your Resellers, , Lexmark retains the option of issuing or not issuing Letters of Supply (or guarantees of supply) to you when you are requested to provide a Letter of Supply by a Reseller responding to any particular state, local or federal government procurement request. Likewise, without Lexmark's written consent, you may not issue a Letter of Supply relating to Lexmark Products to any Reseller in connection with any government procurement.

Your agree not to market Lexmark Products to other distributors, except as agreed to by Lexmark.

## 5.0  DISTRIBUTOR RESPONSIBILITIES

You agree to:
1.   maintain a reasonable inventory of Products in order to satisfy anticipated sales thereof;
2.   develop and promote demand for the Products;
3.   ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users;
4.   ensure that End User satisfaction is maintained by your Resellers;
5.   pass through to your Resellers certain marketing programs as specified by Lexmark;
6.   treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7.   ensure that the Reseller is satisfied with all your Product marketing activities, including Product explanation, demonstration, and ongoing support;
8.   maintain a record for each unit of Product sold or licensed. Records are not required for Supplies.  A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable.  You must retain the record for all Products that are laser printers or that contain a video display for at least five years after the date of sale, and shall retain records for all other Products, excluding Supplies, for the longest period of time that you customarily retain such records. You must assist Lexmark, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons;
9.   ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety reasons;
10.  furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale or license and the serial number, if any, of the Product sold or licensed. You must retain a copy of that sales receipt for one year from the date of sale or

CONFIDENTIAL - OUTSIDE COUNSEL ONLY     A2739

license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;

11. Report your sales performance and inventory as requested by Lexmark. You will submit reports to Lexmark by the 5th workday of every month. These reports will detail your on hand inventory and monthly sales performance. Updated reporting forms will be provided to you monthly, identifying the pertinent Lexmark products to be reported. Lexmark may change the reporting requirements from time to time, through Lexmark announcements.

12. receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;

13. advertise Products prominently in your marketing materials, advertising and catalogues;

14. maintain trained management, sales, and support personnel;

15. report promptly to Lexmark all suspected and actual Product problems;

16. provide a Product business plan as required by Lexmark;

17. notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;

18. maintain good financial standing and provide financial information and evidence of financial security upon request;

19. maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and

20. allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0 ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product, which Lexmark has not shipped to you. Lexmark may charge you a Cancellation charge of 2% of the canceled Product's Distributor price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a cancellation charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have canceled your order for the Product before the Product's shipment.

Lexmark will charge you a handling charge of 5% if you refuse to accept delivery of any portion of a shipment you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

Each order is required to have a single ship-to-address.

## 7.0 PRICES

Lexmark will specify its Distributor prices in notices and an electronic file. Distributor prices are F.O.B. destination, unless

Lexmark specifies otherwise. Lexmark may change its Distributor prices at any time. Lexmark specified prices shall apply in spite of any different pricing contained in Distributor purchase orders, even if such purchase orders are accepted and Product is shipped.

A Distributor price increase for a Lexmark Product is effective on the date specified. Lexmark will announce a price increase a minimum of 30 days prior to the effective date of the increase. A price increase will not apply to a Product for which Lexmark has accepted an order prior to the effective date, provided the order specifies a requested ship date within the time frame stated in the price increase notice.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

The MSRP is Lexmark's suggested resale price for product acquired by End Users directly from Lexmark and is subject to change without notice. This price is for information purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

### Printers

Your price schedule will be based on your annual revenue attainment for printers, features and options.

You may be put on a different price schedule based on actual performance. Lexmark will notify you in writing thirty (30) days prior to a change in your price schedule.

Your price schedule reflects full pallet prices. A non-full pallet freight/handling charge of 1% will be added to any non-full pallet order. This charge applies only to printers, not printer features. Mixed pallets do not qualify as full pallets. Lexmark may identify in notices those printer models that are not subject to the 1% non-full pallet charge.

### Typewriters

Price schedules for typewriters are based on a single order, with a single shipment to a single location unless Lexmark specifies otherwise.

| Schedule I | — | Invoice value under $10,000 |
| Schedule II | — | Invoice value of at least $10,000 |
| Schedule III | — | Invoice value of at least $20,000 |

All typewriter models may be aggregated for purposes of determining invoice value. Features may not be included for purposes of determining invoice value.

### Supplies

Distributor Prices and minimum order quantities are based on a single order with an invoice value of at least $1000.00, ordered in minimum order quantities as set forth in notices, for a single

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2740

shipment to a single location unless Lexmark specifies otherwise.

## 8.0 PAYMENT

You agree to pay Lexmark upon your receipt of an invoice, unless otherwise specified by Lexmark. If you fail to pay, Lexmark may:

1) impose a finance charge on the balance due; and
2) exercise any of its rights provided in the Agreement or by law;
3) require "cash with order" or "payment on account" prior to accepting your orders; and/or
4) stop shipment of your orders if your account is past due.

## 9.0 PRICE REDUCTION CREDIT

If Lexmark announces a Distributor price decrease for a Product, you may be eligible to receive a price reduction credit.

### Printer Products and Typewriters

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date specified in the notice.

In order to qualify for a price reduction credit, you must:

1) provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2) provide access, during normal business hours, to allow Lexmark to audit applicable records and inventory.

### Typewriter Features and Supplies

The price reduction credit for Typewriter features and supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior sixty (60) days.

## 10.0 PRODUCT RETURNS

### General Terms - Printers, Typewriters, Printer & Typewriter Features, Supplies

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices or an electronic file. Lexmark may issue notices clarifying Product return policies that shall be effective on the date specified.

Lexmark may place limits on the amount of Product that can be returned. All Product must be returned to Lexmark within thirty (30) days after receiving authorization, to ensure proper credit. Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You may use such credit only against sums then or thereafter due Lexmark.

You must return all Products to Lexmark, transportation prepaid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark. This requirement is not applicable to defective Product.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a handling charge of 5% multiplied by the Distributor price for any returned Product.

Lexmark may issue notices clarifying Product return policies, which shall be effective on the date, specified. For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

### Printer Products only - Stock Balance/Inventory Adjustment

One return shipment of any currently-marketed printer Product for stock balancing is allowed per month.

Up to 5% of the prior quarter's purchases (rolling quarter) may be returned per month without a restocking charge. The Product returned must be accompanied by a new order of equal or greater value than the return to avoid a 5% restocking charge.

Replacement orders entered to qualify as a stock balancing Product return must be for normal delivery. Such orders do not qualify for deferred delivery schedules.

Cancellation of an order entered as stock balancing replacement order will result in a restocking charge to the Distributor that equals 5% of the value of the associated return.

Discontinued printer Products may be returned under the stock balancing returns provisions, as long as such return is within the dates specified by the discontinuance notice.

Additional returns above the stock balancing monthly 5% maximum are allowed up to a maximum return of 15% of prior quarter's purchases. These additional returns will be treated as inventory adjustments and charged a 5% restocking charge.

### Printer Products only - Defective Product

Lexmark will replace printer Products or provide a credit to you for any currently marketed Lexmark printer Product found to be defective by you prior to the sale to the Reseller. In addition, Lexmark will provide credit to you for any Lexmark printer Product returned defective by an End User within 30 days of its purchase from your reseller.

Defective discontinued printer Products to be eligible for credit must be returned to Lexmark within the dates specified by the discontinuance notice.

### Typewriter Features

The maximum number of features you may return is equal to the number of features shipped to you by Lexmark in the

immediately preceding six months less any returns during that period.

**Supplies**

Only four return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding twelve months less any returns during that period.

The 5% Handling Charge for Supply Products, will be waived providing a replacement order worth 1.5 times the return value is provided by the distributor at the same time of the return.

## 11.0 WARRANTIES

Lexmark will include the applicable Statement of Limited Warranty with machines shipped. Lexmark will provide you a copy of the Statement of Limited Warranty, which you are to provide to your Reseller for the End User at the time of sale to the End User. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End user knows how to obtain warranty service.

## 12.0 WARRANTY SERVICE

**Printer/Printer features**

Providing printer warranty service is optional for printer Distributors. If you desire to provide printer warranty service and receive warranty reimbursement from Lexmark, you must first sign a Lexmark Authorized Servicer Agreement and comply with its terms.

**Typewriters, Typewriter features and supplies**

The Service Support Guide is incorporated in the Agreement by reference.

Unless Lexmark specifies otherwise, for typewriters and supplies you will:

1) provide warranty service under the terms of the applicable Statement of Limited Warranty and in accordance with the Service Support Guide;
2) validate all warranty claims presented to you; and
3) maintain the capability to provide warranty service according to the requirements and procedures specified in the Service Support Guide.

Lexmark will:

1) provide at no fee, one (1) copy of requested self-education service materials per Authorized Locations.
2) make available to you, for a fee, a) service training for additional service personnel, and b) additional service materials; and
3) honor your valid claims for warranty reimbursement for parts or exchange of parts as specified in the Service Support Guide

The performance of warranty service may be assigned to your Reseller. The Reseller must have the required number of employees, whom you have trained, to perform warranty service in accordance with procedures Lexmark identifies to you. The Reseller must agree with you to accept the responsibility to provide warranty service for the products acquired from you. You must provide such Reseller with service updates, maintenance manuals and the necessary parts to perform warranty service.

You will develop and maintain administrative procedures for providing warranty reimbursement to your Reseller. Only you can obtain warranty reimbursement from Lexmark in accordance with the procedures Lexmark provides you.

Your assignment of responsibility for warranty service does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty service reverts to you if the End User is not satisfied with the warranty service provided by your Reseller or if your Reseller loses your authorization to provide such warranty service. You may subsequently reassign such responsibility consistent with the provisions of this section. In such event, you are responsible to provide the End User and the new Reseller written notice of the change.

## 13.0 MAINTENANCE PARTS

Lexmark will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers for the sole purpose of maintaining their machines.

## 14.0 ENGINEERING CHANGES

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed as specified by Lexmark on the machines. You, your Reseller, or their End User may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

## 15.0 LICENSED PROGRAMS

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement and any accompanying End User License Agreement or a third party agreement.
You agree to accept return of a licensed program, provided it is in its original, unopened package, and refund the money paid by an End User who does not wish to be bound by the license. If the license permits the return of a program with an accompanying specified Product, you agree to accept the return of the program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in Product announcement letters. In addition, certain programs, as identified in their accompanying End User license agreement,

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2742

when distributed to the U.S. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software.

## 16.0  SECURITY INTEREST

Lexmark reserves, and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 17.0  TITLE AND RISK OF LOSS

Title passes to you for each machine on its date of shipment from Lexmark.  Title for each copy of a licensed program remains in Lexmark.

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 18.0  TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Distributor (Reseller) Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement.  If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Distributor (Reseller) Exemption Certificate so provided.  You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Distributor (Reseller) Exemption Certificates.

## 19.0  STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise; or
4) relocation or closing of an Authorized Location.

## 20.0  TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor, or if you sell typewriter Products, as a Lexmark Authorized Master Dealer:

1) solely in connection with Products;

2) only during the contract period; and
3) only within the United States

Except as provided for in this Section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement.  You may use the trademarks "Lexmark" or "IBM" only within the United States.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing.    At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement.  In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks, which are required to fulfill your warranty service, or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them.  You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill, which accrues because of your use of the trademarks "Lexmark" or "IBM", will become Lexmark's or IBM's property, respectively.  You agree not to contest Lexmark or IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names, which are confusingly similar to Lexmark or IBM trademarks or trade names.  IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks or if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 21.0  PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States.  Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2743

result of such claim. To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a machine in your inventory, or the operation of a machine while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the machine or to replace or modify it so that it becomes non-infringing. However, if neither of the foregoing alternatives is available on terms, which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected machines, and you will return the machines in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned machine. However, Lexmark may, for used machines, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the machines as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you and your entire remedy for machines regarding infringement or the like.

## 22.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of Products or programming located outside the United States. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark's entire liability and your exclusive remedy for actual damages from your use of licensed programs are as set forth in their accompanying program license agreement.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark Product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.
For any claim for any cause whatsoever, other than those provided for in section 21.0 and the first paragraph of section 23.0, Lexmark's liability for actual damages will be limited to $100,000.

## 23.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 24.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may also terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark).

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, return shipping charges will be paid by you. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, a specific Reseller relationship, or the approval to market to Distributor Associates.

## 25.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2744

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0 GENERAL

Either party's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of Kentucky will govern the Agreement.

## 27.0 DISTRIBUTOR SPECIFIC INFORMATION

**Eligible Products**

You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices and an electronic file. Specific certification may also be required for certain Products.

**Printers** _YES__          **Supplies** __YES____

**Typewriters** _____          **Other** (as listed)

**Minimum Renewal Criteria**

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

Product            Minimum Renewal Criteria

**Not Applicable to this agreement**

**Marketing Coverage Area**

Your approved marketing coverage area(s), listed by Authorized Location, by county and state, is:

**Authorized Ship to and Bill to Locations**

All Authorized ship to and bill to Locations must be approved in writing by Lexmark and listed on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.

**Ship to a Non-Authorized Location**

If you request Lexmark to ship to a Non Authorized Location, a 1% Drop Ship fee will be added to your order. The Drop Ship fee will be calculated on all Printer Products, which are being Drop Shipped to the Non-Authorized location. A minimum fee of $50.00 will be imposed.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2745



**Lexmark International, Inc.**
an IBM alliance company

DISTRIBUTOR CONTRACT 4

# AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.: **L503503**

Contract Commencement Date:  **08/01/92**

Lexmark Office Address:

**2525 COLORADO, 2ND FLOOR**
**SANTA MONICA        CA 90404**

Lexmark Office No.: **GU9**

Thank you for selecting Lexmark as a supplier of products, services, and support. Our goal is to be the best in the industry. If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc. (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States and Puerto Rico. Lexmark may issue Bulletins under this Agreement which change the terms of this Agreement. Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in writing from time to time. All such notices are effective on the date Lexmark specifies.

**Table of Contents**

| | | | |
|---|---|---|---|
| 1.0 | DEFINITIONS | 17.0 | TITLE AND RISK OF LOSS |
| 2.0 | CONTRACT PERIOD | 18.0 | TAXES |
| 3.0 | RELATIONSHIP OF THE PARTIES | 19.0 | STATUS CHANGE |
| 4.0 | MARKETING TO RESELLERS | 20.0 | TRADEMARKS AND TRADE NAMES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | 21.0 | PATENTS AND COPYRIGHTS |
| 6.0 | ORDERS AND CANCELLATIONS | 22.0 | LIMITATION OF REMEDIES |
| 7.0 | PRICES | 23.0 | INDEMNIFICATION |
| 8.0 | PAYMENT | 24.0 | TERMINATION |
| 9.0 | PRICE REDUCTION CREDIT | 25.0 | CONFIDENTIAL INFORMATION |
| 10.0 | INVENTORY ADJUSTMENTS | 26.0 | PS/1 PRINTERS |
| 11.0 | WARRANTIES | 27.0 | GENERAL |
| 12.0 | WARRANTY SERVICE | 28.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 13.0 | MAINTENANCE PARTS | | Eligible Products |
| 14.0 | ENGINEERING CHANGES | | Minimum Renewal Criteria |
| 15.0 | LICENSED PROGRAMS | | Marketing Coverage Area |
| 16.0 | SECURITY INTEREST | | Authorized Locations |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT. This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.**

Accepted by:
**Lexmark International, Inc.**

INGRAM MICRO, INC.

By ✗ _George R Buckley_                    1/22/93
    Authorized Signature

George R. Buckley
Name (Type or Print)                    Date

Name (Type or Print)                    Date

LX03-03 (10/22/92)                    Page 1 of 8

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2746

## 1.0 DEFINITIONS

Agreement means this Distributor Agreement, Bulletin(s), applicable Statement(s) of Limited Warranty and notices.

Authorized Location means any of your locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is not affiliated with your enterprise, who remarkets Products to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

PLA Programs means licensed programs which Lexmark designates as subject to the Lexmark Program License Agreement (PLA).

Products means machines, licensed programs, supplies and other items you can market under the Agreement.

## 2.0 CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12 month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0 RELATIONSHIP OF THE PARTIES

As an independent contractor, you are not Lexmark's legal representative, franchisee, or agent for any purpose.

You will not make any warranties or representations on Lexmark's behalf other than those specified in the Agreement. Neither party will assume or create any obligations on the other's behalf except as specified in the Agreement.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market products which are similar or competitive to the Products under the Agreement.

Lexmark may establish sales performance objectives for the Products which you are approved to market. Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0 MARKETING TO RESELLERS

The Products you market under the Agreement require high quality individualized pre-sale and post-sale support. This support is necessary to achieve and maintain high End User satisfaction. Your ability to provide this support, and to select quality Resellers to provide this support are key reasons

Lexmark chose you as an authorized distributor. You, therefore, will market Products only to Resellers who can provide such support to End Users.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

You agree not to market Products to other distributors, except as agreed to by Lexmark.

## 5.0 DISTRIBUTOR RESPONSIBILITIES

You agree to:
1) acquire from Lexmark the volume of products set forth in the Minimum Renewal Criteria;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including product explanation, demonstration, and ongoing support;
8) maintain a record for each unit of Product sold or licensed. Records are not required for Supplies. A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable. You must retain the record for all Products that are laser printers or that contain a video display for at least five years after the date of sale, and shall retain records for all other Products, excluding Supplies, for the longest period of time that you customarily retain such records. You must assist Lexmark, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons;
9) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety or support reasons;
10) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale or license and the serial number, if any, of the Product sold or licensed. You must retain a copy of that sales receipt for one year from the date of sale or license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;
11) report your sales performance and inventory as requested by Lexmark;
12) receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;
13) advertise Products prominently in your marketing materials, advertising and catalogues;
14) maintain a sufficient inventory of Products to satisfy reasonably foreseeable Reseller demand;
15) maintain trained management, sales, and support personnel;
16) report promptly to Lexmark all suspected and actual Product problems;
17) provide a product business plan as required by Lexmark;
18) notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;
19) maintain good financial standing and provide financial information and evidence of financial security upon request;

LX03-03 (10/22/92)                    Page 2 of 8

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2747

20) maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and

21) allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0 ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product which Lexmark has not shipped to you. Lexmark may charge you a Cancellation Charge of 2% of the cancelled Product's Distributor price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a Cancellation Charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have cancelled your order for the Product before the Product's shipment.

Lexmark will charge you a Handling Charge of 5% if you refuse to accept a Product you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

## 7.0 PRICES

Lexmark will specify its Distributor prices in notices. Distributor prices are F.O.B. destination, unless Lexmark specifies otherwise. Lexmark may change its Distributor prices at any time.

A Distributor price increase for a Product is effective on the date specified. However, a Distributor price increase will not apply to a Product for which Lexmark has received an order prior to the day the increase is effective, provided Lexmark accepts such order.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

A single unit price reflects the price for single units of Product acquired by End Users directly from Lexmark. A suggested retail price may also be established by Lexmark. Both are subject to change without notice. These prices are for informational purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for Products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

### Printers

Price schedules are based on your annual revenue commitment for printers and printer features.

| Schedule | Annual Revenue Commitment |
| --- | --- |
| I | Less than $1 million |
| II | $1 - $3 million |
| III | Greater than $3 million |

You may be put on a different price schedule based on actual performance. Lexmark will notify you in writing prior to a change in your price schedule.

Each order is required to have a single ship-to address. Printer orders for less than $5,000 will be assessed a $30 order charge. This minimum order charge only applies to printers. Printer features are not subject to a minimum order charge, but may be aggregated with printers to meet the $5,000 printer order value.

### Typewriters

Prices are based on a single order, with an invoice value of at least $25,000 for a single shipment to a single location unless Lexmark specifies otherwise.

All typewriter models may be aggregated for purposes of determining invoice value.

Features may not be included for purposes of determining invoice value.

### Supplies

Prices are based on a single order with an invoice value of at least $500, ordered in minimum order quantities as set forth in notices, for a single shipment to a single location unless Lexmark specifies otherwise.

## 8.0 PAYMENT

You agree to pay Lexmark upon your receipt of an invoice. If you fail to pay, Lexmark may:

1) impose a finance charge on the balance due; and
2) exercise any of its rights provided in the Agreement or by law.

## 9.0 PRICE REDUCTION CREDIT

If Lexmark announces a Distributor price decrease for a Product, you may be eligible to receive a price reduction credit.

### Printers and Typewriters

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date.

In order to qualify for a price reduction credit, you must:

1) provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2) have provided such report for at least the two prior months;
3) provide access, during normal business hours, to allow Lexmark to audit all applicable records and inventory.

### Printer and Typewriter Features and Supplies

The price reduction credit for features and supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior two months.

## 10.0 INVENTORY ADJUSTMENTS

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2748

may use such credit only against sums then or thereafter due Lexmark.

You may return all Products to Lexmark, transportation prepaid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a Handling Charge of 5% multiplied by the Distributor price for any returned Product.

You may return these Products only once a month and you must accompany each shipment of returned Products with documentation specified by Lexmark.

For Products being withdrawn from marketing, guidelines or limitations on returns may be contained in the withdrawal notice.

### Printers and Typewriters

The maximum number of units of a Product you may return in a given month is equal to the number of units of inventory of such Product you reported for the previous month.

### Printer and Typewriter Features

The maximum number of features you may return is equal to the number of features shipped to you by Lexmark in the immediately preceding six months less any returns during that period.

### Supplies

Only two return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding nine months less any returns during that period.

### 11.0 WARRANTIES

Lexmark will include the applicable Statement of Limited Warranty with machines shipped. Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End User knows how to obtain warranty service.

### 12.0 WARRANTY SERVICE

Providing warranty service is optional for Printer Distributors. Therefore, the following terms apply to Distributors of Printer Products who choose to provide warranty service, either directly or through their Resellers, and to all Distributors of Typewriter Products.

The Service Support Guide is incorporated in the Agreement by reference.

Unless Lexmark specifies otherwise, you will:
1) provide warranty service under the terms of the applicable Statement of Limited Warranty and in accordance with the Service Support Guide;
2) validate all warranty claims presented to you;

3) maintain the capability to provide warranty service according to the requirements and procedures specified in the Service Support Guide; and
4) provide a technical hotline for your Resellers during normal business hours.

Lexmark will:
1) provide, at no fee, either service training in a Lexmark designated classroom or self-education materials for the number of service personnel required;
2) provide, as part of service training, selected service materials;
3) make available to you, for a fee, a) service training for additional service personnel, and b) additional service materials; and
4) honor your valid claims for warranty reimbursement for labor (when applicable) and/or credits for parts or exchange of parts as specified in the Service Support Guide.

The performance of warranty service may be assigned to your Reseller. The Reseller must have the required number of employees, whom you have trained, to perform warranty service in accordance with procedures Lexmark identifies to you. The Reseller must agree with you to accept the responsibility to provide warranty service for the Products acquired from you. You must provide such Reseller with service updates, maintenance manuals and the necessary parts to perform warranty service.

You will develop and maintain administrative procedures for providing warranty reimbursement to your Reseller. Only you can obtain warranty reimbursement from Lexmark in accordance with the procedures Lexmark provides to you.

Your assignment of responsibility for warranty service does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty service reverts to you if the End User is not satisfied with the warranty service provided by your Reseller or if your Reseller loses your authorization to provide such warranty service. You may subsequently reassign such responsibility consistent with the provisions of this section. In such event, you are responsible to provide the End User and the new Reseller written notice of the change.

### 13.0 MAINTENANCE PARTS

Lexmark or IBM will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers or End Users for the sole purpose of maintaining their machines.

### 14.0 ENGINEERING CHANGES

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed as specified by Lexmark on the machines. You, your Resellers or their End Users may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

### 15.0 LICENSED PROGRAMS

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement and the PLA or a third party agreement.

You agree to accept return of a PLA program, provided it is in its original, unopened package, and refund the money paid by

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2749

a Reseller if an End User does not wish to be bound by the PLA. If the PLA permits the return of a PLA program with an accompanying specified Product, you agree to accept the return of the PLA program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in product announcement letters. In addition, certain programs, when distributed to the U.S. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software, as set forth in product announcement letters.

## 16.0 SECURITY INTEREST

Lexmark reserves and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product, and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 17.0 TITLE AND RISK OF LOSS

Title passes to you for each machine on its date of shipment from Lexmark. Title for each copy of a PLA program remains in Lexmark.

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 18.0 TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 19.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise;
4) relocation or closing of an Authorized Location.

## 20.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor, or if you sell typewriter Products as a Lexmark Authorized Wholesaler:

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States and Puerto Rico.

Except as provided for in this section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States and Puerto Rico.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing. At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively. You agree not to contest Lexmark or IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names. IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks of if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 21.0 PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States or Puerto Rico. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a machine in your inventory, or the operation of a machine while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the machine or to replace or modify it so that it becomes noninfringing. However, if nei-

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2750

ther of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, you will return the machine upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned machine. However, Lexmark may, for used machines, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the machines as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you for machines regarding infringement or the like.

## 22.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of machines or programming located outside the United States and Puerto Rico. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark's entire liability and your exclusive remedy for actual damages from your use of PLA programs are as set forth in the PLA.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in Section 21.0 and the first paragraph of Section 23.0, Lexmark's liability for actual damages will be limited to $100,000.

## 23.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 24.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepre-

sentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark.)

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, return shipping charges will be paid by you. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, or specific Resellers.

## 25.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0 PS/1 PRINTERS

The following additional terms apply to PS/1 Printers.
1) You are permitted to market PS/1 Printers only in the contiguous 48 states. If an End User intends to transport the PS/1 Printer outside the 48 states, your Reseller must notify such End User that there will not be access to telephone and on-line services for the PS/1 Printer.

2) The "Orders and Cancellations" section is modified for PS/1 Printers by the following. For PS/1 Printers, you may not 1) defer or cancel any purchase order, accepted by Lexmark, whose applicable shipment dates Lexmark confirmed or 2) refuse any shipments made by Lexmark related to such order. In addition, you may not cancel parts of such order. If, however, Lexmark notifies you that it will ship such order later than the date, or that the quantity will be less than you request, you may modify, defer or cancel such order. You may cancel purchase orders, or parts thereof, not confirmed by Lexmark. If you do not cancel non-confirmed orders, Lexmark will hold them for possible future acceptance, and you agree to provide Lexmark with revised Requested Ship Dates for non-cancelled orders. If Lexmark, without your approval ships such delayed PS/1 Printers, you may return them at Lexmark's expense within ten days of receipt from Lexmark;

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2751

3) For the PS/1 Printer, Distributor Prices are F.O.B. the Lexmark shipping location(s), as determined by Lexmark;

4) For the PS/1 Printer, during the time of transit from the Lexmark shipping location to you, all risks of loss or damage shall be yours;

5) PS/1 Printers do not qualify for Inventory Adjustment. You may not return PS/1 Printers to Lexmark.

## 27.0 GENERAL

Lexmark's waiver of any instance of your noncompliance with the Agreement will not be deemed a waiver of any future non-compliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Lexmark is not responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more that two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of New York will govern the Agreement.

## 28.0 DISTRIBUTOR SPECIFIC INFORMATION

**Eligible Products**

You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices. Specific certification may also be required for certain Products.

| Supplies | Typewriters | Printers | Other (as listed) |
|----------|-------------|----------|-------------------|
| YES | NO | YES | NO |

**Minimum Renewal Criteria**

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC designates the minimum level of sales performance expected of you.

| Product | Minimum Renewal Criteria |
|---------|--------------------------|
| PRINTERS | |

**Marketing Coverage Area**

Your approved marketing coverage area(s), listed by Authorized Location, by county and state, is:

N/A

**Authorized Locations**

All Authorized Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.



LX03-03 (10/22/92)                    Page 7 of 8

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2752



CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2753

**AMENDMENT TO THE AUTHORIZED DISTRIBUTION AGREEMENT AND ITS ACCOMPANYING LETTER AMENDMENT, BOTH BETWEEN ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮AND LEXMARK INTERNATIONAL, INC., AND BOTH DATED JANUARY _____, 1993**

The following amends the terms and conditions of the Authorized Distributor Agreement. Unless amended, all terms and conditions of the Authorized Distributor Agreement continue to apply.

1.   The first line in the last paragraph on the first (signature) page is amended by inserting the words "AND THE ATTACHED AMENDMENT" between the numeral "7" and the word "ARE".

2.   Section 3.0 is amended by deleting the sixth paragraph.

3.   Section 5.0 is amended as follows:

> by deleting items 1, 3, and 4;
>
> by deleting item 5 and inserting in its place: "pass through to your Resellers certain marketing programs mutually agreed upon by you and Lexmark;";
>
> by deleting item 7 and inserting in its place: "provide value added services to include, technical support, product information and marketing support;";
>
> by deleting the words "ensure that your Reseller maintains" from the first line of item 9 and inserting in their place: "instruct Reseller to maintain";
>
> by deleting the words "and the serial number" from lines two through three in item 10; and
>
> by inserting the words "mutually agreeable" between the words "provide" and "financial" in line one of item 19.

4.   Section 7.0 is amended as follows:

> by deleting from lines two through three in the first paragraph the words ", unless Lexmark specifies otherwise" and inserting in their place the words ", except for P/S 1 printers"; and
>
> by deleting the fifth paragraph.

5.   Section 8.0 is amended by deleting the second sentence of the first paragraph and inserting in its place the following: "If you fail to pay within thirty (30) days after receipt, Lexmark may:".

6.   Section 16.0 is deleted.

7.   Section 19.0 is deleted.

8.   Section 21.0 is amended as follows:

> by inserting the words "indemnify and" between the words "expense" and "defend" in the first line of the first paragraph;
>
> by deleting the word "machine" in the second line of the first paragraph and replacing it with the word "Products";

by deleting the word "using" in the fifth line of the second paragraph and replacing it with the words "reselling or distributing";

by deleting the words "in Lexmark's judgment" in the eight line of the second paragraph;

by inserting the words "or cash, at ████ option," between the words "credit" and "equal" in the tenth and twelfth lines in the second paragraph;

by deleting the words "as Lexmark establishes" in the fourteenth line of the second paragraph; and

by adding the following sentence to the end of the third paragraph:

"Lexmark will pay freight should a recall occur under this Section 22.0."

9.    Section 27.0 is amended as follows:

the first paragraph is deleted and replaced with: "Lexmark's or Distributor's waiver of instance of noncompliance with the Agreement will not be deemed a waiver of any future noncompliance."; and

the third paragraph is deleted and replaced with: " Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control."

10.    The Authorized Locations on page seven (7) is amended by adding the words:



The following amends the terms and conditions of the Letter Amendment. Unless amended, all terms and conditions of the Letter Amendment continue to apply.

1.    The fifth paragraph is deleted and replaced with the following: "You may be required to provide value added services to include, technical support, product information and marketing support."

2.    The sixth paragraph is amended by deleting from lines two through three the words " with your Associated Remarketer in place to ensure that your Associated Remarketer" and replacing them with " in place to instruct your Associated Remarketers to:".

This Amendment, the Letter Amendment, and the Distributor Agreement are the complete agreement between us on this matter, and replace any prior oral or written communications. By signing below each of us agrees to the terms of this Amendment.

Lexmark International, Inc.

By: _x_ *George R. Buckley*
Authorized Signature

_George R. Buckley_    1/23/07
Name (Type or Print)    Date

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2755

September 9, 1998



Dear ▆▆▆

This letter will confirm our recent conversations regarding ▆▆▆▆ request to receive a discount for paying certain invoices quicker than your current contract terms.

Lexmark is willing to provide ▆▆▆ with ▆ discount on current invoices paid within 15 days of invoice date. To clarify, this would mean the invoices in question would be for product shipped from Lexmark to any ▆▆▆ warehouse location. Payment would have to be received at the current Lexmark remit to address within 15 days of the date of invoice via US mail, overnight delivery or wire transfer. This offer does not change our current contract terms and may be withdrawn at any time.

▆▆▆ agrees to notify Lexmark of any invoices paid under these terms so proper credit can be applied. If you have any questions please don't hesitate to call me.

Sincerely,


Dan Biondi
National Account Manager


cc:     Susan Bandy
        Bill Schuette

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2756

# MASTER SPECIAL INCENTIVE AGREEMENT

Name and Address of Dealer



Reference Dealer
Agreement No:

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Special Incentive Agreement ("Agreement") having an Effective Date of May 1, 2011 amends the terms and conditions of the Lexmark Authorized Distributor Agreement (collectively the "Distributor Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Distributor Agreement, the terms of this Agreement will prevail unless a subsequently executed Distributor Agreement by its express terms overrides one or more terms and conditions of this Agreement.

The parties expect to enter into one or more Special Incentive Bulletins (hereafter "Bulletins") that will be executed in writing by the parties and which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Each Bulletin will identify special pricing terms for certain identified products that shall apply only to a identified Reseller for an identified End User for an identified period of time (hereafter the "Bulletin Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ▆▆▆▆▆▆▆▆▆▆ will not receive the benefit of both the special incentive under this Agreement and such later-announced program, promotion or price reduction. Lexmark is under no obligation to modify existing rebates in the event that reseller pricing for toner cartridges is increased.

*TERM*

This Agreement shall remain in effect, unless terminated by a party for any reason upon thirty (30) days written notice to the other party, for as long as the Distributor Agreement remains in effect.

The parties may terminate any attached Bulletin for any reason upon thirty (30) days written notice to the other party. The termination of a Bulletin shall not terminate this Agreement unless

▆▆▆▆▆ Master Special Incentive Agreement April 2011

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2757

the written notice of termination expressly states the intent to terminate the entire Agreement.

A termination of this Agreement shall not result in the termination of the Distributor Agreement, but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Bulletins that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in a Bulletin when such product is acquired from Lexmark, under this Agreement by ▮▮▮▮▮▮▮ for resale to a Reseller for their resale to an identified End User, ▮▮▮▮▮▮▮▮ may be eligible for a rebate as specified in the Bulletin subject to the following terms and conditions:

1.  ▮▮▮▮▮▮▮ will be billed at the published reseller price for all product(s) purchased. Invoices will be provided at the time of shipment. Payment is due and shall be paid by ▮▮▮▮▮▮▮ in accordance with the payment terms set forth in the Distributor Agreement.

2.  To qualify for a rebate, ▮▮▮▮▮▮▮ must provide proof of sale to Lexmark. Proof of sale is defined as an invoice containing the dealer name, dealer contact, end user name, invoice number, Lexmark part number, quantity, and ship date or a mutually agreed to alternative ▮▮▮▮▮▮▮ data). ▮▮▮▮▮▮▮ will forward claim, along with any supporting information to:

    USSupSpecBid@lexmark.com

Requests for rebates greater than six (6) months old may not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced distributor customer number.

▮▮▮▮▮▮▮ eligibility to receive rebates for the products specified in a Bulletin is limited to such product acquired by ▮▮▮▮▮▮▮ from Lexmark under this Agreement for resale to the identified Reseller and specific End User and by the amount ▮▮▮▮▮▮▮ paid for the products.

3.  ▮▮▮▮▮▮▮ agrees to purchase from Lexmark all of its requirements for product(s) listed in a Bulletin, for resale to the Reseller for the identified End User, for the period identified in the Bulletin Effective Dates.

4.  ▮▮▮▮▮▮▮ recognizes that new Return Program Lexmark cartridges are sold at a discount in exchange for the End User's agreement to use the cartridge only once and return it to Lexmark for remanufacturing or recycling. ▮▮▮▮▮▮▮ shall make every reasonable effort to communicate the terms of the Return Program to its resellers, and

▮▮▮▮▮▮▮ Master Special Incentive Agreement April 2011

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2758

when possible, to End Users. ███████ agrees further to return to Lexmark any and all empty Lexmark cartridges that come into its possession.

5.    Lexmark pays shipping of the cartridge to ███████ Normal Lexmark drop ship rules apply.

6.    ███████ must inform Reseller that the remanufactured cartridges shipped to them as Part Numbers above may be either new or remanufactured. Lexmark's Statement of Limited Warranty for Supplies shall apply to this product. See Lexmark Announcement Letter LEX00-015 dated February 1, 2000 for details on the process for returning a cartridge for replacement.

Should a warranty claim be necessary, the cartridge on which a warranty claim is to be made must be returned to Lexmark prior to any warranty claim being processed. The returned cartridge will be analyzed upon receipt by Lexmark. No replacement or credit will be issued if the product is not found to be defective. A letter will be sent back to the End User when no defects are found.

7.    Each party agrees that the terms and conditions of this Agreement (including any subsequent Bulletins) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

8.    Periodically, Lexmark may contact End Users to verify the number of cartridges sold to them under the applicable Bulletin. ███████ agrees to provide Lexmark the necessary level of assistance to complete this verification

Except as modified herein, all other terms and conditions of the referenced agreement remain in full force and effect.

Accepted by:

*LEXMARK INTERNATIONAL, INC.*

By: _____
       Authorized Signature

*Dianna Mulligan* _____
Name (type/print) Date

███████ Master Special Incentive Agreement April 2011

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2759

# MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Reference Reseller
Agreement No:
**L503503**

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Distributor Agreement, executed by and between the parties on or about January 23, 1993 ( "Distributor Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Distributor Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and ████ will be deemed to have accepted the Offer, unless ████ provides written notice to Lexmark within ten business days of receipt of the Offer indicating that ████ does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ████████ will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

*TERM*

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

A termination of this Agreement shall not result in the termination of the Distributor Agreement,

████ Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2760

but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ███ for resale to a Reseller ███ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.  Offers cannot be combined with any special bid pricing or other promotional offer.

2.  Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.  Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.  All rebates are conditioned on ███ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.  Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

███ Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2761

Accepted by:

**LEXMARK INTERNATIONAL, INC.**

By: _____
Authorized Signature

_Dianna Mulligan_
Name (type/print) Date

Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2762

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2763

**Lexmark International, Inc.**
an IBM alliance company

# DISTRIBUTOR CONTRACT 5

## AUTHORIZED SUPPLIES WHOLESALER AGREEMENT

Name and Address of Wholesaler:    '92 JUL 22

Agreement No.: **L000017**

Contract Commencement Date: **08/01/92**

Lexmark Office Address:    Lexmark Office No.: **GT0**

Thank you for selecting Lexmark as a supplier of products, services, and support.  Our goal is to be the best in the industry.  If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc. (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States and Puerto Rico.  Lexmark may issue Bulletins under this Agreement which change the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in writing from time to time.  All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | |
|---|---|---|---|
| 1.0 | DEFINITIONS | 14.0 | TAXES |
| 2.0 | CONTRACT PERIOD | 15.0 | STATUS CHANGE |
| 3.0 | RELATIONSHIP OF THE PARTIES | 16.0 | TRADEMARKS AND TRADE NAMES |
| 4.0 | MARKETING TO RESELLERS | 17.0 | PATENTS AND COPYRIGHTS |
| 5.0 | WHOLESALER RESPONSIBILITIES | 18.0 | LIMITATION OF REMEDIES |
| 6.0 | ORDERS AND CANCELLATIONS | 19.0 | INDEMNIFICATION |
| 7.0 | PRICES | 20.0 | TERMINATION |
| 8.0 | PAYMENT | 21.0 | CONFIDENTIAL INFORMATION |
| 9.0 | PRICE REDUCTION CREDIT | 22.0 | GENERAL |
| 10.0 | INVENTORY ADJUSTMENTS | 23.0 | WHOLESALER SPECIFIC INFORMATION |
| 11.0 | WARRANTIES | | Minimum Renewal Criteria |
| 12.0 | SECURITY INTEREST | | Authorized Locations |
| 13.0 | TITLE AND RISK OF LOSS | | |

**PAGES 2 THROUGH 6 ARE ALSO PART OF THIS AGREEMENT.**  This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us.  By signing below, each of us agrees to the terms of this Agreement.  Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

By  _M. Schlossman_
         Authorized Signature

_MAX Schlossman_                    _7/20/92_
Name (Type or Print)                    Date

LX05-01 (06/18/92)

Page 1 of 6

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  **A2764**

## 1.0 DEFINITIONS

Agreement means this Wholesaler Agreement, Bulletin(s), applicable Statement(s) of Limited Warranty and notices.

Authorized Location means any of your locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is not affiliated with your enterprise, who remarkets Products to End Users or Resellers. The term resellers means those customers of a Reseller who remarket the Products in the ordinary course of their business to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those supplies identified by Lexmark in notices that Lexmark sells to you for remarketing under the Agreement.

## 2.0 CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12 month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0 RELATIONSHIP OF THE PARTIES

As an independent contractor, you are not Lexmark's legal representative, franchisee, or agent for any purpose.

You will not make any warranties or representations on Lexmark's behalf other than those specified in the Agreement. Neither party will assume or create any obligations on the other's behalf except as specified in the Agreement.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market products which are similar or competitive to the Products under the Agreement.

Lexmark may establish sales performance objectives for the Products which you are approved to market. Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0 MARKETING TO RESELLERS

Your ability to provide high quality pre-sale and post-sale support, and to select quality Resellers to provide such support are key reasons Lexmark chose you as an authorized Wholesaler. You, therefore, will market Products only to Resellers who can provide such support to End Users or resellers.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

## 5.0 WHOLESALER RESPONSIBILITIES

You agree to:
1) purchase from Lexmark the volume of products set forth in the Minimum Renewal Criteria;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users and resellers;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including product explanation, demonstration, and ongoing support;
8) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety or support reasons;
9) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale. You must retain a copy of that sales receipt for one year from the date of sale. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;
10) report your sales performance and inventory as requested by Lexmark;
11) receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;
12) advertise Products prominently in your marketing materials, advertising and catalogues;
13) maintain a sufficient inventory of Products to satisfy reasonably foreseeable Reseller demand;
14) maintain trained management, sales, support and service personnel;
15) report promptly to Lexmark all suspected and actual Product problems;
16) provide a product business plan as required by Lexmark;
17) notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;
18) maintain good financial standing and provide financial information and evidence of financial security upon request;
19) maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and
20) allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0 ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product which Lexmark has not shipped to you. Lexmark may charge you a Cancellation Charge of 2% of the cancelled Product's Wholesaler price if the

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2765

cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a Cancellation Charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have cancelled your order for the Product before the Product's shipment.

Lexmark will charge you a Handling Charge of 5% if you refuse to accept a Product you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

## 7.0  PRICES

Lexmark will specify its Wholesaler prices in notices. Wholesaler prices are F.O.B. destination, unless Lexmark specifies otherwise. Lexmark may change its Wholesaler prices at any time.

A Wholesaler price increase for a Product is effective on the date specified. However, a Wholesaler price increase will not apply to a Product for which Lexmark has received an order prior to the day the increase is effective, provided Lexmark accepts such order.

A Wholesaler price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

A single unit price reflects the price for single units of Product acquired by End Users directly from Lexmark. A suggested retail price may also be established by Lexmark. Both are subject to change without notice. These prices are for informational purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for Products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

Prices are based on a single order with an invoice value of at least $500, ordered in minimum order quantities as set forth in notices, for a single shipment to a single location unless Lexmark specifies otherwise.

## 8.0  PAYMENT

You agree to pay Lexmark upon your receipt of an invoice. If you fail to pay, Lexmark may:
  1) impose a finance charge on the balance due; and
  2) exercise any of its rights provided in the Agreement or by law.

## 9.0  PRICE REDUCTION CREDIT

If Lexmark announces a Wholesaler price decrease for a Product, you may be eligible to receive a price reduction credit.

The price reduction credit for supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior two months.

## 10.0  INVENTORY ADJUSTMENTS

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You

may use such credit only against sums then or thereafter due Lexmark.

You must return all Products to Lexmark, transportation prepaid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a Handling Charge of 5% multiplied by the Wholesaler price for any returned Product.

You must accompany each shipment of returned Products with documentation specified by Lexmark.

For Products being withdrawn from marketing, guidelines or limitations on returns may be contained in the withdrawal notice.

Only two return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding nine months less any returns during that period.

## 11.0  WARRANTIES

Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date.

Unless Lexmark specifies otherwise, you will validate all warranty claims presented to you, and provide warranty support under the terms of the applicable Statement of Limited Warranty. Lexmark will honor your valid claims for warranty replacement Product.

The performance of warranty support may be assigned to your Reseller. You will develop and maintain administrative procedures for providing warranty replacement Product for your Resellers. Only you can obtain warranty replacement Product from Lexmark in accordance with the procedures Lexmark provides you.

Your assignment of responsibility for warranty support does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty support reverts to you if the End user is not satisfied with the warranty support provided by your Reseller or if the Reseller loses your authorization to provide such warranty support.

## 12.0  SECURITY INTEREST

Lexmark reserves and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product, and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 13.0  TITLE AND RISK OF LOSS

Title passes to you for each Product on its date of shipment from Lexmark.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2766

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 14.0 TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 15.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise; or
4) relocation or closing of an Authorized Location.

## 16.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Wholesaler:

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States and Puerto Rico.

Except as provided for in this section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States and Puerto Rico.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Wholesaler" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing. At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Wholesaler" or other such term that includes the name of the Products, as applicable;

2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively. You agree not to contest Lexmark or IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names. IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks of if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 17.0 PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any Product acquired under the Agreement infringes a patent or copyright in the United States or Puerto Rico. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a Product in your inventory, or the operation of a Product while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the Product or to replace or modify it so that it becomes noninfringing. However, if neither of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, you will return the Product upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned Product. However, Lexmark may, for selected Products, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the Products as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of Products or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you for Products regarding infringement or the like.

## 18.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of Products located outside the United States and Puerto Rico. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark product.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2767

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in section 17.0 and the first paragraph of section 19.0, Lexmark's liability for actual damages will be limited to $100,000.

## 19.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 20.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Wholesaler as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Wholesaler, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may terminate the Agreement immediately in the event that a Wholesaler or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark.)

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, return shipping charges will be paid by you. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, or specific Resellers.

## 21.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.
2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.
3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 22.0 GENERAL

Lexmark's waiver of any instance of your noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Lexmark is not responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more that two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of New York will govern the Agreement.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2768

**27.0 WHOLESALER SPECIFIC INFORMATION**

**Minimum Renewal Criteria**

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC designates the minimum level of sales performance expected of you.

| Product | Minimum Renewal Criteria |
|---------|--------------------------|
| SUPPLIES | |

**Authorized Locations**

All Authorized Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.

LX05-01 (06/18/92)                              Page 6 of 6

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2769

# MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Agreement N0: L0000017

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Supplies Wholesaler Agreement, executed by and between the parties on or about July 1992    ( "Wholesaler Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Wholesaler Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and                will be deemed to have accepted the Offer, unless                provides written notice to Lexmark within ten business days of receipt of the Offer indicating that                does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement,                            will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

*TERM*

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

A termination of this Agreement shall not result in the termination of the Distributor Agreement.

Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2770

but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ▮▮▮▮▮ for resale to a Reseller, ▮▮▮▮▮ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.    Offers cannot be combined with any special bid pricing or other promotional offer.

2.    Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.    Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.    All rebates are conditioned on ▮▮▮▮▮ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.    Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

▮▮▮▮▮ Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2771

Accepted by:

**LEXMARK INTERNATIONAL, INC.**

By: _____
Authorized Signature

J W Kincain  3/19/12
Name (type/print) Date

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2772

# DISTRIBUTOR CONTRACT 6

**Lexmark International, Inc.**

## AUTHORIZED SUPPLIES WHOLESALER AGREEMENT

Name and Address of Wholesaler:

Agreement No.:
1004890

Contract Commencement Date:

Lexmark Office Address:
Lexmark International
480 Parson Pond Drive
Franklin Lakes, NJ 07417

Lexmark Office No.: GTO

Thank you for selecting Lexmark as a supplier of Products, services, and support.  Our goal is to be the best in the industry.  If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc., (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States.  Lexmark may issue Bulletins under this Agreement which change the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in written and electronic form from time to time.  All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | | |
|---|---|---|---|---|
| 1.0 | DEFINITIONS | | 14.0 | TAXES |
| 2.0 | CONTRACT PERIOD | | 15.0 | STATUS CHANGE |
| 3.0 | RELATIONSHIP OF THE PARTIES | | 16.0 | TRADEMARKS AND TRADE NAMES |
| 4.0 | MARKETING TO RESELLERS | | 17.0 | PATENTS AND COPYRIGHTS |
| 5.0 | WHOLESALER RESPONSIBILITIES | | 18.0 | LIMITATION OF REMEDIES |
| 6.0 | ORDERS AND CANCELLATIONS | | 19.0 | INDEMNIFICATION |
| 7.0 | PRICES | | 20.0 | TERMINATION |
| 8.0 | PAYMENT | | 21.0 | CONFIDENTIAL INFORMATION |
| 9.0 | PRICE REDUCTION CREDIT | | 22.0 | GENERAL |
| 10.0 | INVENTORY ADJUSTMENTS | | 23.0 | WHOLESALER SPECIFIC INFORMATION |
| 11.0 | WARRANTIES | | | Minimum Renewal Criteria |
| 12.0 | SECURITY INTEREST | | | Authorized Locations |
| 13.0 | TITLE AND RIGHTS, RISK AND REWARDS OF OWNERSHIP | | | |

**PAGES 2 THROUGH 6 ARE ALSO PART OF THIS AGREEMENT.**  This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement.  Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

By _____
                    Authorized Signature

J.R. M c G R A T L   3/4/02
Name   (Type or Print)                    Date

02/18/02    Page 1 of 6

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2773

## 1.0 DEFINITIONS

Agreement means this Wholesaler Agreement, Bulletin(s), applicable Statements) of Limited Warranty and notices.

Authorized Location means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is not affiliated with your enterprise, who remarkets Products to End Users or Resellers. The term resellers means those customers of a Reseller who remarket the Products in the ordinary course of their business to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those items identified by Lexmark in notices that Lexmark sells to you for remarketing under the Agreement.

## 2.0 CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12 month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0 RELATIONSHIP OF THE PARTIES

As an independent contractor, you are not Lexmark's legal representative, franchisee, or agent for any purpose.

You will not make any warranties or representations on Lexmark's behalf other than those specified in the Agreement. Neither party will assume or create any obligations on the other's behalf except as specified in the Agreement.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market Products which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the Minimum Renewal Criteria, for the Products you are approved to market. Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews, including surveys of your Resellers, to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0 MARKETING TO RESELLERS

Your ability to provide high quality pre-sale and post-sale support, and to select quality Resellers to provide such support are key reasons Lexmark selected you as an authorized Wholesaler. You, therefore, will market Products only to Resellers who can provide such support to End Users or resellers.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such an event, you are not authorized to market Products to the Reseller.

In order to better ensure End User satisfaction through your Resellers, Lexmark retains the option of issuing or not issuing Letters of Supply (or guarantees of supply) to you when you respond to any particular state, local or federal government procurement request. Likewise, without Lexmark's written consent, you may not issue Letters of Supply relating to Lexmark Products to any reseller in connection with any government procurement.

## 5.0 WHOLESALER RESPONSIBILITIES

You agree to:

1) purchase from Lexmark the volume of products set forth in the Minimum Renewal Criteria;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users and resellers;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including Product explanation, demonstration, and ongoing support;
8) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety or support reasons;
9) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale. You must retain a copy of that sales receipt for one year from the date of sale or license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;
10) report your sales performance and inventory as requested by Lexmark;
11) receive and inventory Products only at your our Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;
12) advertise Products prominently in your marketing materials, advertising and catalogues;

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2774

13) maintain a sufficient inventory of Products to satisfy reasonably foreseeable Reseller demand;
14) maintain trained management, sales, support and service personnel;
15) report promptly to Lexmark all suspected and actual Product problems;
16) provide a Product business plan as required by Lexmark;
17) notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;
18) maintain good financial standing and provide financial information and evidence of financial security upon request;
19) maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance;
20) allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0  ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to credit approval and Product availability and consistent with Lexmark's production and supply schedules.

Lexmark will insure for your benefit the order for risk of loss or damage during the period it is in transit from Lexmark or its agent up to its initial delivery to you or your designated ship-to point.

You may cancel an order for any Product which Lexmark has not shipped to you. Lexmark may charge you a Cancellation charge of 2% of the canceled Product's Wholesaler price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a cancellation charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have canceled your order for the Product before the Product's shipment.

Lexmark will charge you a handling charge of 5% if you refuse to accept delivery of any portion of a shipment you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

## 7.0  PRICES

Lexmark will specify its Wholesaler prices in notices and an electronic file. Dealer prices are F.O.B. destination, unless Lexmark specifies otherwise. Lexmark may change its Wholesaler prices at any time. Lexmark specified prices shall apply in spite of any different pricing contained in Wholesaler purchase orders, even if such purchase orders are accepted and Product is shipped.

A Wholesaler price increase for a Lexmark Product is effective on the date specified. Lexmark will announce a price increase a minimum of 30 days prior to the effective date of the increase. A price increase will not apply to a Product for which Lexmark has accepted an order prior to the effective date, provided the order specifies a requested ship date within the time frame stated in the price increase notice.

A Wholesaler price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

The MSRP is Lexmark's suggested resale price and is subject to change without notice. This price is for information purposes only. Lexmark's and our remarketers prices may vary.
Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

Wholesaler Prices and minimum order quantities are set forth in notices. Each supply order for shipment to a single Authorized Location must be for an amount of at least $2,500.

## 8.0  PAYMENT

You agree to pay Lexmark upon your receipt of an invoice, unless otherwise specified by Lexmark. If you fail to pay, Lexmark may:

1) impose a finance charge on the balance due;
2) exercise any of its rights provided in the Agreement or by law;
3) require "cash with order" or "payment on account" prior
4) stop shipment of your orders if your account is past due.

## 9.0  PRICE REDUCTION CREDIT

If Lexmark announces a Wholesaler price decrease for a Product, you may be eligible to receive a price reduction credit.

The price reduction credit for supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior sixty (60) days.

## 10.0  PRODUCT RETURNS

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices or an electronic file.

Lexmark may issue notices clarifying Product return policies that shall be effective on the date specified. Lexmark may place limits on the amount of Product that can be returned. All Product must be returned to Lexmark within thirty (30) days after receiving authorization, to ensure proper credit.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You may use such credit only against sums then or thereafter due Lexmark.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2775

You must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark. This requirement is not applicable to defective Product.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a handling charge of 5% multiplied by the Wholesaler price for any returned Product.

For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

Only four return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding twelve months less any returns during that period.

The 5% Handling Charge for Supply Products, will be waived providing a replacement order worth 1.5 times the return value is provided by the Wholesaler at the same time of the return.

## 11.0  WARRANTIES

Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale.    Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product.    Your Reseller must advise the End User of this start date.

Unless Lexmark specifies otherwise, you will validate all warranty claims presented to you, and provide warranty support under the terms of the applicable Statement of Limited Warranty. Lexmark will honor your valid claims for warranty replacement product.

The performance of warranty support may be assigned to your Reseller. You will develop and maintain administrative procedures for providing warranty replacement Product for your Resellers. Only you can obtain warranty replacement Product from Lexmark in accordance with the procedures Lexmark provides you.

Your assignment of responsibility for warranty support does not relieve you of your responsibility for Reseller of End User satisfaction. The responsibility for warranty support reverts to you if the End User is not satisfied with the warranty support provided by your Reseller or if the Reseller loses your authorization to provide such warranty support.

## 12.0  SECURITY INTEREST

Lexmark reserves, and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 13.0  TITLE AND RIGHTS, RISKS AND REWARDS OF OWNERSHIP

Title and all rights, risks and rewards of ownership transfer to you upon shipment of the product from Lexmark, or its agent. Title for each copy of a licensed program remains with Lexmark.

Lexmark will insure for your benefit the order for risk of loss or damage during the period it is in transit from Lexmark or its agent up to its initial delivery to you.

## 14.0  TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement.  If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 15.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

  1)  transfer of your equity ownership;
  2)  merger or acquisition of your enterprise or Authorized Location with or by any other entity;
  3)  legal name change of your enterprise; or
  4)  relocation or closing of an Authorized Location.

## 16.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Wholesaler:
  1)  solely in connection with Products;
  2)  only during the contract period; and
  3)  only within the United States.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2776

Except as provided for in this Section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Wholesaler" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing. At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately;

1) cease referring to yourself as a "Lexmark Authorized Wholesaler" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively. You agree not to contest Lexmark or IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names. IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks or if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 17.0 PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment,

you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a Product in your inventory, or the operation of a Product while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the Product or to replace or modify it so that it becomes noninfringing. However, if neither of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected Product, and you will return the Product in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned Product. However, Lexmark may, for selected Product, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the Product as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of Products or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you and your entire remedy for Products regarding infringement or the like.

## 18.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of Products located outside the United States. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark Product.
In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in section 17.0 and the first paragraph of section 19.0, Lexmark's liability for actual damages will be limited to $100,000.

## 19.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 20.0 TERMINATION

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2777

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Wholesaler as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Wholesaler, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may also terminate the Agreement immediately in the event that a Wholesaler or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods and/or gray market goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have been acquired from a source other than IBM or Lexmark or an Authorized Lexmark Wholesaler or Distributor in the U.S.).

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, you will pay return-shipping charges. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, an Aggregator relationship, or specific Resellers.

## 21.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 22.0 GENERAL

Lexmark's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of Kentucky will govern the Agreement.

## 23.0 WHOLESALER SPECIFIC INFORMATION

### Minimum Renewal Criteria

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

The Minimum Renewal requirement for Supplies product is

### Authorized Ship to and Bill to Locations

All Authorized ship to and bill to Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2778

## MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Agreement NO: 1004890

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Supplies Wholesaler Agreement, executed by and between the parties on or about March 2002    ("Wholesaler Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Wholesaler Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and ▇▇▇▇▇▇▇ will be deemed to have accepted the Offer, unless ▇▇▇▇▇ provides written notice to Lexmark within ten business days of receipt of the Offer indicating that ▇▇▇ does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ▇▇▇▇▇▇▇▇▇▇ will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

*TERM*

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

▇▇▇▇▇▇▇ Master Lexmark Promotion Agreement March 1, 2012

A termination of this Agreement shall not result in the termination of the Distributor Agreement, but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ████████████ for resale to a Reseller, ████████████ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.  Offers cannot be combined with any special bid pricing or other promotional offer.

2.  Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.  Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.  All rebates are conditioned on ████████████ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.  Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

████████████ Master Lexmark Promotion Agreement March 1, 2012

Accepted by:

*LEXMARK INTERNATIONAL, INC.*

By: _____
     Authorized Signature

Bill Murdock 3/16/12
     Name (type/print) Date

Master Lexmark Promotion Agreement March 1, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY **A2781**

### Amendment to the Lexmark Authorized Supplies Wholesaler Agreement

This Amendment ("Amendment") amends the Lexmark Authorized Supplies Wholesaler Agreement , effective February 26, 2002("Agreement"), between ███████████████ ████████████ and Lexmark International, Inc. ("Lexmark")

This Amendment is effective as of **March 1, 2011**. All capitalized terms used herein have the same meaning as in the Agreement. Except as modified herein, all terms and conditions of the Agreement remain in full force and effect. For good and valuable consideration, the receipt and sufficiency which are hereby acknowledged, Lexmark and Buyer agree as follows:

1. The following new Section 24.0 is added:

   **24.0  Special Provision For Supplies Bearing** ████████████████ **Brand**

   In order to facilitate the purchase by ████████████████ of supplies, as indicated in Attachment 1, from you, Lexmark agrees to sell to you certain supplies bearing The ████████████████ logo or trademark(s). You agree that any supplies bearing the ████████████████ logo or trademark(s) that you purchase from Lexmark shall only be sold to ████████████████ or to an entity that ████████████████ may later designate in writing to you as an authorized purchaser.

2. This Amendment is governed by the laws of the Commonwealth of Kentucky excluding its choice of law provisions. The parties agree that any and all actions, suits or other legal proceedings may be brought against the other in a state or federal court in Kentucky and the parties consent to the jurisdiction of such courts. The parties all hereby irrevocably and unconditionally waive trial by jury in any action, suit or other legal proceeding against the other arising under this Amendment.

3. This Amendment may be executed in several counterparts, each of which shall be deemed an original and all of which taken together shall constitute one single amendment between the parties hereto.

Except to the extent specifically modified or amended by this Amendment the remainder of the Agreement shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their duly authorized representatives.

|  | Lexmark International, Inc. |
|---|---|
| By: ████████████████ | By: _Clifford_ |
| ████████████████ | Amendment March 2011 |

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2782

(Signature)

Name: R M Horsak

Title: Engineer Den Mgr

Date: 3/18/2011

March 2011

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2783

Attachment 1

| Lexmark Part Number | Description | Purchase Price (Each) | Minimum Order |
|---|---|---|---|
| 12A6690 | PL4830 Carbonless | | 21 Cartridges |
| 12A7488 | PL4940 Carbonless | | 21 Cartridges |

March 2011

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2784

# DISTRIBUTOR CONTRACT 7

**Lexmark International, Inc.**

## AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.: LX00404

Contract Commencement Date: 08/01/97

Lexmark Office Address:
8360 EAST VIA DE VENTURA   BLDG L-200
SCOTTSDALE, AZ   85258

Lexmark Office No.: B06

Thank you for selecting Lexmark as a supplier of products, services, and support.  Our goal is to be the best in the industry.  If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc. (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States and Puerto Rico.  Lexmark may issue Bulletins under this Agreement which changes the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in writing from time to time.  All such notices are effective on the date Lexmark specifies.

## Table of Contents

| | | | | |
|---|---|---|---|---|
| 1.0 | DEFINITIONS | | 17.0 | TITLE AND RISK OF LOSS |
| 2.0 | CONTRACT PERIOD | | 18.0 | TAXES |
| 3.0 | RELATIONSHIP OF THE PARTIES | | 19.0 | STATUS CHANGE |
| 4.0 | MARKETING TO RESELLERS | | 20.0 | TRADEMARKS AND TRADE NAMES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | | 21.0 | PATENTS AND COPYRIGHTS |
| 6.0 | ORDERS AND CANCELLATIONS | | 22.0 | LIMITATION OF REMEDIES |
| 7.0 | PRICES | | 23.0 | INDEMNIFICATION |
| 8.0 | PAYMENT | | 24.0 | TERMINATION |
| 9.0 | PRICE REDUCTION CREDIT | | 25.0 | CONFIDENTIAL INFORMATION |
| 10.0 | PRODUCT RETURNS | | 26.0 | GENERAL |
| 11.0 | WARRANTIES | | 27.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 12.0 | WARRANTY SERVICE | | | Eligible Products |
| 13.0 | MAINTENANCE PARTS | | | Minimum Renewal Criteria |
| 14.0 | ENGINEERING CHANGES | | | Marketing Coverage Area |
| 15.0 | LICENSED PROGRAMS | | | Authorized Locations |
| 16.0 | SECURITY INTEREST | | | |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT.**  This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement.  Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

Authorized Dealer

By _William A. Schutte_

By _____
        Authorized Signature

_WILLIAM A. SCHUTTE    11-7-97_
        Name (Type or Print)        Date

LX03-04 10/03/97                    Page 1 of 8

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2785

## 1.0  DEFINITIONS

**Agreement** means this Distributor Agreement, Bulletin(s), applicable Statement(s) of Limited Warranty and notices.

**Authorized Location** means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

**Reseller** means your customer, who is either not affiliated with your enterprise, or who could be affiliated if company owned, who remarkets Products to End Users.

**End User** means a party who acquires the Products for its own use and not for remarketing.

**Products** means those items identified in section 27.0 which you can market under this agreement

## 2.0  CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark.  The agreement can be renewed by the parties for subsequent single 12 month contract periods.  Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually  unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date.  Either party can elect not to renew the Agreement with or without cause.

## 3.0  RELATIONSHIP OF THE PARTIES

It is understood and agreed the Manufacturer and Distributor are independent contractors and each is engaged in the operation of its own business and neither will be considered the agent of the other for any purpose whatsoever.    Nothing contained in the Agreement will be construed to established a relationship that would allow either party to make representations or warranties on behalf of the other except as expressly set forth herein.

You will market Products to Resellers at such prices and terms and conditions as you determine.  Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market products which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the minimum renewal criteria, for the Products which you are approved to market.  Lexmark reserves the right to revise the objectives at any time.  Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0  MARKETING TO RESELLERS

The Products you market under the Agreement require high quality individualized pre-sale and post-sale support.  This support is necessary to achieve and maintain high reseller and End User satisfaction.  Your ability to provide this support, and to select quality Resellers to provide this support are key reasons Lexmark chose you as an authorized distributor.  You, therefore, will market Products only to Resellers who can provide such support to End Users.

At Lexmark's request, you will provide written identification of your Resellers.  Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products.  In such event, you are not authorized to market Products to the Reseller.

You agree not to market Lexmark Products to other distributors, except as agreed to by Lexmark.

## 5.0  DISTRIBUTOR RESPONSIBILITIES

You agree to:

1) Distributor shall maintain a reasonable inventory of Products in order to satisfy Distributor's anticipated sales thereof;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including Product explanation, demonstration, and ongoing support;
8) maintain a record for each unit of Product sold or licensed.  Records are not required for Supplies. A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable.  You must retain the record for all Products that are laser printers or that contain a video display for at least five years after the date of sale, and shall retain records for all other Products, excluding Supplies, for the longest period of time that you customarily retain such records.  You must assist Lexmark, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons;
9) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety reasons;
10) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale or license and the serial number, if any, of the Product sold or licensed.  You must retain a copy of that sales receipt for one year from the date of sale or license.  You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2786

11) Report your sales performance and inventory as requested by Lexmark. You will submit reports to Lexmark by the 5th work day of every month. These reports will detail your on hand inventory and monthly sales performance. Updated reporting forms will be provided to you monthly, identifying the pertinent Lexmark products to be reported. Lexmark may change the reporting requirements from time to time, through Lexmark announcements.

12) receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;

13) advertise Products prominently in your marketing materials, advertising and catalogues;

14) maintain trained management, sales, and support personnel;

15) report promptly to Lexmark all suspected and actual Product problems;

16) provide a Product business plan as required by Lexmark;

17) notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;

18) maintain good financial standing and provide financial information and evidence of financial security upon request;

19) maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and

20) allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0  ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product which Lexmark has not shipped to you. Lexmark may charge you a Cancellation charge of 2% of the canceled Product's Dealer price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a cancellation charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have canceled your order for the Product before the Product's shipment.

Lexmark will charge you a handling charge of 5% if you refuse to accept a product you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

Each printer order is required to have a single ship-to-address.

Lexmark will pay for standard land freight from the Lexmark plant or distribution warehouse, to Your Lexmark approved, designated warehouse locations, in the United States and in Puerto Rico. Overnight or express freight charges shall be paid by you.

## 7.0  PRICES

Lexmark will specify its Distributor prices in notices and an electronic file. Distributor prices are F.O.B. destination, unless Lexmark specifies otherwise. Lexmark may change its Distributor prices at any time. Lexmark specified prices shall apply in spite of any different pricing contained in Distributor purchase orders, even if such purchase orders are accepted and Product is shipped.

A Distributor price increase for a Lexmark Product is effective on the date specified. Lexmark will announce a price increase a minimum of 30 days prior to the effective date of the increase. A price increase will not apply to a Product for which Lexmark has accepted an order prior to the effective date, provided the order specifies a requested ship date within the time frame stated in the price increase notice.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

A single unit price reflects the list price for single units of Product acquired by End Users directly from Lexmark. A suggested retail price may also be established by Lexmark. Both are subject to change without notice. These prices are for informational purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for Products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

### Printers

Price schedules are based on your annual revenue attainment for printers and printer features.

| Schedule | Annual Revenue attainment |
|---|---|
| I | Less than $250 Thousand |
| II | $250 Thousand  - $3 million |
| III | Greater than $3 million |

You may be put on a different price schedule based on actual performance. Lexmark will notify you in writing prior to a change in your price schedule. The above price schedule pertains to printers only.

### Typewriters

Price schedules for typewriters are based on a single order, with a single shipment to a single location unless Lexmark specifies otherwise.

| Schedule | I | Invoice value under $10,000 |
|---|---|---|
| Schedule | II | Invoice value of at least $10,000 and less than $20,000 |
| Schedule | III | Invoice value of at least $20,000 |

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2787

All typewriter models may be aggregated for purposes of determining invoice value. Features may not be included for purposes of determining invoice value.

**Supplies**

Prices are based on a single order with an invoice value of at least $500, ordered in minimum order quantities as set forth in notices, for a single shipment to a single location unless Lexmark specifies otherwise.

**8.0  PAYMENT**

You agree to pay Lexmark upon your receipt of an invoice. Payment to Lexmark is considered delinquent if it is received thirty (30) days after the date of invoice.  If you fail to pay, Lexmark may:

1) impose a finance charge  of 2% per month on the balance due; and
2) exercise any of its rights provided in the Agreement or by law.
3) require " cash with order " or " payment on account" prior to accepting your orders;  and/or
4) stop shipment of your orders.

In the event that financing is provided by Lexmark, you shall provide Lexmark with an acceptable Letter of Credit, as determined by Lexmark.

Alternatively you may elect to pursue floor planning financing with certain financing companies pre-approved by Lexmark, pursuant to Lexmark's standard Terms and Conditions for transactions with finance companies.

**9.0  PRICE REDUCTION CREDIT**

If Lexmark announces a Distributor price decrease for a  printer Product, you will be eligible to receive a price reduction credit for those printer Products which you have timely reported as on hand inventory.

Such price reduction credit will extend to those defective Products which are in your warehouse  on the effective date of the price reduction as specified in the announcement, and for which a return authorization has not been issued by Lexmark. You shall include defective Product on hand as well as non-defective Product on hand, in your credit request.

**Printer Products and Typewriters**

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date as specified in notice.

In order to qualify for a price reduction credit, you must:

1)     provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2)     provide access, during normal business hours, to allow Lexmark to audit applicable records and inventory.

Lexmark will issue price reduction credits within 45 days of the effective date of the price reduction as specified in the notice.

**Typewriter Features and Supplies**

The price reduction credit for typewriter features and supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior two months.

**10.0  PRODUCT RETURNS**

**General Terms** - Printers, Typewriters, Printer & Typewriter features,  Supplies

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark.  Lexmark will specify which Products are returnable in notices or an electronic file.

Lexmark notices may place limits on the amount of Product that can be returned . All Product must be returned to Lexmark within thirty (30) days after receiving authorization, to ensure proper credit.

Lexmark will notify you within fifteen (15) days of Lexmark's receipt of Product, of any discrepancies between the Products authorized to be returned and the Products actually received by Lexmark.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark.  You may use such credit only against sums then or thereafter due Lexmark.

You must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled.  The Products must be in marketable condition as determined by Lexmark. This requirement is not applicable to defective Product.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a handling charge of 5% of the value of the associated  returned Product.

Lexmark may issue return notices clarifying Product return policies which shall be effective on the date specified.

For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

**Authorized Product Return Credits**

Lexmark will issue Product credits for Products authorized to be returned within 15 days after the receipt and acceptance of the returned Product by Lexmark at the return location designated by Lexmark.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2788

**Printer Products only - Stock Balance/Inventory Adjustment**

One return shipment of any currently-marketed printer Product for stock balancing is allowed per month.

Up to 5% of prior quarter's purchases (rolling quarter) may be returned per month without a restocking charge. The Product returned must be accompanied by a new order of equal or greater value than the return to avoid a 5% restocking charge.

Replacement orders entered to qualify as a stock balancing Product return must be for normal delivery. Such orders do not qualify for deferred delivery schedules.

Cancellation of an order entered as stock balancing replacement order will result in a restocking charge to the Dealer that equals 5% of the value of the associated return.

Discontinued printer Products may be returned under the stock balancing returns provisions, as long as such return is within the dates specified by the discontinuance notice.

Additional returns above the stock balancing monthly 5% maximum are allowed up to a maximum return of 15% of prior quarter's purchases. These additional returns will be treated as inventory adjustments and charged a 5% restocking charge.

Lexmark agrees that for your initial order only, you may return Product without placing an offsetting order, provided that you identify within 90 days from receipt of your initial order the Products you desire to return and such returned Products are received by Lexmark within 120 days from the original receipt date by you.

In the event Product is returned after the 120 day period, you will be subject to a restocking charge as described herein.

**Printer Products only - Defective Product**

At your discretion, Lexmark will either replace defective printer Products or provide a credit to you for any currently marketed Lexmark printer Product found to be defective by you prior to the sale to your reseller. In addition, Lexmark will provide credit to you for any defective Lexmark printer Product returned by your reseller within 30 days of its purchase by the End User.

Defective discontinued printer Product to be eligible for credit must be returned to Lexmark within the dates specified by the discontinuance notice.

Lexmark will pay standard land freight from Your designated Lexmark approved warehouse locations in the United States and Puerto Rico, to the Lexmark return center, for defective Lexmark Products returned to Lexmark, provided that you must use Lexmark designated freight carriers. In the event that the Product returned by you is determined by Lexmark not to be defective, Lexmark will assess you freight charges and you will be subject to a restocking charge as described herein.

**Typewriter Features**

The maximum number of features you may return is equal to the number of features shipped to you by Lexmark in the immediately preceding six months less any returns during that period.

**Supplies**

Only four return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding twelve months less any returns during that period.

**11.0 WARRANTIES**

Lexmark will include the applicable Statement of Limited Warranty with machines shipped. Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End User knows how to obtain warranty service.

**12.0 WARRANTY SERVICE**

Providing warranty service is optional for Printer Distributors. Therefore, the following terms apply to Distributors of Printer Products who choose to provide warranty service, either directly or through their Resellers, and to all Distributors of Typewriter Products.

The Service Support Guide is incorporated in the Agreement by reference.

Unless Lexmark specifies otherwise, you will:
1) provide warranty service under the terms of the applicable Statement of Limited Warranty and in accordance with the Service Support Guide;
2) validate all warranty claims presented to you;
3) maintain the capability to provide warranty service according to the requirements and procedures specified in the Service Support guide; and
4) provide a technical hotline for your Resellers during normal business hours.

Lexmark will:
1) provide, at no fee, one (1) copy of requested self-education service materials per authorized location;
2) provide, as part of service training, selected service materials;
3) make available to you, for a fee, a) service training for additional service personnel, and b) additional service materials; and
4) honor your valid claims for warranty reimbursement for labor (when applicable) and/or credits for parts or exchange of parts as specified in the Service Support guide.

The performance of warranty service may be assigned to your Reseller. The Reseller must have the required number of employees, whom you have trained, to perform warranty service in accordance with procedures Lexmark identifies to you. The Reseller must agree with you to accept the responsibility to provide warranty service for the Products acquired from you.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2789

You must provide such Reseller with service updates maintenance manuals and the necessary parts to perform warranty service.

You will develop and maintain administrative procedures for providing warranty reimbursement to your Reseller. Only you can obtain warranty reimbursement from Lexmark in accordance with the procedures Lexmark provides to you.

Your assignment of responsibility for warranty service does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty service reverts to you if the End User is not satisfied with the warranty service provided by your Reseller or if your Reseller loses your authorization to provide such warranty service. You may subsequently reassign such responsibility consistent with the provisions of this section. In such event, you are responsible to provide the End User and the new Reseller written notice of the change.

## 13.0 MAINTENANCE PARTS

Lexmark or IBM will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers or End Users for the sole purpose of maintaining their machines.

## 14.0 ENGINEERING CHANGES

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed as specified by Lexmark on the machines. You, your Resellers or their End Users may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

## 15.0 LICENSED PROGRAMS

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement and any accompanying End User license agreement or a third party agreement.

You agree to accept return of a licensed program, provided it is in its original, unopened package, and refund the money paid by a Reseller if an End User does not wish to be bound by the license. If the license permits the return of a program with an accompanying specified Product, you agree to accept the return of the program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in product announcement letters. In addition, certain programs, as identified in their accompanying End User license agreement, when distributed to the U.S.. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software.

## 16.0 SECURITY INTEREST

Lexmark reserves and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product, and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

In the event you select and use a Lexmark approved financing company to administer the financing of all your Lexmark Product purchases, then Lexmark will not require that you grant Lexmark a Purchase Money Security Interest as described above.

## 17.0 TITLE AND RISK OF LOSS

Title passes to you for each machine on its date of shipment from Lexmark. Title for each copy of a licensed program remains in Lexmark.

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 18.0 TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.
You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.
You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 19.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise;
4) relocation or closing of an Authorized Location.

## 20.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor, or if you sell typewriter Products as a Lexmark Authorized Master Dealer.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2790

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States and Puerto Rico.

Except as provided for in this section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States and Puerto Rico.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing. At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively. You agree not to contest Lexmark or IBM trademarks trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names. IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks or if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 21.0  PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States or Puerto Rico. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a machine in your inventory, or the operation of a machine which in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the machine or to replace or modify it so that it becomes non-infringing. However, if neither of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected machines, and you will return the machines in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned machine. However, Lexmark may, for used machines, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the machines as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you and your entire remedy for machines regarding infringement or the like.

## 22.0  LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of machines or programming located outside the United States and Puerto Rico. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark's entire liability and your exclusive remedy for actual damages from your use of licensed programs are as set forth in their accompanying program license agreement.
Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in Section 21.0 and the first paragraph of Section 23.0, Lexmark's liability for actual damages will be limited to $100,000.

## 23.0  INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2791

tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 24.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark.)

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or in the event that Lexmark elects to terminate the Agreement, Lexmark agrees to repurchase all currently marketed Lexmark Products in your inventory at the applicable distributor price prevailing at the time Lexmark actually receives such Products provided such returned Products are in the original shipping containers, which must not have been opened, damaged, marked or labeled. In such event, return shipping charges will be paid by you.

The parties agree that any and all Products which have been discontinued and are returned after Lexmark's designated return period, as specified in the discontinuation announcement relating to each discontinued Product, shall be excluded from the Products that Lexmark will repurchase.

A termination of the Agreement may also be partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, or specific Resellers.

## 25.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it

for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0 GENERAL

Either party's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of Kentucky will govern the Agreement.

## 27.0 DISTRIBUTOR SPECIFIC INFORMATION

### Eligible Products

You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices and an electronic file. Specific certification may also be required for certain Products.

| | | | |
|---|---|---|---|
| Printers | X | Supplies | X |
| Typewriters | _____ | Other (as listed) | |

### Minimum Renewal Criteria

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2792

below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

      Product      Minimum Renewal Criteria

**Marketing Coverage Area**

Your approved marketing coverage area(s),listed (below or on attachments) by Authorized Location, by county and state, is:

**Authorized Ship to and Bill to Locations**

All Authorized ship to and bill to Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.

<u>**Location**</u>

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2793

D00/75%

THESE TERMS LOADED BY THE CREDIT DEPT. - JUNE 2000
Please see Credit Dept. for details re Terms loaded for this customer. HHealy/Contracts

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2794

May 8, 2003



Dear 

We would like to thank you for your continued interest as an Authorized Distributor in Lexmark products. Due to the changing business environment within the computer products distribution space Lexmark will alter its payment terms effective July 1st 2003. Lexmark will continue to offer you a ▮▮ prompt pay discount for settlement in 15 days, however if you choose not to take advantage of the prompt pay discount settlement will now be required 30 days from invoice date.

Remittances are to be mailed to arrive within 15 days from invoice date to receive the prompt pay discount and remittances not taking the prompt pay discount must be mailed to arrive within 30 days from invoice date to the following:

Lexmark International, Inc.
P.O. Box 96612
Chicago, IL 60693-6612

Overnight courier checks are to be sent to the following:

Bank of America
99612 Collections Center Drive
Chicago, IL 60693

As an alternative, if you remit via wire transfer, please direct to the following:



Sincerely,

Eric Corbel
Senior Distributor Account Manager
Lexmark International Inc.
1455 Old Alabama Rd, Suite 190
Roswell GA, 30076

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2795

## AMENDMENT TO AUTHORIZED DISTRIBUTOR AGREEMENT _____

This Amendment ("Amendment") is made and entered this 31st day of July, 2003 (the "Effective Amendment Date") and modifies Authorized Distributor Agreement No. LX0040 (the "Agreement") by and between Lexmark International, Inc. ("Lexmark") and ▮▮▮▮ ("Distributor"). In the event of a conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment shall prevail. Except as expressly modified herein, the terms of the Agreement shall remain in full force and effect.

The pricing, rebates, and terms of this Amendment apply only to sales of inkjet printer and inkjet printer related products to Distributor that shall be resold by Distributor to ▮▮▮▮ and its affiliates (collectively ▮▮▮▮), solely for resale by ▮▮▮▮ to end user customers. Pricing, rebates (if any) and terms for products sold to Distributor for resale to other resellers or for resale to ▮▮▮▮ as an end user shall be excluded from this Amendment. The applicable products are specified in Attachment A.

### Pricing and Invoicing

- Pricing for products sold pursuant to this Amendment shall be at Lexmark's best distributor price for such products.
- Distributor's price to ▮▮▮▮ for products sold pursuant to this Amendment shall not exceed Lexmark's best distributor price for such products.
- Lexmark will rebate the following amounts to Distributor for products sold pursuant to this Amendment based on EDI transmissions of sell though from Distributor to ▮▮▮▮
  - (1) For printers and All-in-One units ▮▮▮ percent of net sales based on Lexmark's best distributor price (invoice price less, e.g., returns, price protection, taxes, or other credits).
  - (2) For supplies, ▮▮▮ percent of net sales based on Lexmark's best distributor price (invoice price less, e.g., returns, price protection, taxes, or other credits). The rebates will be paid via invoice credit against future purchases.
- Lexmark will use reasonable commercial efforts to process such invoice credits in the month following shipment (the "Shipment Month"). Notwithstanding the foregoing, Distributor shall be entitled to offset (but only against invoices for those products sold under this Amendment that are specified in Attachment A) unprocessed invoice credits against amounts owed to Lexmark only as follows: Distributor shall be entitled to the offset only if: (1) No later than the 7th day of the month following a Shipment Month, Distributor provides Lexmark an aggregate report of all sell through to ▮▮▮▮ during such Shipment Month, (2) Lexmark has not notified Distributor that a dispute exists concerning the amount of the credit, and (3) Lexmark fails to process an undisputed credit within 30 days after receipt of the sell through report.
- Lexmark will provide a monthly statement via email authorizing the deduction for net shipments from Distributor to ▮▮▮▮ within 20 days from the end of the period. End of period, for purposes of this Amendment, shall be the expiration of the calendar month following shipment.
- Distributor shall be solely responsible for invoicing and collecting payment for products sold by Distributor to ▮▮▮▮ Distributor acknowledges and agrees that Lexmark does not guaranty, represent, warrant, or otherwise assure payment by ▮▮▮▮ to Distributor for products sold by Distributor to ▮▮▮▮
- Distributor shall make available any requested sell through reporting to confirm compliance with the terms of this Amendment and shall, in addition, provide any other documentation (e.g., purchase orders and invoices relating to ▮▮▮▮ purchases of Lexmark product) reasonably requested by Lexmark to confirm compliance with the terms of this Amendment. In addition, upon request, Distributor shall make available its books and records to Lexmark for the purposes of conducting audits to confirm compliance with the terms of this Amendment. Any information requested by Lexmark hereunder shall relate solely to ▮▮▮▮ In addition, any audit shall be limited as follows:
- 1) Any audit shall not exceed one per twelve (12) month period;

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2796

- 2) Any audit shall not exceed twelve (12) months in scope;
- 3) The audit shall be conducted in a commercially reasonable manner and for a reasonable period of time during normal business hours;and
- 4) Any audit shall be at Lexmark's sole and exclusive cost.

## Returns - ██████████defective returns for products sold pursuant to this Amendment:

- Defective products shall not be returned to Lexmark unless Lexmark has issued a Return Authorization number ("RA") authorizing the return, which, if issued, shall be within three (3) business days of Distributor's request.
- <u>Hardware</u>: Distributor is eligible to return defective merchandise purchased by Distributor or ██████████within the last 120 days.
- <u>Supplies</u>: Distributor is eligible to return defective merchandise purchased by Distributor or ██████████within the last 120 days. Minimum supplies return is 24 cartridges.
- Lexmark will provide valid UPS shipping account number for shipments from ██████████o Distributor. Lexmark will provide Distributor with a list of approved carriers for returns to Lexmark (Freight Collect).
- Returns to Lexmark must be compliant with Lexmark returns policy.
- Lexmark will issue credit for approved returns when the product is received by Lexmark.
- Lexmark and Distributor shall cooperate in good faith to resolve discrepancies related to defective returns, miss-shipments, short-shipments, or any other disputes.

## Price Protection

- Lexmark will issue Distributor a price protection credit based on a document from Lexmark to the Distributor detailing the part numbers and amount to be reduced. For ██████████an additional computer generated on hand and in transit report from ██████████on eligible product must be attached to this form for calculation and auditing. A copy of this report must be sent to both Distributor and Lexmark. The price protection to ██████████will be in the form of pass through price protection, through Distributor, and will be an additional and separate price protection claim from the standard claim that Distributor sends in for its own in warehouse and in transit price protection.

[The remainder of this page intentionally left blank.]

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2797

**Miscellaneous**

- Distributor must report miss-shipments and short-shipments of product within twenty (20) days after end of period.
- Except where expressly permitted in this Amendment, Distributor shall not be entitled to set-off or deduct any amounts from Lexmark invoices without Lexmark's prior written approval.
- Unless authorized in this Amendment, Distributor shall not be entitled to receive any discounts, co-op, MDF, rebates, or other marketing payments for products sold pursuant to this Amendment. Specifically Distributor forfeits the ▆ BTL on laser printers and ▆ BTL on inkjet printer sales out to ▆▆▆▆▆
- This Amendment supercedes and replaces all prior and contemporaneous discussions, negotiations, and agreements, whether oral or written, relating to its subject matter.
- Either party may cancel this Amendment on 30 days advance written notice.

AGREED TO AND ACCEPTED:



Lexmark International, Inc.

By: _Paul Ott_

Its: _VP/GM CPD NORTH AMERICA_

Date: _AUG 19/03_

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  **A2798**

Russ B.
5/22/08

# THIRD AMENDMENT TO AUTHORIZED DISTRIBUTOR AGREEMENT

This Third Amendment to Authorized Distributor Agreement ("Amendment") is made and entered his **3rd** day of February, 2008 (the "Effective Amendment Date") and modifies that certain Authorized Distributor Agreement No. LX00404, dated August 1, 1997 (the "Agreement"), as amended, by and between Lexmark International, Inc. ("Lexmark") and ▮▮▮▮▮▮▮ (together with its affiliates, "Distributor"). In the event of a conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment shall prevail. Except as expressly modified herein, the erms of the Agreement shall remain in full force and effect.

The pricing, rebates, and terms of this Amendment apply only to sales to Distributor of inkjet printers and (if specified by Lexmark) laser printers that shall be sold by Distributor to the retail store accounts ("Consignment Accounts") identified in Schedule 1 to this Amendment solely for resale purposes by such accounts. On mutual agreement, the parties may add additional Consignment Accounts to this Amendment by mutually executing a revised Schedule 1. Pricing, rebates (if any) and terms for Products sold to Distributor for resale to resellers other than the Consignment Accounts, or for sale to a Consignment Account(s) for end use shall be excluded from this Amendment. Lexmark shall specify in writing from time to time the Products that shall be sold pursuant to this Amendment. Capitalized terms used in this Amendment which are not otherwise defined herein shall have the meanings given such terms in the Agreement.

## Orders

- Lexmark and Distributor shall in good faith conduct weekly forecasting conferences with each Consignment Account. Distributor shall ensure it has on hand, at all times, the Minimum Inventory Amount (defined below) for each Consignment Account. The Minimum Inventory Amount shall be calculated each Monday (unless that day is a United States federal holiday; in that event, the calculation shall occur on the next business day). Distributor shall place orders for Product to be sold to such Consignment Accounts in quantities and on dates as mutually agreed with Lexmark. From time to time Lexmark shall provide, per Product, the quantity of each necessary to reach full 40-foot shipping container capacity. Distributor shall place orders for each Product in pallet quantities.
- All orders shall specify a lead time to shipment of at least 2 weeks. Each week, Distributor shall provide a non-binding forecast of expected orders for the subsequent 12 weeks.
- Orders shall specify a ship-to address that corresponds to the distribution hub of the Consignment Account for which the order is being placed. Orders shall not specify individual store locations as a ship-to address.
- As used in this Agreement, "Minimum Inventory Amount" means, for each specific SKU of Product purchased by a Consignment Account, a quantity that is equal to the average quantity of that specific SKU of Product purchased by the Consignment Account during the immediately preceding eight weeks.

## Pricing and Invoicing

- Pricing for Products sold pursuant to this Amendment shall be at Lexmark's best distributor price for such Products. ▮▮▮▮▮▮▮▮▮▮▮▮ Shipment is complete when Lexmark has released the Product to carrier and they are en route to applicable Consignment Account location. Lexmark will invoice upon shipment from the Lexmark designated United States shipping point. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ upon shipment from ▮▮▮▮▮▮
- Distributor shall be responsible for shortage or damage claims that accrue during shipment from the Lexmark United States shipping point. Lexmark is not responsible for shortage or damage claims that accrue after shipment is complete as described above.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2799

- pay to insure for Distributor's benefit the Products against loss during transit.

- Distributor's shall set its pricing to Consignment Accounts for Products sold pursuant to this Amendment independently, provided, such pricing to Consignment Accounts shall not exceed maximum resale prices published by Lexmark at its independent and sole discretion.

- When paying invoices, Distributor shall be entitled to issue a debit memo against the following amounts to be credited to Distributor for Products sold pursuant to this Amendment based on total invoice amount:

  - (1) For all Products sold hereunder to a Consignment Account, four percent (4%) of net sales based on Lexmark's best distributor price (invoice price less, e.g., returns, price protection, taxes, and/or other credits).

- Lexmark will use reasonable commercial efforts to process such invoice credits in the month following shipment (the "Shipment Month"). Notwithstanding the foregoing, Distributor shall be entitled to offset (but only against invoices for those Products shipped under this Amendment that are specified in Attachment A) unprocessed invoice credits against amounts owed to Lexmark only as follows: Distributor shall be entitled to the offset only if: (1) No later than the 7th day of the month following a Shipment Month, Distributor provides Lexmark an aggregate report of all sell through to all Consignment Accounts during such Shipment Month, and (2) Lexmark has not notified Distributor that a dispute exists concerning the amount of the credit.

- Distributor shall be solely responsible for invoicing and collecting payment for Products sold by Distributor to Consignment Accounts. Distributor acknowledges and agrees that Lexmark does not guaranty, represent, warrant, or otherwise assure payment by Consignment Accounts to Distributor for Products sold by Distributor to any and/or all Consignment Accounts.

- Distributor shall make available any requested sell-through reporting to confirm compliance with the terms of this Amendment and shall, in addition, provide any other documentation (e.g., purchase orders and invoices relating to Consignment Account purchases of Lexmark Product) reasonably requested by Lexmark to confirm compliance with the terms of this Amendment. In addition, upon five (5) business days notice, Distributor shall make available its books and records to Lexmark for the purposes of conducting audits to confirm compliance with the terms of this Amendment. Any information requested by Lexmark hereunder shall relate solely to Consignment Accounts. In addition, any audit shall be limited as follows:

- 1) Any audit shall not exceed one per twelve (12) month period;

- 2) Any audit shall not exceed twelve (12) months in scope;

- 3) The audit shall be conducted in a commercially reasonable manner and for a reasonable period of time during normal business hours; and

- 4) Any audit shall be at Lexmark's sole and exclusive cost.

- **Marketing.** If a demonstration model program is requested by a Consignment Account, Lexmark shall discuss in good faith with such Consignment Account regarding the development of such a program.

- ▉▉▉▉▉▉ Supply Chain Guide (version dated February 1▉, 2006) ("Guide") attached hereto as Attachment B, which is incorporated by reference, sets forth additional requirements for shipment of Product to the applicable Consignment Account customer, customer fulfillment center, store, and/or facility. Lexmark acknowledges, agrees and covenants that Lexmark solely shall be responsible for compliance with the Guide. Lexmark will reimburse Distributor for fees and charges imposed by ▉▉▉▉▉ against Distributor in connection with any act or omission by Lexmark, including without limitation, non-compliance with such Guide. In no event shall Distributor impose on Lexmark any Distributor only related fees, penalties, or other charges.

- **Short Shipments:** In the event that any Consignment Account alleges Products ordered from Distributor to which this Amendment applies were not received or were only partially received, Lexmark will provide Distributor with proof of delivery by pallet weight upon receipt from Distributor of proof of the order within ten (10) days of Distributor's request. Lexmark

- **Marketing Development and Special Promotional Funds:** From time to time, Lexmark may approve special discounts from the Product price, the entire value of which must be granted by Distributor to any and all Consignment Accounts designated by Lexmark to be the recipient such discounts, for the purpose of marketing development and/or special advertising promotions. Lexmark will designate such discount(s) in a writing identifying the amount of the discount(s), the applicable Products to which said discount(s) applies, as well as the Consignment Account(s) that must receive the entire value of such discount. These discounts must be claimed within 90 days of the completion of a Product promotion or notification of said discount, whichever is later.

## Reporting:

- Each week, Distributor shall provide Product sell-through data for each Consignment Account, as well as existing Product inventory for each Consignment Account, in a report format and content specified by Lexmark. Lexmark represents and warrants that it has the following EDI capabilities: Purchase Order (850); Purchase Order Change (860); Invoice (810); ASN (856); UCC 128 (Pallet Level); UCC 128 (Case Level); Vendor Managed Inventory (855); Product Activity Data (852); Functional Acknowledgement (997); Payment (820); Debit Memos (812); Text Messages (864); and Receiving Detail Notice (861).

## Returns:

- Only defective Products deemed defective within 12 months from the date of the last shipment of such Product model from Lexmark to the corresponding Consignment Account from which the Product is sought to be returned may be returned. Defective Products shall not be returned to Lexmark unless Lexmark has issued a Return Authorization number ("RA") authorizing the return, which, if issued, shall be within three (3) business days of Distributor's request. In no event will Lexmark be responsible for any returns consolidation allowances for damaged or defective Products. Lexmark shall be entitled to refuse shipment of any lot of returned Products for which an RA has not issued.
- Lexmark will provide valid shipping account number for shipments of defective Products from a Consignment Account to Lexmark's designated point of receipt for defective Product returns. Lexmark will provide Distributor with a list of approved carriers for returns to Lexmark (Freight Collect).
- All Product returns to Lexmark must be compliant with Lexmark's defective Product returns policy, which shall be provided upon request.
- Lexmark will issue credit for approved returns when the Product is received by Lexmark.
- Product purchased by Distributor from Lexmark that is not defective may be returned from Distributor to Lexmark only if Distributor follows all return authorization procedures for non-defective Product returns published by Lexmark, and either of the following additional conditions is satisfied: (a) at least 120 days have elapsed since Distributor last purchased a Product having the same model number as the Product proposed to be returned, or (b) a Consignment Account is terminated.
- Lexmark and Distributor shall cooperate in good faith to resolve discrepancies related to defective returns, miss-shipments, short-shipments, or any other disputes.

## Price Protection

- If Lexmark announces a Distributor price decrease for a Product, Distributor will be eligible to receive a price reduction credit for those Products that Distributor has timely reported as owned (as well as Products in transit from Lexmark to Consignment Accounts) inventory. Such price reduction credit will extend to those defective Products that are in Distributor's ownership on the effective date of the price reduction as specified in the announcement, and

for which an FPA has not been issued by Lexmark. Distributor shall include defective Product in inventory as well as non-defective Product in inventory, in its credit request. Notwithstanding the foregoing, any and all such price protection is conditioned on Distributor providing Lexmark a detailed inventory report listing all units (by model number) in Distributor's inventory (as well as Products in transit from Lexmark to Consignment Accounts) as of the effective date of the price change.

## Term

- The term of this Amendment shall begin on the Effective Amendment Date and continue for a period of twelve (12) months. This Amendment shall thereafter automatically renew for additional 12-month terms. Termination of this Amendment may be effected under the same terms specified in the Agreement for termination of the Agreement. The parties acknowledge and agree that this Amendment may be terminated independently of the Agreement.

## Prohibition of Child Labor

- Lexmark hereby represents that no person below the age of sixteen (16) nor any forced, prison or conscripted labor is employed by Lexmark. If the local legal minimum age for work is higher than sixteen (16), Lexmark employs no one younger than the legal minimum age.

## Indemnification

- With respect to any and all of the Products, Lexmark agrees to defend, indemnify and hold harmless Distributor (inclusive of its subsidiaries and affiliates, its successors and assigns) at Lexmark's expense from and against any claim, charge, demand, proceeding, suit, liability, loss, cost, expense, order, decree ("Claims") based on (a) any actual or claimed personal injury (including death), property damage or loss of any nature whatsoever alleged to have been caused by a Product sold hereunder, (b) direct infringement (not in combination with any other hardware or software) of a United States patent, copyright or trademark with respect to any of the Products, or (c) breach of any representations, warranties or covenants in this Agreement. If Distributor's distribution of a Product is permanently enjoined by a United States court, Lexmark, at its option, may procure for Distributor the right to continue distributing the Products, replace or modify the Products to eliminate the infringement or credit Distributor for Products unsold less a reasonable depreciation. Distributor shall have the right to participate and be represented in any such action, suit or proceeding by its own attorneys at its own expense.
- The foregoing indemnity is conditioned upon Distributor giving Lexmark prompt written notice of the foregoing, allowing Lexmark control in the defense, trial, and/or settlement thereof, and reasonably cooperating with Lexmark in such defense, trial, and/or settlement.
- EXCEPT FOR CLAIMS FOR INDEMNIFICATION, IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER ANY THEORY OF LIABILITY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY SUCH DAMAGES ARISING FROM BREACH OF CONTRACT OR WARRANTY OR FROM NEGLIGENCE OR STRICT LIABILITY), INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, REVENUE, DATA, OR USE, OR FOR INTERRUPTED COMMUNICATIONS, OR FROM ANY DEFECT, ERROR, OR MALFUNCTION OF THE PRODUCTS, EVEN IF THE OTHER PARTY OR ANY OTHER PERSON HAS BEEN ADVISED OR SHOULD KNOW OF THE POSSIBILITY OF SUCH DAMAGES.

## Other Obligations

- **Material Safety Data Sheets.** Material Safety Data Sheets for the Products sold pursuant to this Amendment shall be available through www.lexmark.com.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2802

- **Country of Origin.** On the Product packaging, Lexmark shall provide Distributor with accurate Country of Origin information for each existing or new item, article, or good (identified separately by SKU) in accordance with the Country of Origin definition and standard set forth in the Trade Agreements Act, 19 U.S.C. 2501, et seq., and its implementing regulations, 48 C.F.R. 52.225.5. Lexmark shall promptly revise such disclosures to reflect a Country of Origin change for an item as each such change occurs. Lexmark shall utilize Consignment Accounts's Vendor Extranet Program to provide and revise Country of Origin disclosures.

## Miscellaneous

- Distributor must report miss-shipments and short-shipments of Product within twenty (20) days after the end of the quarter in which such miss-shipment and/or short-shipment occurred. Pallet weight when shipped will be the agreed upon method to validate short shipments, miss-shipments, and canceled shipments.
- Except where expressly permitted in this Amendment and the Agreement, Distributor shall not be entitled to set-off or deduct any amounts from Lexmark invoices without Lexmark's prior written approval.
- Unless authorized in this Amendment, Distributor shall not be entitled to receive any discounts, co-op, MDF, rebates, freight allowance, cross dock allowances, marketing payments, or other payments for Products sold pursuant to this Amendment. Specifically Distributor forfeits any percentage BTL on laser printers and inkjet printer sales to Consignment Accounts.
- This Amendment supersedes and replaces all prior and contemporaneous discussions, negotiations, and agreements, whether oral or written, relating to its subject matter.
- Either party may cancel this Amendment on 90 days advance written notice.
- Distributor shall have the right to assign its rights, duties and responsibilities under this Amendment to an affiliate of Distributor. An affiliate of Distributor means any corporation, partnership or other business entity which wholly owns, or which is wholly owned by, Distributor.
- Lexmark shall provide a toll free telephone number to support Consignment Account representatives and Distributor.
- With respect to: (a) Lexmark's obligations in this Agreement contained in the section of this Amendment titled "Indemnification" to indemnify Distributor for patent infringement and/or personal injury or property damage, (b) Lexmark's obligations in this Amendment with respect to marking country of origin on Products, and (c) Lexmark's representations contained in the section of this Amendment titled "Child Labor"; the parties acknowledge and agree that each Consignment Account is a third party intended beneficiary of such provisions.

AGREED TO AND ACCEPTED:

Lexmark International, Inc.

By: _Paul Rooke_

Its: _Executive Vice President_

Date: _3/5/08_

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2803

# SCHEDULE 1

**Consignment Accounts: (Retail Store accounts at which Distributor may consign inventory purchased from Lexmark)**

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2804

## FOURTH AMENDMENT TO AUTHORIZED DISTRIBUTOR AGREEMENT

This Fourth Amendment to Authorized Distributor Agreement ("Amendment") is made and entered into this 30th day of April, 2008 (the "Effective Amendment Date") and modifies that certain Authorized Distributor Agreement No. LX00404, dated August 1, 1997 (the "Agreement"), as amended, by and between Lexmark International, Inc. ("Lexmark") and ██████████ formerly known as ████████████████ (together with its affiliates, "Distributor"). In the event of a conflict between the terms of the Agreement and/or any prior amendments thereto and the terms of this Amendment, the terms of this Amendment shall prevail. Except as expressly modified herein, the terms of the Agreement (as subsequently amended) shall remain in full force and effect.

The terms of this Amendment apply only to sales to Distributor of inkjet printers and (if specified by Lexmark) laser printers that shall be sold by Distributor to ██████████ on a consignment basis as described in the Third Amendment to Authorized Distributor Agreement mutually executed by the parties and having an effective date of February 3, 2008 ("Amendment 3"). Capitalized terms used in this Amendment that are not otherwise defined herein shall have the meanings given such terms in the Agreement.

- With regard to sales of Products from Distributor to ██████ on a consignment basis as described in Amendment 3, Lexmark warrants that the Products will not, under normal conditions of shipment, storage, or use, cause any person to be exposed to a chemical which is a carcinogen or a reproductive toxin listed under the California Safe Drinking Water and Toxic Enforcement Act of 1986 in quantities which would require that a warning be given prior to such exposure under the Act. Additionally, Lexmark warrants that such Products sold to ████████ hereunder are in compliance with California Penal Code Section 380.

- Notwithstanding any other language in the Agreement (as previously amended) to the contrary, with regard to sales of Products from Distributor to ██████ on a consignment basis as described in Amendment 3, Lexmark acknowledges and agrees that the implied warranty of merchantability and the warranty against infringement are not disclaimed. Lexmark expressly warrants that with regard to sales of Products from Distributor to ██████ on a consignment basis as described in Amendment 3, the design or manufacture of Products originated or provided by Lexmark will not violate any applicable federal, state, and local laws, rules, and regulations and will not infringe upon any patent, copyright, trademark, trade secret, know-how, patent registration right, or other proprietary or contractual right of any third party.

- Amendment 3 is hereby revised as follows: The paragraph comprising the fifth bullet mark under the heading "Returns" is hereby deleted and replaced with the following language: Product purchased by Distributor from Lexmark that is not defective and aged at least 120 days since Distributor last purchased Products of such model number may be returned from Distributor to Lexmark(and Lexmark will provide a return shipment account number) only if Distributor follows all return authorization procedures for non-defective Product returns published by Lexmark. Notwithstanding the foregoing, in the event a Consignment Account is terminated, Distributor may return to Lexmark any and all Products returned to Distributor by such Consignment Account (and Lexmark will provide a return shipment account number) and Lexmark shall issue Distributor a credit for the price paid by Distributor (less any price protection credits and/or other credits previously granted to Distributor in connection with such returned Products) for such returned Products.

- Amendment 3 is hereby revised as follows: in the section titled "Pricing and Invoicing" the following language is deleted from the Paragraph adjacent to the third to last bullet mark in the section: "(version dated February 1st, 2008)" The deleted language is replaced with the following language "(version dated December 8, 2007)."

CONFIDENTIAL - OUTSIDE COUNSEL ONLY A2805

- Attachment B to Amendment 3 is deleted and replaced with Attachment B hereto. The parties acknowledge and agree that there is no Attachment A to this Fourth Amendment to Authorized Distributor Agreement.

- Notwithstanding any other language in the Agreement (as previously amended) to the contrary, with regard to sales of Products from Distributor to ▮▮▮▮ on a consignment basis as described in Amendment 3:

  - To the extent that any action or omission by Lexmark is the sole cause for a breach by Distributor of the terms found under the heading "Delay" contained in paragraph 7, page 10, of the Vendor Agreement between ▮▮▮▮ and Distributor (reproduced below for reference), the parties acknowledge and agree that Lexmark will reimburse Distributor for fees and charges imposed by ▮▮▮▮ against Distributor as a result of such breach. In addition, to the extent that any delay or anticipated delay as described in such paragraph 7 is solely caused by any action or omission by Lexmark, and Distributor proposes to incur costs as a result of its reasonable means to reduce such delay or anticipated delay as described in such paragraph 7, then subject to Lexmark's prior approval (which shall not unreasonably be withheld) before costs are incurred, Lexmark will reimburse Distributor for such incurred, approved costs.

  - To the extent that any action or omission by Distributor is the sole cause for a breach by Distributor of the terms found under the heading "Delay" contained in paragraph 7, page 10, of the Vendor Agreement between ▮▮▮▮ and Distributor (reproduced below for reference), Lexmark shall not be liable for such delay, nor shall Lexmark reimburse Distributor for any costs incurred by distributor to reduce such delay.

  - To the extent that actions and/or omissions by both Lexmark and Distributor result in a breach by Distributor of the terms found under the heading "Delay" contained in paragraph 7, page 10, of the Vendor Agreement between ▮▮▮▮ and Distributor (reproduced below for reference) Lexmark and Distributor shall immediately negotiate in good faith to determine a fair allocation (based on the level of culpability for each party that resulted in the breach) of the amount of any fees and charges imposed by ▮▮▮▮ against Distributor as a result of such breach, and Lexmark shall reimburse Distributor for such negotiated amount.

  - To the extent that actions and/or omissions by both Lexmark and Distributor result in a delay or anticipated delay as described under the heading "Delay" contained in paragraph 7, page 10, of the Vendor Agreement between ▮▮▮▮ and Distributor (reproduced below for reference), and Distributor proposes to incur costs as a result of its reasonable means to reduce such delay or anticipated delay as described in such paragraph 7, then subject to Lexmark's prior approval (which shall not unreasonably be withheld) before costs are incurred, Lexmark will reimburse Distributor for Lexmark's fair allocation (based on the level of culpability for each party that created the delay or anticipated delay).

- For reference purposes only, the parties reproduce Paragraph 7, page 10 of the Vendor Agreement between ▮▮▮▮ and Distributor here:

  - "Time is of the essence in the Program. At the outset of any delay from any cause, including Force Majeure, Vendor shall immediately notify ▮▮▮▮ in writing of the delay or anticipated delay and shall undertake to shorten the delay by all reasonable means. If such delay is caused by Force Majeure, the costs of shortening the delays shall be paid by ▮▮▮▮ to the extent such costs are attributed to action authorized by ▮▮▮▮ If the delay is from any other cause, Vendor shall be solely responsible for the costs of overcoming such delays. ▮▮▮▮ reserves the right to reject Goods and to cancel all or nay portion of this PO in the event of failure to deliver in accordance with the specifications and time contained on the fact of this PO. Acceptance of any part of a

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2806

shipment shall not bind ████████ to accept the remainder of that shipment or future shipment or constitute a waiver of ████████ right to return any Goods accepted."

- The parties acknowledge and agree that ████████, a wholly owned subsidiary of Distributor, is the contracting affiliate with ████████ on Distributor's behalf for purposes of Amendment 3 and has the same rights, obligations, and remedies as Distributor with regard to this Agreement, as amended.

AGREED TO AND ACCEPTED:

Lexmark International, Inc.

By: _Paul Rooke_

Its: _Corporate Vice President and President, CP_

Date: _May 5, 2008_

## FIFTH AMENDMENT TO AUTHORIZED DISTRIBUTOR AGREEMENT

This Fifth Amendment to Authorized Distributor Agreement ("Amendment") is made and entered on this 9th day of January, 2008 (the "Effective Amendment Date") and modifies that certain March 3, 2008 Third Amendment ("Amendment 3"), which modified Authorized Distributor Agreement No. LX00404 dated August 1,1997 between Lexmark International, Inc. ("Lexmark") and ▮▮▮▮▮▮▮▮▮▮▮▮ formerly known as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ together with its affiliates, "Distributor").

The terms of this Amendment shall apply to Products consigned by Distributor's subsidiary ▮▮▮▮▮▮▮▮▮▮▮ to Consignment Accounts as contemplated by Amendment 3. Capitalized terms used in this Amendment that are not otherwise defined herein shall have the meanings given such terms in the Agreement. In the event of a conflict between the terms and conditions of this Amendment, Amendment 3, and/or the Agreement, this Amendment shall govern.

### Section 1    Modifications to Amendment 3

1.1    Effective January 8, 2009, Schedule 1 to Amendment 3 is hereby deleted and replaced with the Schedule 1 attached hereto.

1.2    Notwithstanding any language to the contrary in Amendment 3, Distributor shall be solely responsible for compliance with those portions of the Guide that relate to the receipt of purchase orders and electronic systems necessary to timely process such orders, and in no event shall Lexmark have any obligation to pay any ▮▮▮▮▮▮▮ imposed fees, fines, and/or penalties resulting from Distributor's failure to comply with such portions of the Guide. For the avoidance of doubt, in no event will Lexmark be liable for ▮▮▮▮▮▮ imposed fees, fines, and/or penalties for late shipments resulting from Distributor's failure to promptly (i.e., within 24 hours of receipt) relay orders for Products from ▮▮▮▮▮▮

1.3    ▮▮▮▮▮▮▮▮ Supply Chain Vendor Partnership Program Manual (Version 6-20-08) (the ▮▮▮▮▮▮▮ Guide") is hereby incorporated by reference. The parties acknowledge and agree this document sets forth additional requirements for shipment of Product to the applicable Consignment Account customer, customer fulfillment center, store, and/or facility. Lexmark acknowledges and agrees and covenants that Lexmark solely shall be responsible for compliance with the ▮▮▮▮▮ Guide; provided, Distributor shall be solely responsible for compliance with those portions of the ▮▮▮▮▮▮ Guide that relate to the receipt of purchase orders and electronic systems necessary to timely process such orders, and Lexmark has no obligation to pay any ▮▮▮▮▮▮ imposed fees, fines, and/or penalties relating to Distributor's failure to comply with such portions of the ▮▮▮▮▮ Guide. Lexmark will reimburse Distributor for fees and charges imposed by ▮▮▮▮▮▮ against Distributor in connection with any act or omission by Lexmark. For the avoidance of doubt, in no event will Lexmark be liable for ▮▮▮▮▮▮ imposed fees, fines, and/or penalties for late shipments resulting from Distributor's failure to promptly (i.e., within 24 hours of receipt) relay orders for Products from ▮▮▮▮▮▮

1.4    Distributor shall include with its order the following "Bill to" order numbers

▮▮▮▮▮ Fifth_Amendment 1-9-09cln

when placing orders for Products to be shipped to the Consignment Accounts specified, unless notified by Lexmark that a different "Bill to" order number should be used:



### Section 2     Reference to and Effect on the Agreement

2.1     Except as specifically set forth above, the Agreement, and all other documents, instruments and agreements executed and/or delivered in connection therewith, shall remain in full force and effect, and are hereby ratified and confirmed.

2.2     The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of a party, nor constitute a waiver of any provision of the Agreement, or any other documents, instruments and agreements executed and/or delivered in connection therewith.

Lexmark International, Inc.

By: Paul Rooke

Name: PAUL ROOKE

Title: EVP Lexmark International

Fifth_Amendment 1-9-09cln

CONFIDENTIAL - OUTSIDE COUNSEL ONLY     A2809

**Schedule 1**

Consignment  Accounts (Retail Store accounts at which Distributor may consign inventory purchased from Lexmark)

Consignment Models, Part Numbers, and Invoice Costs effective 01/01/2009

| Model | Part Number | MAP | Invoice Cost | Invoice Cost | Per Unit Backside Payment to |
|-------|-------------|-----|--------------|--------------|------------------------------|
| X9575 | 14V1000 | | | | |
| X7675 | 12V0300 | | | | |
| X6675 | 20R1700 | | | | |
| X4650 | 16F1400 | | | | |
| X5075 | 11N1500 | | | | |
| E120N | 23S0300 | | | | |
| E260DN | 34S0300 | | | | |
| C540N | 26A0000 | | | | |
| C543DN | 26B0000 | | | | |

| Model | Part Number | MAP | Invoice Cost | Invoice Cost | Per Unit Backside Payment to |
|-------|-------------|-----|--------------|--------------|------------------------------|
| X2650 | 12L1000 | | | | |
| X6675 | 20R1700 | | | | |
| X4650 | 16F1400 | | | | |
| X7675 | 12V0300 | | | | |
| E120N | 23S0300 | | | | |
| E260DN | 34S0300 | | | | |

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2810

This Sixth Amendment to Authorized Distributor Agreement ("Amendment") is made and entered on this 23rd day of January, 2009 (the "Effective Amendment Date") and modifies Authorized Distributor Agreement No. LX00404 dated August 1,1997 (the "Agreement") between Lexmark International, Inc. ("Lexmark") and ███████████ ████ (together with its affiliates, "Distributor"), as well as all prior amendments to the Agreement relating to the consignment of Lexmark branded printers and all-in-one units to Consignment Accounts (i.e., Amendments 3, 4, and 5 to the Agreement).

The terms of this Amendment shall apply to Products consigned by Distributor's subsidiary ██████████████ to Consignment Accounts as contemplated by Amendments 3, 4, and 5. Capitalized terms used in this Amendment that are not otherwise defined herein shall have the meanings given such terms in the Agreement. In the event of a conflict between the terms and conditions of this Amendment, Amendments 3, 4, and 5 and/or the Agreement, this Amendment shall govern.

## Section 1    Modifications to the Consignment Amendments

1.1    Effective January 23rd, 2009, Schedule 1 to Amendments 3 and 5 is hereby deleted and replaced with the Schedule 1 attached hereto.

1.2    With regard to Products purchased by Distributor and resold on a consignment basis through ████████████████████ (a) payment terms are 75 days from invoice date (b) price move notification requires 65 days advance written notice from Lexmark; and (c) Lexmark will accept returns of consigned Products, including demonstration units, from ███████████████████ that are returned to Distributor pursuant to Section 14 of the Consignment Amendment to Vendor Global Program Agreement executed by ████ and Distributor executed on or about January 29, 2009.

1.3    With regard demonstration units provided by Distributor to ████ s in connection with consignment sales hereunder: (a) Distributor will inform Lexmark regarding the number of demonstration units specified by ████ and (b) Commencing the seventy-fifth day after each such demonstration unit has been designated as such by ████ (as evidenced by documentation provided from ████ directly to Lexmark) and remains on display at a ████ retail store, each month afterwards, Distributor shall be entitled to deduct from invoices against future purchases an amount equal to seventy basis points (.007) of the Lexmark invoice price for such unit.

1.4    With regard to returns of Product to Distributor from ████ Distributor shall not accept any returns of Product from ████ that is not alleged to be defective (e.g., customer convenience returns, stock balancing returns, excess inventory returns) without Lexmark's prior consent, which shall not be withheld if Distributor complies with the provisions of this Section 1.4. In the event that ████ proposes a return of such non-defective Products, Distributor shall notify Lexmark of the proposed return and, if requested by Lexmark at Lexmark's sole cost and expense, facilitate communication

between Lexmark and  with regard to the formation and implementation of any special promotions designed to obviate the need for return of product. The parties acknowledge and agree that as between them, Lexmark shall be solely responsible for the costs and expenses of such special promotions. Lexmark consents to the return to Distributor of non-defective Product where Distributor has provided the notice described in this Section 1.4 and either: (1) Lexmark or ███ declines to undertake any special promotional efforts designed to mitigate returns; or (2) Lexmark, Distributor, and ███ have undertaken such special promotions, but after their conclusion ███ renews its request for a the return of non-defective Product. The parties acknowledge and agree that the return of non-defective Products to Lexmark from Distributor remains governed pursuant to the provisions of the April 30, 2008 Fourth Amendment to the Agreement (Amendment 4); provided, notwithstanding any language to the contrary in Amendment 4, with respect to non-defective Product that was returned to Distributor from ███ Distributor's adherence to the terms of this Section 1.4 is a condition precedent to Distributor's rights of Product return to Lexmark described in Amendment 4.

1.5    ███ Routing and Shipping Requirements Guide (dated 2/01/2009) (the ███ Shipping and Routing Guide") is hereby incorporated by reference. The parties acknowledge and agree this document sets forth additional requirements for shipment of Product to the applicable Consignment Account customer, customer fulfillment center, store, and/or facility. Lexmark acknowledges and agrees and covenants that Lexmark solely shall be responsible for compliance with the ███ Shipping and Routing Guide; provided, Distributor shall be solely responsible for compliance with those portions of the ███ Shipping and Routing Guide that relate to the receipt of purchase orders and electronic systems necessary to timely process such orders, and Lexmark has no obligation to pay any ███ imposed fees, fines, and/or penalties relating to Distributor's failure to comply with such portions of the ███ Shipping and Routing Guide. Lexmark will reimburse Distributor for fees and charges imposed by ███ against Distributor in connection with any act or omission by Lexmark. For the avoidance of doubt, in no event will Lexmark be liable for ███ imposed fees, fines, and/or penalties for late shipments resulting from Distributor's failure to promptly (i.e., within one (1) business day of receipt) relay orders for Products from ███

1.6    The last sentence of Section 1.3 in Amendment 5 is hereby amended to replace "24 hours" with "one (1) business day".

1.7    Notwithstanding any language to the contrary in Amendment 3, Amendment 4, and/or Amendment 5, Distributor shall include with its order the following "Bill to" order numbers when placing orders for Products to be shipped to the Consignment Accounts specified, unless notified by Lexmark that a different "Bill to" order number should be used:

## Section 2    Reference to and Effect on the Agreement

2.1    Except as specifically set forth above, the Agreement, and all other documents, instruments and agreements executed and/or delivered in connection therewith, shall remain in full force and effect, and are hereby ratified and confirmed.

2.2    The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as a waiver of any right, power or remedy of a party, nor constitute a waiver of any provision of the Agreement, or any other documents, instruments and agreements executed and/or delivered in connection therewith.

**Lexmark International, Inc.**

By: _Paul Rooke_
Name: _PAUL ROOKE_
Title: _EVP Lexmark_

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2813

## Schedule 1

Consignment Accounts: (Retail Store accounts at which Distributor may consign inventory purchased from Lexmark):



# MASTER LEXMARK PROMOTION AGREEMENT

Name and Address of Reseller

Reference Reseller
Agreement No:
**LX00404**

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Distributor Agreement, executed by and between the parties on or about November 5, 1997 ( "Distributor Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Distributor Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and ███████ will be deemed to have accepted the Offer, unless ███████ provides written notice to Lexmark within ten business days of receipt of the Offer indicating that ███████ does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ███████ will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

## TERM

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2815

A termination of this Agreement shall not result in the termination of the Distributor Agreement, but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ███████ for resale to a Reseller, ███████ may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1.  Offers cannot be combined with any special bid pricing or other promotional offer.

2.  Promotions are stackable with the Education Program and other margin enhancement program discounts.

3.  Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4.  All rebates are conditioned on ███████ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40).

5.  Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

███████ Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2816

Accepted by:

*LEXMARK INTERNATIONAL, INC.*

By: _Biff Byelick_
       Authorized Signature

_Biff Byelick 3/13/12_
Name (type/print) Date

Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  **A2817**

...mark International, Inc.     DISTRIBUTOR CONTRACT 8
an IBM alliance company

# AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.: XXXXXX

L500560

Contract Commencement Date: **11/01/92**

Lexmark Office Address:

**6301 NW FTH WAY, 3RD FLOOR**
**FT. LAUDERDALE      FL 33309**

Lexmark Office No.: **GT9**

Thank you for selecting Lexmark as a supplier of products, services, and support. Our goal is to be the best in the industry. If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc. (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States and Puerto Rico. Lexmark may issue Bulletins under this Agreement which change the terms of this Agreement. Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in writing from time to time. All such notices are effective on the date Lexmark specifies.

## Table of Contents

| | | | |
|---|---|---|---|
| 1.0 | DEFINITIONS | 17.0 | TITLE AND RISK OF LOSS |
| 2.0 | CONTRACT PERIOD | 18.0 | TAXES |
| 3.0 | RELATIONSHIP OF THE PARTIES | 19.0 | STATUS CHANGE |
| 4.0 | MARKETING TO RESELLERS | 20.0 | TRADEMARKS AND TRADE NAMES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | 21.0 | PATENTS AND COPYRIGHTS |
| 6.0 | ORDERS AND CANCELLATIONS | 22.0 | LIMITATION OF REMEDIES |
| 7.0 | PRICES | 23.0 | INDEMNIFICATION |
| 8.0 | PAYMENT | 24.0 | TERMINATION |
| 9.0 | PRICE REDUCTION CREDIT | 25.0 | CONFIDENTIAL INFORMATION |
| 10.0 | INVENTORY ADJUSTMENTS | 26.0 | PS/1 PRINTERS |
| 11.0 | WARRANTIES | 27.0 | GENERAL |
| 12.0 | WARRANTY SERVICE | 28.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 13.0 | MAINTENANCE PARTS | | Eligible Products |
| 14.0 | ENGINEERING CHANGES | | Minimum Renewal Criteria |
| 15.0 | LICENSED PROGRAMS | | Marketing Coverage Area |
| 16.0 | SECURITY INTEREST | | Authorized Locations |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT. This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement. Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.**

Accepted by:
**Lexmark International, Inc.**

By *Ken Brooks*
_____
          Authorized Signature

*Ken Brooks*                    **5/21/93**
_____     _____
Name (Type or Print)                   Date

LX03-03 (10/22/92)

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2818

## 1.0 DEFINITIONS

Agreement means this Distributor Agreement, Bulletin(s), applicable Statement(s) of Limited Warranty and notices.

Authorized Location means any of your locations approved by Lexmark in writing for the purposes of your performance under the Agreement.

Reseller means your customer, who is not affiliated with your enterprise, who remarkets Products to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

PLA Programs means licensed programs which Lexmark designates as subject to the Lexmark Program License Agreement (PLA).

Products means machines, licensed programs, supplies and other items you can market under the Agreement.

## 2.0 CONTRACT PERIOD

The Agreement has a single 12 month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark. The Agreement can be renewed by the parties for subsequent single 12 month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date. Either party can elect not to renew the Agreement with or without cause.

## 3.0 RELATIONSHIP OF THE PARTIES

As an independent contractor, you are not Lexmark's legal representative, franchisee, or agent for any purpose.

You will not make any warranties or representations on Lexmark's behalf other than those specified in the Agreement. Neither party will assume or create any obligations on the other's behalf except as specified in the Agreement.

You will market Products to Resellers at such prices and terms and conditions as you determine. Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market products which are similar or competitive to the Products under the Agreement.

Lexmark may establish sales performance objectives for the Products which you are approved to market. Lexmark reserves the right to revise the objectives at any time. Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0 MARKETING TO RESELLERS

The Products you market under the Agreement require high quality individualized pre-sale and post-sale support. This support is necessary to achieve and maintain high End User satisfaction. Your ability to provide this support, and to select quality Resellers to provide this support are key reasons

Lexmark chose you as an authorized distributor. You, therefore, will market Products only to Resellers who can provide such support to End Users.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

You agree not to market Products to other distributors, except as agreed to by Lexmark.

## 5.0 DISTRIBUTOR RESPONSIBILITIES

You agree to:
1) acquire from Lexmark the volume of products set forth in the Minimum Renewal Criteria;
2) develop and promote demand for the Products;
3) ensure that your Resellers are trained and capable of providing pre-sale and post-sale support to their End Users;
4) ensure that End User satisfaction is maintained by your Resellers;
5) pass through to your Resellers certain marketing programs as specified by Lexmark;
6) treat your Resellers equitably and fairly and not discriminate among them with regard to Products and marketing programs;
7) ensure that the Reseller is satisfied with all your Product marketing activities, including product explanation, demonstration, and ongoing support;
8) maintain a record for each unit of Product sold or licensed. Records are not required for Supplies. A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable. You must retain the record for all Products that are laser printers or that contain a video display for at least five years after the date of sale, and shall retain records for all other Products, excluding Supplies, for the longest period of time that you customarily retain such records. You must assist Lexmark, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons;
9) ensure that your Reseller maintains the appropriate End User records to assist you or Lexmark in distributing Product information or locating a Product for safety or support reasons;
10) furnish a sales receipt to the Reseller upon delivery of the Product indicating the date of sale or license and the serial number, if any, of the Product sold or licensed. You must retain a copy of that sales receipt for one year from the date of sale or license. You must indicate on the sales receipt for the Product any non-Lexmark alterations made to the Product;
11) report your sales performance and inventory as requested by Lexmark;
12) receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise; and reference only your Authorized Location in your marketing materials or advertising;
13) advertise Products prominently in your marketing materials, advertising and catalogues;
14) maintain a sufficient inventory of Products to satisfy reasonably foreseeable Reseller demand;
15) maintain trained management, sales, and support personnel;
16) report promptly to Lexmark all suspected and actual Product problems;
17) provide a product business plan as required by Lexmark;
18) notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;
19) maintain good financial standing and provide financial information and evidence of financial security upon request;

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2819

20) maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and

21) allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts.

## 6.0 ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to the Product's availability and consistent with Lexmark's production and supply schedules.

You may cancel an order for any Product which Lexmark has not shipped to you. Lexmark may charge you a Cancellation Charge of 2% of the cancelled Product's Distributor price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a Cancellation Charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have cancelled your order for the Product before the Product's shipment.

Lexmark will charge you a Handling Charge of 5% if you refuse to accept a Product you ordered. You must prepay all transportation charges for return of the Product to Lexmark.

## 7.0 PRICES

Lexmark will specify its Distributor prices in notices. Distributor prices are F.O.B. destination, unless Lexmark specifies otherwise. Lexmark may change its Distributor prices at any time.

A Distributor price increase for a Product is effective on the date specified. However, a Distributor price increase will not apply to a Product for which Lexmark has received an order prior to the day the increase is effective, provided Lexmark accepts such order.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

A single unit price reflects the price for single units of Product acquired by End Users directly from Lexmark. A suggested retail price may also be established by Lexmark. Both are subject to change without notice. These prices are for informational purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for Products.

Lexmark may specify any additional fees and allowances in notices. Lexmark may change the fees and allowances at any time. Such changes will become effective on the date Lexmark specifies.

### Printers

Price schedules are based on your annual revenue commitment for printers and printer features.

| Schedule | Annual Revenue Commitment |
|----------|---------------------------|
| I | Less than $1 million |
| II | $1 - $3 million |
| III | Greater than $3 million |

You may be put on a different price schedule based on actual performance. Lexmark will notify you in writing prior to a change in your price schedule.

Each order is required to have a single ship-to address. Printer orders for less than $5,000 will be assessed a $30 order charge. This minimum order charge only applies to printers. Printer features are not subject to a minimum order charge, but may be aggregated with printers to meet the $5,000 printer order value.

### Typewriters

Prices are based on a single order, with an invoice value of at least $25,000 for a single shipment to a single location unless Lexmark specifies otherwise.

All typewriter models may be aggregated for purposes of determining invoice value.

Features may not be included for purposes of determining invoice value.

### Supplies

Prices are based on a single order with an invoice value of at least $500, ordered in minimum order quantities as set forth in notices, for a single shipment to a single location unless Lexmark specifies otherwise.

## 8.0 PAYMENT

You agree to pay Lexmark upon your receipt of an invoice. If you fail to pay, Lexmark may:
1) impose a finance charge on the balance due; and
2) exercise any of its rights provided in the Agreement or by law.

## 9.0 PRICE REDUCTION CREDIT

If Lexmark announces a Distributor price decrease for a Product, you may be eligible to receive a price reduction credit.

### Printers and Typewriters

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date.

In order to qualify for a price reduction credit, you must:

1) provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2) have provided such report for at least the two prior months;
3) provide access, during normal business hours, to allow Lexmark to audit applicable records and inventory.

### Printer and Typewriter Features and Supplies

The price reduction credit for features and supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior two months.

## 10.0 INVENTORY ADJUSTMENTS

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2820

may use such credit only against sums then or thereafter due Lexmark.

You must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may charge a Handling Charge of 5% multiplied by the Distributor price for any returned Product.

You may return these Products only once a month and you must accompany each shipment of returned Products with documentation specified by Lexmark.

For Products being withdrawn from marketing, guidelines or limitations on returns may be contained in the withdrawal notice.

### Printers and Typewriters

The maximum number of units of a Product you may return in a given month is equal to the number of units of inventory of such Product you reported for the previous month.

### Printer and Typewriter Features

The maximum number of features you may return is equal to the number of features shipped to you by Lexmark in the immediately preceding six months less any returns during that period.

### Supplies

Only two return shipments of supplies are allowed per contract period. The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately preceding nine months less any returns during that period.

### 11.0 WARRANTIES

Lexmark will include the applicable Statement of Limited Warranty with machines shipped. Lexmark will provide you a copy of the Statement of Limited Warranty which you are to provide to your Reseller for the End User's review at the time of sale. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End User knows how to obtain warranty service.

### 12.0 WARRANTY SERVICE

Providing warranty service is optional for Printer Distributors. Therefore, the following terms apply to Distributors of Printer Products who choose to provide warranty service, either directly or through their Resellers, and to all Distributors of Typewriter Products.

The Service Support Guide is incorporated in the Agreement by reference.

Unless Lexmark specifies otherwise, you will:
1) provide warranty service under the terms of the applicable Statement of Limited Warranty and in accordance with the Service Support Guide;
2) validate all warranty claims presented to you;

3) maintain the capability to provide warranty service according to the requirements and procedures specified in the Service Support Guide; and
4) provide a technical hotline for your Resellers during normal business hours.

Lexmark will:
1) provide, at no fee, either service training in a Lexmark designated classroom or self-education materials for the number of service personnel required;
2) provide, as part of service training, selected service materials;
3) make available to you, for a fee, a) service training for additional service personnel, and b) additional service materials; and
4) honor your valid claims for warranty reimbursement for labor (when applicable) and/or credits for parts or exchange of parts as specified in the Service Support Guide.

The performance of warranty service may be assigned to your Reseller. The Reseller must have the required number of employees, whom you have trained, to perform warranty service in accordance with procedures Lexmark identifies to you. The Reseller must agree with you to accept the responsibility to provide warranty service for the Products acquired from you. You must provide such Reseller with service updates, maintenance manuals and the necessary parts to perform warranty service.

You will develop and maintain administrative procedures for providing warranty reimbursement to your Reseller. Only you can obtain warranty reimbursement from Lexmark in accordance with the procedures Lexmark provides to you.

Your assignment of responsibility for warranty service does not relieve you of your responsibility for Reseller or End User satisfaction. The responsibility for warranty service reverts to you if the End User is not satisfied with the warranty service provided by your Reseller or if your Reseller loses your authorization to provide such warranty service. You may subsequently reassign such responsibility consistent with the provisions of this section. In such event, you are responsible to provide the End User and the new Reseller written notice of the change.

### 13.0 MAINTENANCE PARTS

Lexmark or IBM will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers or End Users for the sole purpose of maintaining their machines.

### 14.0 ENGINEERING CHANGES

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed on the machines by Lexmark on the machines. You, your Resellers or their End Users may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

### 15.0 LICENSED PROGRAMS

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement and the PLA or a third party agreement.

You agree to accept return of a PLA program, provided it is in its original, unopened package, and refund the money paid by



CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2821

a Reseller if an End User does not wish to be bound by the PLA. If the PLA permits the return of a PLA program with an accompanying specified Product, you agree to accept the return of the PLA program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in product announcement letters. In addition, certain programs, when distributed to the U.S. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software, as set forth in product announcement letters.

## 16.0 SECURITY INTEREST

Lexmark reserves and you grant a purchase money security interest in each Product, in your proceeds from the sale of each Product, and in your accounts receivable for such Product. This interest will be satisfied by payment in full.

You agree to sign an appropriate document to permit us to perfect Lexmark's purchase money security interest.

## 17.0 TITLE AND RISK OF LOSS

Title passes to you for each machine on its date of shipment from Lexmark. Title for each copy of a PLA program remains in Lexmark.

Lexmark relieves you of responsibility for all risk of loss of, or damage to, a machine during the period it is in transit from Lexmark up to its initial delivery to you.

## 18.0 TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Reseller Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Reseller Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Reseller Exemption Certificates.

## 19.0 STATUS CHANGE

To maintain your authorization, you must request Lexmark approval in writing if you anticipate a:

1) transfer of your equity ownership;
2) merger or acquisition of your enterprise or Authorized Location with or by any other entity;
3) legal name change of your enterprise;
4) relocation or closing of an Authorized Location.

## 20.0 TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor, or if you sell typewriter Products as a Lexmark Authorized Wholesaler:
1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States and Puerto Rico.

Except as provided for in this section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" or "IBM" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" or "IBM" only within the United States and Puerto Rico.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:
1) use a Lexmark, International Business Machines Corporation (IBM) or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing.   At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark or IBM trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark or IBM trademarks will terminate with the termination or expiration of the Agreement. In such event, for the affected Products, you will immediately:
1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark or IBM trademarks which are required to fulfill your warranty service or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You also recognize IBM's ownership and title to its trademarks and the goodwill attaching to them.   You agree that any goodwill which accrues because of your use of the trademarks "Lexmark" or "IBM" will become Lexmark's or IBM's property, respectively.   You agree not to contest Lexmark and IBM trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names which are confusingly similar to Lexmark or IBM trademarks or trade names.  IBM may revoke immediately, without prior notice, any permission to use IBM trademarks granted to you under the Agreement if IBM determines that you are misusing such IBM trademarks of if you place any IBM trademark on any product in violation of any law or IBM's legal rights.

## 21.0 PATENTS AND COPYRIGHTS

Lexmark will, at its expense, defend you against any claim that any machine acquired under the Agreement infringes a patent or copyright in the United States or Puerto Rico. Lexmark will pay all costs, damages and attorney's fees that a court finally awards as a result of such claim.  To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations.

You agree that if a machine in your inventory, or the operation of a machine while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the machine or to replace or modify it so that it becomes noninfringing.  However, if nei-

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2822

ther of the foregoing alternatives is available on terms which are reasonable in Lexmark's judgment, you will return the machine upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned machine. However, Lexmark may, for used machines, grant you a credit equal to such price depreciated. The depreciation shall be an equal amount per year over the life of the machines as Lexmark establishes. Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not furnished by Lexmark.

This Section states Lexmark's entire obligation to you for machines regarding infringement or the like.

## 22.0 LIMITATION OF REMEDIES

Lexmark's entire liability and your exclusive remedy for any claims are as this section provides.

Lexmark is not liable for any damages caused by performance or nonperformance of machines or programming located outside the United States and Puerto Rico. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark's entire liability and your exclusive remedy for actual damages from your use of PLA programs are as set forth in the PLA.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages. Lexmark will not be liable for any damages claimed by you based on any third party claim.

For any claim for any cause whatsoever, other than those provided for in Section 21.0 and the first paragraph of Section 23.0, Lexmark's liability for actual damages will be limited to $100,000.

## 23.0 INDEMNIFICATION

Lexmark will indemnify and hold you harmless from all claims, including reasonable attorney's fees, (but not including lost profits, lost savings, incidental damages, or other consequential damages), for bodily injury or damage to real property or tangible personal property arising from any acts or omissions for which Lexmark is legally liable.

You will indemnify and hold Lexmark harmless from all claims, including reasonable attorney's fees, by any party resulting directly or indirectly from any acts or omissions by you.

## 24.0 TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepre-

sentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods (that is, goods bearing the trademark, trade name or trade dress of IBM or Lexmark which have a source other than IBM or Lexmark.)

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, return shipping charges will be paid by you. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, or specific Resellers.

## 25.0 CONFIDENTIAL INFORMATION

1) Any information concerning IBM or Lexmark customers furnished to you by IBM or Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.
2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark all materials, of any kind, containing such confidential information.
3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0 PS/1 PRINTERS

The following additional terms apply to PS/1 Printers.
1) You are permitted to market PS/1 Printers only in the contiguous 48 states. If an End User intends to transport the PS/1 Printer outside the 48 states, your Reseller must notify such End User that there will not be access to telephone and on-line services for the PS/1 Printer.
2) The "Orders and Cancellations" section is modified for PS/1 Printers by the following. For PS/1 Printers, you may not 1) defer or cancel any purchase order, accepted by Lexmark, whose applicable shipment dates Lexmark confirmed or 2) refuse any shipments made by Lexmark related to such order. In addition, you may not cancel parts of such order. If, however, Lexmark notifies you that it will ship such order later than the date, or that the quantity will be less than you request, you may modify, defer or cancel such order. You may cancel purchase orders, or parts thereof, not confirmed by Lexmark. If you do not cancel non-confirmed orders, Lexmark will hold them for possible future acceptance, and you agree to provide Lexmark with revised Requested Ship Dates for non-cancelled orders. If Lexmark, without your approval ships such delayed PS/1 Printers, you may return them at Lexmark's expense within ten days of receipt from Lexmark;



CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2823

3) For the PS/1 Printer, Distributor Prices are F.O.B. the Lexmark shipping location(s), as determined by Lexmark;
4) For the PS/1 Printer, during the time of transit from the Lexmark shipping location to you, all risks of loss or damage shall be yours;
5) PS/1 Printers do not qualify for Inventory Adjustment. You may not return PS/1 Printers to Lexmark.

## 27.0 GENERAL

Lexmark's waiver of any instance of your noncompliance with the Agreement will not be deemed a waiver of any future non-compliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent.

Lexmark is not responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to

the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more that two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of New York will govern the Agreement.

## 28.0 DISTRIBUTOR SPECIFIC INFORMATION

### Eligible Products

You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices. Specific certification may also be required for certain Products.

| Supplies | Typewriters | Printers | Other (as listed) |
|----------|-------------|----------|-------------------|
| NO | NO | YES | NO |

### Minimum Renewal Criteria

Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC designates the minimum level of sales performance expected of you.

| Product | Minimum Renewal Criteria |
|---------|--------------------------|
| N/A | N/A |

### Marketing Coverage Area

Your approved marketing coverage area(s), listed by Authorized Location, by county and state, is:

N/A

### Authorized Locations

All Authorized Locations must be approved in writing by Lexmark and listed below or on an attachment to this Agreement. Any change in the location or any significant change in the characteristics of your Authorized Locations must be approved by Lexmark.



CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2824





CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2825

Lexmark International
District Sales Manager
6301 N. W. 5th Way
Ft. Lauderdale, FL  33309
(305) 938-3810

April 1, 1993



Dear ████:

Thank you for taking the time to review the Lexmark Authorized
Distributor Agreement and documenting your feed-back/requests
for modifications.  I have reviewed your requests with our legal
counsel and this letter will act as an amendment to your agreement
with Lexmark.  The following are the changes to your agreement with
us:

**Section 7.0 Prices**

-1st paragraph to read:  Lexmark will specify its Distributor prices in
notices.  Distributor prices are F.O.B. destination except PS/1
printers, which are F.O.B. Lexington, KY.  Lexmark may change its
Distributor prices as set forth on page 1.

-4th paragraph to read:  A single unit price reflects the price single
units of Product acquired by End-Users directly from Lexmark.  A
suggested retail price may also be established by Lexmark.  These prices
are for informational purposes only and shall not limit in any way your
ability to set your own prices, charges and terms and conditions for
Products.  All price changes will be specified in notices which may be
an electronic file.

-Entire section regarding typewriters is deleted.

**Section 9.0 Price Reduction Credit**

-All references to Typewriters are deleted.

**Section 15.0 Licensed Programs**

-2nd paragraph has been deleted

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2826

**Section 16.0 Security Interest**

-Entire section is deleted.

**Section 18.0 Taxes**

-1st sentence to read:  You agree to pay amounts equal to any taxes or use taxes resulting from the Agreement or any activities under the Agreement.

**Section 19.0 Status Change**

-First sentence to read as follows: "You must notify Lexmark in writing if you anticipate a:"

**Section 21.0 Patents and Copyrights**

-Second sentence to read as follows:  "Lexmark will indemnify and hold you harmless from all costs, damages and attorney's fees that a court finally awards as a result of such claim."

-Sixth sentence to read as follows:  "Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of machines or their combination, operation or use with apparatus, data or programs not reasonably intended to be used with the machines."

**Section 24.0 Termination**

-3rd Paragraph, 1st sentence to read:  In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant termination with only 30 days notice.

-Sixth paragraph, first sentence to read as follows:  "If you or Lexmark elects to terminate the Agreement, Lexmark will repurchase some or all of the products in your inventory at the actual price paid (minus any applicable discounts).

**Section 25.0 Confidential Information**

-Entire section deleted and replaced by the following sentence: " No information will be given or received in confidence by either party unless it is covered by a separate written agreement."

**Section 27.0 General**

-Seventh paragraph has been deleted in its entirety.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2827

Additional items to be added to the Agreement:

- ▮▮▮▮▮▮ shall have the ability to return for credit products which have boxes that are damaged upon receipt.  An offsetting purchase order will be placed for all bad box returns.  In addition, Lexmark will supply to ▮▮▮▮▮▮ at no charge, any and all missing material(s)."

- ▮▮▮▮▮▮ shall have the right to return any such defective products that are returned to ▮▮▮▮▮▮ from its customers or end-users within (30) thirty days of the products initial delivery date to the end-user."

Please sign and date both copies of this Letter Amendment and both copies of the Authorized Distributor Agreement and return both to me. In turn I will forward an executed copy to you.

Sincerely,

*Ken Brooks*

K. M. Brooks

Accepted by:
Lexmark International, Inc.

By *Ken Brooks*
    Authorized Signature
*Ken Brooks*          5/21/93
Name (type or print)    Date

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2828

December 16, 1996

LEXMARK INTERNATIONAL
740 NEW CIRCLE RD. NW
BLDG. 046 BASEMENT
LEXINGTON, KY 40511

*Sales tax exemption certificates*

Dear JIM ROBERTS:

████████████████████ has incorporated a wholly-owned subsidiary, ████████
██████████████████ The business purpose of ████████ s to act as the
purchasing subsidiary for the ████████████████ will begin purchasing product
from your company effective January 1,1997.

████████ will purchase product from your company and immediately resell the product to ████
████ will in turn sell the products to it's third party customers for resale.

████████ has nexus for sales tax purposes only in the states of Florida and California. Enclosed is
a copy of ████████ Florida sales tax certificate and a Uniform Sales & Use Tax Certificate -
Multijurisdiction with ████████ California sales tax registration number.

We will also be asking your company to ship product to the following states: Indiana, Texas,
New Jersey, and Georgia. These are locations where you already have on file ████ sales tax
exemption certificate. Additionally, we have enclosed the required documentation you will need
to properly exempt these sales for ████████

Please forward this information to the appropriate party in your organization.
Should you have any questions or desire further information, please feel free to call me at ████
████████

We certainly appreciate your assistance with this matter.

Sincerely,

Enclosures

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2829

# LEXMARK

October 30, 1997

Lexmark International, Inc.
6301 NW 5th Way
3rd Floor
Ft. Lauderdale, Florida 33309

███████████

### LETTER AMENDMENT TO LEXMARK DEALER AGREEMENT
### (for 220 volt printers)

**Reference:** Special Bid Request B97J045

The terms and conditions set forth below modify your dealer agreement with Lexmark. Any terms and conditions not amended remain in full force and effect.

Lexmark approves the special bid for 220 volt machines to ████████ for resale to for consolidation with ███████████ for consolidation in a ████████ and shipment to European countries.

| Part Number | Description | Sch III |
|---|---|---|
| 43J0007 | Optra S 1650n 220 Volt LaserPrinter | |

Power cords for the Lexmark printers are to ordered separately, at no charge, to meet the specific country requirements.

P/N 1339520  PowerCord

**TERMS AND CONDITIONS:**

1. Lexmark may withdraw from marketing the above listed product and may substitute replacement products at a minimum price of 10% more than the dealer price of the comparable 110 volt version.

2. Follow-on products announced during the term of the contract will be at a minimum price of 10% more than the dealer price of the comparable 110 volt version.

3. Special or temporary dealer price reductions do not apply.

4. No dealer programs or promotions apply.

5. Lexmark does not provide warranty service for machines that are exported. Lexmark will not provide warranty parts and labor reimbursement for these machines.

6. The standard logo can remain on the machine.

7. The 220 volt printers are not U.S. standard machines and are not certified by the United States Government for sale or use in the in the United States.

8. ████████ may resell these products only to ████████ who agrees to combine them with their systems as described above, and to export all the 220 volt printers and to comply with all United States export laws and regulations.

9. Upon demand, ████████ with cooperation from ████████ shall provide proof of exportation of 220 volt machines to Lexmark. Such verification may include, but not be limited to, copies of sales contracts with ████████ bills of sale, bills of lading and airway bills.

USA
OOO
*U.S. Used of States Olympic Committee, on a Proud Sponsor of U.S.A. Personal Printers and Supplies*

10. Lexmark will ship to ███████ in the U.S. pursuant to the terms of the Lexmark/███████ dealer agreement. Lexmark has no responsibility for duty, freight, insurance, or taxes on machines that are exported.

11. ███████ must inform ███████ that warranty service will not be provided for these products when they are installed outside the United States.

14. The price stated herein is guaranteed for orders shipped within 12 months from the date this Letter Amendment is signed.

15. Single "ship to" location.

16. Standard Lexmark dealer agreement terms and conditions apply unless modified by this letter.

ACCEPTED BY:

    LEXMARK INTERNATIONAL, INC.



    _____
    AUTHORIZED SIGNATURE

    GIL COVEY
    _____
    NAME (TYPE OR PRINT)

    11 / 3 / 92
    _____
      DATE

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2831

Lexmark International
6301 NW 6th Way    Suite 3500
Ft. Lauderdale, FL 33309
954-938-3813 phone    954-938-3838 fax

Gil Covey
Distributor Account Manager
gcovey@lexmark.com

May 22, 2003



Dear

We would like to thank you for your continued interest as an Authorized Distributor in Lexmark products. Due to the changing business environment within the computer products distribution space Lexmark will alter its payment terms effective July 1st 2003. Lexmark will continue to offer you a prompt pay discount for settlement in 15 days, however if you choose not to take advantage of the prompt pay discount settlement will now be required 30 days from invoice date.

Remittances are to be mailed to arrive within 15 days from invoice date to receive the prompt pay discount and remittances not taking the prompt pay discount must be mailed to arrive within 30 days from invoice date to the following:

Lexmark International, Inc.
P.O. Box 98612
Chicago, IL 60693-8612

Overnight courier checks are to be sent to the following:
Bank of America
98612 Collections Center Drive
Chicago, IL 60693

As an alternative, if you remit via wire transfer, please direct to the following:



Sincerely,



CC: Joe Audy,
    Grace Eckert
    Ron Peters
    Jennifer Wright

    Passion for printing ideas.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2832

# MASTER LEXMARK PROMOTION AGREEMENT

RECEIVED
MAR 15 2012
Contracts
Approved

Name and Address of Reseller

Reference Reseller
Agreement No:
**L500560**

**Lexmark Office Address**
**740 New Circle Road**
**Lexington, KY 41031**

Distributor Customer No

This Master Lexmark Promotion Agreement ("Agreement") having an Effective Date of March 1, 2012 amends the terms and conditions of the Lexmark Authorized Distributor Agreement, executed by and between the parties on or about May 17, 1993 ( "Distributor Agreement"). In the event of a conflict between the terms and conditions of this Agreement and the Distributor Agreement, the terms of this Agreement will prevail.

The parties expect to add Product Promotion Offers (hereafter "Offers"), which shall become attachments to this Agreement and shall be governed by and become part of this Agreement. Lexmark will issue Offers periodically and ▮▮▮▮▮▮ will be deemed to have accepted the Offer, unless ▮▮▮▮▮ provides written notice to Lexmark within ten business days of receipt of the Offer indicating that ▮▮▮▮ does not accept the Offer. Each Offer will be identified with a unique promotional number and will identify terms for certain identified products that shall apply only to an identified Reseller(s) for an identified period of time (hereafter the "Offer Effective Dates)".

If other distributor programs, promotions or price reductions are announced during the term of this Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will not receive the benefit of both the rebate under this Agreement and such later-announced program, promotion or price reduction.

## TERM

This Agreement shall remain in effect, until the earlier of A) the Agreement is terminated by a party for any reason upon thirty (30) days written notice to the other party, and B) the Distributor Agreement is terminated.

Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2833

A termination of this Agreement shall not result in the termination of the Distributor Agreement, but a termination of the Distributor Agreement shall automatically terminate this Agreement and any Offers that are in effect at the time the Distributor Agreement is terminated.

## ADDITIONAL TERMS AND CONDITIONS

For product(s) listed in an Offer when such product is acquired from Lexmark, under this Agreement by ▮▮▮▮▮ for resale to a Reselle▮▮▮▮▮may be eligible for a rebate as specified in the Offer, subject to the following terms and conditions:

1. Offers cannot be combined with any special bid pricing or other promotional offer.

2. Promotions are stackable with the Education Program and Edge Program discounts.

3. Proof of Lexmark direct purchase of eligible product (product order, invoice number, part number and quantity).

4. All rebates are conditioned on ▮▮▮▮▮ providing an adequate proof of sale report showing sales out of eligible product (identified in the Offer) during the promotional period (also identified in the Offer) that is identified by the unique Offer promotion number.

Requests for rebates not received by the deadline specified in the Offer will not be accepted and any claims for money due there under are expressly waived.

The rebate will be in the form of a billing credit to the above-referenced Distributor Customer Number.

If Lexmark lowers the price of an eligible product during a promotion period, the rebate will be netted against any such decrease. (A $10 price decrease would reduce a rebate of $50 for a specific product to $40.)

5. Each party agrees that the terms and conditions of this Agreement (including any subsequent Offers) are confidential and will not be disclosed to third parties without the consent of the non-disclosing party, except to a third party financial institution for financing purposes. This paragraph shall survive termination of this Agreement.

Except as modified herein, all other terms and conditions of the Distributor Agreement remain in full force and effect.

▮▮▮▮▮ Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2834

Accepted by:

*LEXMARK INTERNATIONAL, INC.*

By: _____
    Authorized Signature

 GIL COVEY  3-15-12
    Name (type/print) Date

By: _____
    Authorized Signature

    _____
    Name (type/print) Date

▮ Master Lexmark Promotion Agreement February 27, 2012

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2835

# DISTRIBUTOR CONTRACT 9

**Lexmark International, Inc.**

## AUTHORIZED DISTRIBUTOR AGREEMENT

Name and Address of Distributor:

Agreement No.:

Contract Commencement Date:    1/1/2011

Lexmark Office No.:

Lexmark Office Address:
Lexmark International, Inc.
300 Commerce, Suite 150
Irvine, CA 92602

Thank you for selecting Lexmark as a supplier of Products, services, and support.   Our goal is to be the best in the industry.   If at any time you are not completely satisfied, please let us know.

This agreement authorizes you to purchase Products from Lexmark International, Inc., (Lexmark) under its terms for marketing to Resellers and your internal use only in the United States.  Lexmark may issue Bulletins under this Agreement that change the terms of this Agreement.  Any Bulletins will become effective on the date Lexmark specifies unless you notify us in writing within 30 days of your receipt of the Bulletin that you do not accept it.

Lexmark may issue administrative, technical and procedural information, announcements, promotions, programs, product and pricing letters, product withdrawal letters, and other kinds of notices in written and electronic form from time to time.  All such notices are effective on the date Lexmark specifies.

### Table of Contents

| | | | | |
|---|---|---|---|---|
| 1.0 | DEFINITIONS | | 19.0 | STATUS CHANGE |
| 2.0 | CONTRACT PERIOD | | 20.0 | TRADEMARKS AND TRADE NAMES |
| 3.0 | RELATIONSHIP OF THE PARTIES | | 21.0 | PATENTS AND COPYRIGHTS |
| 4.0 | MARKETING TO END USERS | | 22.0 | LIMITATION OF REMEDIES |
| 5.0 | DISTRIBUTOR RESPONSIBILITIES | | 23.0 | INDEMNIFICATION |
| 6.0 | ORDERS AND CANCELLATIONS | | 24.0 | TERMINATION |
| 7.0 | PRICES | | 25.0 | CONFIDENTIAL INFORMATION |
| 8.0 | PAYMENT | | 26.0 | GENERAL |
| 9.0 | PRICE REDUCTION CREDIT | | 27.0 | DISTRIBUTOR SPECIFIC INFORMATION |
| 10.0 | PRODUCT RETURNS | | | Eligible Products |
| 11.0 | WARRANTIES | | | Minimum Renewal Criteria |
| 12.0 | WARRANTY SERVICE | | | Marketing Coverage Area |
| 13.0 | MAINTENANCE PARTS | | | Authorized Printer Locations |
| 14.0 | ENGINEERING CHANGES | | | Printer Drop Ship Policy |
| 15.0 | LICENSED PROGRAMS | | | |
| 16.0 | SECURITY INTEREST | | | |
| 17.0 | TITLE AND RIGHTS, RISKS AND REWARDS OF OWNERSHIP | | | |
| 18.0 | TAXES | | | |

**PAGES 2 THROUGH 8 ARE ALSO PART OF THIS AGREEMENT.** This Agreement and Bulletins, the Statements of Limited Warranty, and notices are the complete agreement between us, and replace any prior oral or written communications between us. By signing below, each of us agrees to the terms of this Agreement.  Once signed, any reproduction of this Agreement made by reliable means (for example, photocopy or facsimile) is considered an original.

Accepted by:
**Lexmark International, Inc.**

Accepted by:

BY *Michael T. Johnson*    By
_____        _____
Authorized Signature

*MICHAEL T. JOHNSON*    *6/1/11*
_____        _____
Name  (Type or Print)    Date        Name  (Type or Print)    Date

3394v3394v92

1/20/10    Page 1 of 8

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2836

## 1.0  DEFINITIONS

Agreement means this Distributor Agreement, Bulletin(s), applicable Statements) of Limited Warranty and notices.

Authorized Location means any of your business locations approved by Lexmark in writing for the purposes of your performance under the Agreement.  The list of business locations attached hereto as Exhibit A have been approved by Lexmark .

Reseller means your customer, who is either not affiliated with your enterprise, or who could be affiliated if company owned, who remarkets Products to End Users.

End User means a party who acquires the Products for its own use and not for remarketing.

Products means those items identified in section 27.0 which you can market under this Agreement.

## 2.0  CONTRACT PERIOD

The Agreement has a single 12-month contract period which, unless noted otherwise on page 1, commences on the first day of the month following the date of your signature on page 1, provided it is accepted by Lexmark.  The Agreement can be renewed by the parties for subsequent single 12-month contract periods. Unless Lexmark notifies you otherwise, the renewal of the Agreement shall automatically occur annually unless either party notifies the other of its desire not to renew at least 90 days prior to the contract period expiration date.  Either party can elect not to renew the Agreement with or without cause.

## 3.0  RELATIONSHIP OF THE PARTIES

It is understood and agreed the Manufacturer and Distributor are independent contractors and each is engaged in the operation of its own business and neither will be considered the agent of the other for any purpose whatsoever. Nothing contained in the agreement will be construed to establish a relationship that would allow either party to make representations or warranties on behalf of the other except as expressly set forth herein.

You will market Products to Resellers at such prices and terms and conditions as you determine.  Such terms and conditions must not be in conflict with your obligations in the Agreement.

Lexmark reserves the right to market anywhere, including your geographic area, products which are the same as or similar to the Products under the Agreement either directly or through other remarketers.

You reserve the right to market Products, which are similar or competitive to the Products under the Agreement.

Lexmark may establish annual sales performance objectives, which modify the Minimum Renewal Criteria, for the Products you are approved to market.  Lexmark reserves the right to revise the objectives at any time.  Lexmark's assessment of your overall compliance with the provisions of the Agreement will include a review of your attainment of these sales performance objectives.

Lexmark may conduct reviews including surveys of your Resellers to evaluate your performance and compliance with the provisions of the Agreement.

## 4.0  MARKETING TO RESELLERS

The Products you market under the Agreement require your high quality individualized pre-sale and post-sale support.  This support is necessary to achieve and maintain high Reseller and End User satisfaction.  Your ability to provide this support, and to select quality Resellers to provide this support are key reasons Lexmark selected you as an authorized distributor.  You, therefore, will market Products only to Resellers who can provide such support to End-Users.

At Lexmark's request, you will provide written identification of your Resellers. Lexmark may inform you that a specific Reseller is not qualified to market Lexmark Products. In such event, you are not authorized to market Products to the Reseller.

In order to better ensure End User satisfaction through your Resellers, , Lexmark retains the option of issuing or not issuing Letters of Supply (or guarantees of supply) to you when you are requested to provide a Letter of Supply by a Reseller responding to any particular state, local or federal government procurement request. Likewise, without Lexmark's written consent, you may not issue a Letter of Supply relating to Lexmark Products to any Reseller in connection with any government procurement.

Your agree not to market Lexmark Products to other distributors, except as agreed to by Lexmark.

## 5.0  DISTRIBUTOR RESPONSIBILITIES

You agree to:
1.    maintain a reasonable inventory of Products in order to satisfy anticipated sales thereof;
2.    develop and promote demand for the Products;
3.    ensure that you will accept any returns of hardware within thirty (30) days of the purchase date, and that you will accept any returns of supplies within the warranty period specified in the applicable Lexmark Limited Warranty from your Resellers.
4.    pass through to your Resellers certain marketing programs as specified by Lexmark;
5.    treat all Resellers that participate in a Lexmark-sponsored program equitably and fairly in accordance with the terms of that program;
6.    maintain a record for each unit of Product sold or licensed. Records are not required for Supplies.  A record will include the name and address of the Reseller, the date of the sale or license, the Product Type/Model sold or licensed, and the Product's serial number, if applicable You must retain the record for all Products that are laser printers or that contain a video display for at least four years after the date of sale, and shall retain records for all other Products, excluding Supplies, for at least four years after the date of sale.  You must assist Lexmark, to the extent reasonably practical, upon Lexmark's request, in tracing a Product to a Reseller to distribute Product information or locate a Product for safety or support reasons; provide any assistance reasonably requested by Lexmark to identify Resellers that may be affected by a product safety issue, provided that such assistance shall be subject to any confidentiality obligations between you and the Resellers; and provided further that Lexmark acknowledges and agrees that

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2837

you only retain Reseller sales information for 12 months after a sale;

7.   Report your sales performance and inventory as requested by Lexmark. You will submit reports to Lexmark by the 5th workday of every month. These reports will detail your on hand inventory and monthly sales performance. Updated reporting forms will be provided to you monthly, identifying the pertinent Lexmark products to be reported. Lexmark may reasonably change the reporting requirements from time to time, through Lexmark announcements.
8.   receive and inventory Products only at your Authorized Location unless Lexmark specifies otherwise;
9.   advertise Products prominently (as determined by you in your reasonable discretion) in your marketing materials, advertising and catalogues;
10.  maintain trained management, sales, and support personnel;
11.  report promptly to Lexmark all written reports received by you of suspected and actual Product problems;
12.  provide a Product business plan as required by Lexmark;
13.  notify Lexmark of any discrepancies between the Lexmark shipping manifest and the Products received;;
14.  maintain sufficient liability insurance to protect Lexmark from all Reseller or End User claims for personal injury arising out of any acts and/or omissions by you or your employees or representatives. Upon request from Lexmark, you are required to show proof of such insurance; and
15.  allow Lexmark or its appointed auditor to audit, during normal business hours, the above required records and receipts; provided, however, that audits shall only be permitted if Lexmark has reason to believe that you are in default of your obligations under this agreement, or as part of a regular review process and provided further that any audit shall require reasonable prior notice, but in no event more than ten (10) days. Any individuals involved in such an audit shall keep confidential all information disclosed during the course of such audit and shall sign an appropriate confidentiality and non-disclosure agreement. Any audit must be conducted in a manner so as not to unreasonably interfere with the operation of your business.

## 6.0   ORDERS AND CANCELLATIONS

Lexmark will describe specific ordering procedures and forecast requirements, if any, in writing.

Lexmark will fill your orders for Products and meet your request for shipment dates subject to credit approval and Product availability and consistent with Lexmark's production and supply schedules.

Lexmark will insure for your benefit the order for risk of loss or damage during the period it is in transit from Lexmark or its agent up to its initial delivery to you or your designated ship-to point.

You may cancel an order for any Product, which Lexmark has not shipped to you. Lexmark may charge you a Cancellation charge of 2% of the canceled Product's Distributor price if the cancellation was requested by you after the Product was released for shipment by Lexmark. A Product is generally released for shipment one or two days before it ships. However, you will not be liable for a cancellation charge if Lexmark has postponed shipment of the Product for more than 15 days from its estimated shipment date, and you have

canceled your order for the Product before the Product's shipment.

Each order is required to have a single ship-to-address.

## 7.0   PRICES

Lexmark will specify its Distributor prices in notices and an electronic file. Distributor prices are F.O.B. destination Lexmark may change its Distributor prices at any time.   Lexmark specified prices shall apply in spite of any different pricing contained in Distributor purchase orders, even if such purchase orders are accepted and Product is shipped.

A Distributor price increase for a Lexmark Product is effective on the date specified. Lexmark will announce a price increase a minimum of 30 days prior to the effective date of the increase. A price increase will not apply to a Product for which Lexmark has accepted an order prior to the effective date, provided the order specifies a requested ship date within the time frame stated in the price increase notice.

A Distributor price decrease is effective on the date specified and will apply to Products shipped on or after the effective date of the decrease.

The MSRP is Lexmark's suggested resale price for product acquired by End Users directly from Lexmark and is subject to change without notice. This price is for information purposes only and shall not limit in any way your ability to set your own prices, charges and terms and conditions for products.

### Printers
Your price schedule will be based on your annual revenue attainment for printers, features and options.

All printer orders must meet the $5,000 minimum.

Each order for printers and printer features for shipment to a single Authorized Location must be for an amount of at least $5,000.

### Supplies
Distributor Prices and minimum order quantities are set forth in notices. Each supply order for shipment to a single Authorized Location must be for an amount of at least $4,000.

## 8.0   PAYMENT

You agree to pay Lexmark within thirty (30) days from the date of invoice, unless otherwise specified and agreed to in an executed annual supplier allowance program. If you fail to pay, Lexmark may:

   1)  exercise any of its rights provided in the Agreement or by law; and/or
   2)  stop shipment of your orders if your account is past due.

## 9.0   PRICE REDUCTION CREDIT

If Lexmark announces a Distributor price decrease for a Product, you may be eligible to receive a price reduction credit.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2838

**Printer Products**

The price reduction credit equals the credit amount per Product, as specified by Lexmark, multiplied by your existing inventory and Product in transit to you from Lexmark on the effective date specified in the notice.

In order to qualify for a price reduction credit, you must:

1) provide a report of your inventory of the Product in a format and time frame specified by Lexmark;
2) provide access, during normal business hours, to allow Lexmark to audit applicable records and inventory. Any individuals involved in such an audit shall keep confidential all information disclosed during the course of such audit and shall sign an appropriate form of confidentiality and non-disclosure agreement. Any audit must be conducted in a manner so as not to unreasonably interfere with the operation of your business.

**Supplies**

The price reduction credit for supplies equals the credit amount per item, as specified by Lexmark, multiplied by the quantity shipped directly from Lexmark to you (minus returns from you) in the prior sixty (60) days.

**10.0 PRODUCT RETURNS**

**General Terms - Printers, Printer Features and Supplies**

During a contract period, you may return for credit selected Products which you obtained directly from Lexmark. Lexmark will specify which Products are returnable in notices or an electronic file. Lexmark may issue notices clarifying Product return policies that shall be effective on the date specified.

Lexmark may place limits on the amount of Product that can be returned. All Product must be returned to Lexmark within thirty (30) days after receiving authorization, to ensure proper credit.

Upon receipt and acceptance of a returned Product, Lexmark will issue you a Product credit as determined by Lexmark. You may use such credit only against sums then or thereafter due Lexmark.

For non-defective Products, you must return all Products to Lexmark, transportation pre-paid, in the original shipping containers which must not have been opened, damaged, marked or labeled. The Products must be in marketable condition as determined by Lexmark. For inkjet printers, marketable condition will include the presence of essential components as defined by Lexmark. Lexmark may impose a non-compliance fee to the reseller if these essential components are not returned with the inkjet printer.

Product returned without Lexmark's authorization and the appropriate documentation will be returned to you at your expense.

Any prior passage to you of title to Products will be deemed void from its inception when the returned Products are accepted by Lexmark. You warrant and represent that the returned Products are free of any outstanding liens, security interests or other third party encumbrances.

Lexmark may issue notices clarifying Product return policies, which shall be effective on the date specified. For Products being withdrawn from marketing, guidelines of limitations on returns may be contained in the withdrawal notice.

**Claims**

For all claims that there has been a short ship of ordered Products (not all ordered Products were received) or all of the ordered Products were not received (mis-ship), you must submit a written claim to Lexmark within thirty (30) days of the scheduled/anticipated delivery date of the ordered Products relating to such claim. Any claims after the above referenced thirty (30) days are expressly waived and Lexmark shall not be liable to you for any such claims (regardless of when you learned or could have learned of any of the facts surrounding the transaction or claim).

**Printer Products only - Stock Balance/Inventory Adjustment**

One return shipment of any currently-marketed printer Product for stock balancing is allowed per month.

Up to 5% of the prior quarter's purchases (rolling quarter) may be returned per month without a restocking charge.

Discontinued printer Products may be returned under the stock balancing returns provisions, as long as such return is within the dates specified by the discontinuance notice.

Additional returns above the stock balancing monthly 5% maximum are allowed up to a maximum return of 15% of prior quarter's purchases. These additional returns will be treated as inventory adjustments and charged a 5% restocking charge.

**Printer Products only - Defective Product**

Lexmark will replace printer Products or provide a credit to you for any currently marketed Lexmark printer Product found to be defective by you prior to the sale to the Reseller. In addition, Lexmark will provide credit to you for any Lexmark printer Product returned defective by an End User within sixty (60) days of its purchase from your reseller.

The return of defective inkjet products must include the essential printer components as defined by Lexmark. Lexmark may impose a non-compliance fee to the reseller if these essential components are not returned with the inkjet printer.

Defective discontinued printer Products to be eligible for credit must be returned to Lexmark within the dates specified by the discontinuance notice.

**Supplies – Stock Balance/Inventory Adjustment**

Only one return shipment of supplies is allowed per calendar quarter (Jan to Mar; Apr to June; July to Sept; Oct to Dec) per Lexmark Authorized Reseller Location.

You may return up to two percent (2%) of the prior calendar quarter net revenue purchased without a handling charge. If you return more than two percent (2%) and less than five percent (5%) you will be charged a handling charge of ten percent (10%). Any return greater than five percent (5%) will be assessed a twenty percent (20%) handling charge.

The maximum quantity of supplies you may return is equal to the quantity shipped to you by Lexmark in the immediately

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2839

preceding twelve months less any returns during that period.

Any additional supplies returns in a calendar quarter will automatically be assessed a twenty percent (20%) handling charge.

### Supplies – Defective Product

Lexmark will replace supplies Products or provide a credit to you for any found to be defective by you prior to the sale to the reseller. In addition, Lexmark will provide credit to you for any Lexmark supplies product returned defective by an End User within the warranty period specified by Lexmark in the Statement of Limited Warranty.

Specific warranty process procedures are covered in separate warranty announcement letters.

## 11.0 WARRANTIES

Lexmark will include the applicable Statement of Limited Warranty with machines shipped and such will be inside the package. Lexmark will provide you a copy of the Statement of Limited Warranty, which you are to provide to your Reseller for the End User at the time of sale to the End User. Lexmark may revise a Statement of Limited Warranty.

The warranty period will start on the day the End User purchases the Product. Your Reseller must advise the End User of this start date, and ensure that the End user knows how to obtain warranty service.

Lexmark represents and warrants to Distributor that: (a) Lexmark has and will convey to Distributor good and marketable title to all Products, free and clear of any liens, claims or encumbrances; (b) all Products will be new, OEM items and will be merchantable, free of defects in materials, workmanship, design or manufacture; and (c) all Products will conform to published specifications.

Lexmark represents and warrants to Distributor that all Products have been or will be produced, marked, labeled, shipped and invoiced in compliance with the applicable requirements of federal, state and local laws, regulations, ordinances and administrative orders and rules of the United States, its territories and all other countries in which Products are produced or delivered by Lexmark, including those imposed by OSHA, DOT and other environmental, health, safety or transportation governmental authorities or regulatory agencies.

Lexmark represents and warrants to Distributor that all claims made by Lexmark in any packaging, labeling, advertising, or other consumer material in connection with any Products will be true and will have been substantiated at the time that such claims are made. Lexmark agrees to review and assume responsibility for the accuracy of all product information contained in Distributor's catalogs, flyers and other sales and marketing materials provided to it by Distributor, provided that Distributor submits proofs to Lexmark for approval prior to publication, and provided further that Distributor makes any changes requested by Lexmark.

Lexmark authorizes Distributor to pass through the foregoing warranties, and any other applicable Lexmark warranties relating to or accompanying Products to Distributor's customers. All pass-through warranty recipients will be entitled to assert and

enforce such warranties directly against Lexmark in accordance with their respective terms.

## 12.0 WARRANTY SERVICE

### Printer/Printer features

Providing printer warranty service is optional for printer Distributors. If you desire to provide printer warranty service and receive warranty reimbursement from Lexmark, you must first sign a Lexmark Authorized Servicer Agreement and comply with its terms.

1) Unless Lexmark specifies otherwise, you will provide supplies warranty service in the form of supplies product replacement during the warranty period set forth under the terms of the applicable Statement of Limited Warranty; and

2) validate all warranty claims presented to you by confirming supplies product is a genuine Lexmark supply..

## 13.0 MAINTENANCE PARTS

Lexmark will sell you maintenance parts only for providing warranty and maintenance service or for sale to Resellers for the sole purpose of maintaining their machines.

## 14.0 ENGINEERING CHANGES

During the Warranty Period, any engineering changes determined applicable by Lexmark will be controlled by Lexmark and installed as specified by Lexmark on the machines. You, your Reseller, or their End User may, by providing notice subject to written confirmation by Lexmark, elect to have only mandatory changes, as determined by Lexmark, installed.

Lexmark may either install a mandatory change at your location without charge or provide you, at no charge, parts and instructions for your installation of such changes on all machines in your inventory or on machines owned by your Resellers or their End Users. If you install the changes, Lexmark will reimburse you for your labor at a rate established by Lexmark.

## 15.0 LICENSED PROGRAMS

Licensed programs may be made available, as determined by Lexmark, to you to market under the provisions of the Agreement, and any accompanying End User License Agreement or a third party agreement.

You agree to accept return of a licensed program, provided it is in its original, unopened package, and refund the money paid by an End User who does not wish to be bound by the license. If the license permits the return of a program with an

CONFIDENTIAL - OUTSIDE COUNSEL ONLY   A2840

accompanying specified Product, you agree to accept the return of the program with the other Product for refund.

Certain programs may be distributed by you only along with the Products with which they are packaged, as set forth in Product announcement letters. In addition, certain programs, as identified in their accompanying End User license agreement, when distributed to the U.S. or other governments, must be identified as subject to government regulations for software protection of privately developed commercial software.

## 16.0   ~~SECURITY       INTEREST~~Intentionally Omitted~~Intentionally Left Blank~~

~~Distributor shall have the obligation to maintain good financial standing and shall, upon request from Lexmark, provide audited financials, which evidence such good financial standing. If audited financials are unavailable, Distributor shall provide to Lexmark a written guarantee of its payment obligations from United Stationers Inc.~~

## 17.0  TITLE AND RIGHTS, RISKS AND REWARDS OF OWNERSHIP

Title and all rights, risks and rewards of ownership transfer to you upon shipment of the product from Lexmark, or its agent to your facility.  Title for each copy of a licensed program remains with Lexmark.

Lexmark will insure, for your benefit, the order for risk of loss or damage during the period it is in transit from Lexmark or its agent up to its initial delivery to you.

## 18.0   TAXES

You agree to pay amounts equal to any taxes resulting from the Agreement or any activities under the Agreement. Such taxes do not include taxes based on Lexmark's net income. You are responsible to bear any personal property taxes assessable on Products on or after delivery to the carrier at the Lexmark ship-from location.

You agree to provide Lexmark with a valid Distributor (Reseller) Exemption Certificate for each taxing jurisdiction to which Products acquired by you for resale will be shipped by Lexmark under the Agreement. If such Certificate(s) is not provided to Lexmark prior to shipment, Lexmark will charge, and you will be required to pay, all applicable state and local taxes.

You agree to notify Lexmark promptly of the revocation or modification of any Distributor (Reseller) Exemption Certificate so provided. You further agree to indemnify and hold Lexmark harmless from any claims and assessments against Lexmark resulting from a refusal by a taxing jurisdiction to recognize any of your Distributor (Reseller) Exemption Certificates.

## 19.0   STATUS CHANGE

To maintain your authorization, you must provide Lexmark notice in writing within thirty (30) days if any of the following events occur: 1) transfer of a majority equity ownership; 2) merger or acquisition of your enterprise with or by any other entity; or 3) legal name change of your enterprise; or 4)

relocation or closing of an Authorized Location. Notwithstanding the foregoing, if a public press release is issued regarding an event described in clause 1 or 2, you are not required to give separate notice to Lexmark.

## 20.0  TRADEMARKS AND TRADE NAMES

You may refer to yourself under the Agreement as a Lexmark Authorized Distributor:

1) solely in connection with Products;
2) only during the contract period; and
3) only within the United States

Except as provided for in this Section, Lexmark does not grant you the right to use trademarks or trade names. Lexmark grants you the limited permission to use the trademark "Lexmark" solely to identify the Products acquired from Lexmark under the Agreement. You may use the trademarks "Lexmark" only within the United States.

At Lexmark's request, you will provide to Lexmark, for review and written approval, promotional, advertising and other materials that:

1) use a Lexmark, or third party trademark or trade name; or
2) refer to you as a "Lexmark Authorized Distributor" or your Resellers, as applicable.

Lexmark will supply advertising guidelines in writing.  At Lexmark's request, you agree to change any materials or use of materials which Lexmark determines to be inaccurate, objectionable, misleading or a misuse of Lexmark trademarks. You will pay the expenses for such change.

The permission granted relative to the Lexmark trademarks will terminate with the termination of expiration of the Agreement. In such event, for the affected Products, you will immediately:

1) cease referring to yourself as a "Lexmark Authorized Distributor" or other such term that includes the name of the Products, as applicable;
2) cease referring to yourself as approved by Lexmark to provide warranty services; and
3) return to Lexmark or destroy all materials under your control employing such trademarks.

You may retain materials with Lexmark trademarks, which are required to fulfill your warranty service, or support obligations on affected Products. You will return these materials to Lexmark or destroy them upon completion of such obligations.

Lexmark will provide all photo samples (analog and digital) and descriptions necessary for the production of your catalogs, flyers and electronic advertising and marketing content ("Materials") to you at no charge.  Lexmark grants to you a nonexclusive, nontransferable, royalty free license to use, copy, resize, display and distribute, with the right to sublicense, Materials for the limited purpose of marketing, promoting or selling Products through any promotional, advertising or distribution channel, including, without limitation, print or worldwide web.  Lexmark also grants to you a nonexclusive, nontransferable, royalty free license to use, display and distribute the Lexmark trademark solely in connection with the marketing, promoting or selling of Products, provided that any usage complies with Lexmark's then-current trademark usages and guidelines.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2841

You recognize Lexmark's ownership and title to its trademarks and the goodwill attaching to them. You agree that any goodwill, which accrues because of your use of the Lexmark trademarks will become Lexmark's property. You agree not to contest Lexmark trademarks or trade names. You agree not to use, employ or attempt to register any trademarks or trade names, which are confusingly similar to Lexmark trademarks or trade names. Lexmark may revoke immediately, without prior notice, any permission to use Lexmark trademarks granted to you under the Agreement if Lexmark determines that you are misusing such Lexmark trademarks or if you place any Lexmark trademark on any product in violation of any law or Lexmark's legal rights.

## 21.0 PATENTS AND COPYRIGHTS

Lexmark will indemnify, defend (with counsel reasonably satisfactory to Distributor) and hold harmless Distributor, its subsidiaries, customers and affiliates, their successors and assigns and their respective directors, officers, employees, shareholders, representatives, agents and customers (Distributor and all such other parties collectively referred to as "Distributor Indemnitees") from and against any and all claims, actions, suits, demands, proceedings, liabilities, damages, fines, penalties, judgments, costs, expenses and losses of any kind whatsoever, including, without limitation, reasonable attorneys' fees (collectively, "Losses"), arising out of or relating to any actual or alleged violation or infringement by Lexmark or by any Product(s) (or related descriptions, designs, photographs, drawings, specifications or technical designations) of a patent, trademark, service mark, trade dress or copyright, or any actual or alleged misappropriation by Lexmark of any trade secret or other proprietary or intellectual property or moral right, of any third party.

To qualify for such defense and payment, you must 1) give Lexmark prompt written notice of any such claim, and 2) allow Lexmark to control, and fully cooperate with Lexmark in, the defense and all related settlement negotiations (provided that Lexmark will not admit liability on your behalf in connection with a settlement without your prior written consent).

You agree that if a Product in your inventory, or the operation of a Product while in your inventory, becomes, or Lexmark believes is likely to become, the subject of such a claim, you will permit Lexmark, at its option and expense, either to secure the right for you to continue using the Product or to replace or modify it so that it becomes non-infringing. However, if neither of the foregoing alternatives is available on terms, which are reasonable in Lexmark's judgment, Lexmark may stop shipping affected Product, and you will return the Product in your inventory upon Lexmark's written request. Lexmark will grant you a credit equal to the price paid by you to Lexmark for the returned Product. The Lexmark shall have no obligation with respect to any such claim based upon any non-Lexmark modification of Product.

This Section states Lexmark's entire obligation to you and your entire remedy for machines regarding infringement or the like.

## 22.0 LIMITATION OF REMEDIES

Lexmark is not liable for any damages caused by performance or nonperformance of Products or programming located outside the United States. In no event will Lexmark be liable for any damages caused by your failure to perform your responsibilities.

Lexmark assumes no liability regarding any claim or action caused by, or directly related to, a non-Lexmark Product.

In no event will Lexmark be liable for any lost profits, lost savings, incidental damages, or other consequential damages, even if Lexmark has been advised of the possibility of such damages.

## 23.0 INDEMNIFICATION AND INSURANCE

Lexmark will indemnify, defend (with counsel reasonably satisfactory to Distributor) and hold harmless all Distributor Indemnitees from and against any and all Losses, arising out of or relating to (i) any alleged or actual breach or non-satisfaction by Lexmark or any of its employees, authorized representatives or advisors ("Representatives") of any of Lexmark's warranties, representations, covenants or obligations in this Agreement, (ii) any actual or alleged breaches of Lexmark's pass-through Product warranties to end users or other third parties, or (iii) any other claims of any nature whatsoever that any Products have caused or contributed to bodily injury or death or damage to real or personal property.

Lexmark has and will maintain in full force and effect, at no charge to Distributor, comprehensive general liability and product liability insurance, including coverage for premises and operations, products and completed operations, contractual liability, property damage and bodily/personal injury, on a broad-form basis, covering Lexmark and all of its affiliates and their respective employees, representatives and products, with coverage limits of not less than the following: $5,000,000 products-completed operations aggregate limit; $5,000,000 general aggregate (other than products-completed operations); $2,000,000 personal and advertising injury limit; and $2,000,000 per each occurrence. Each of the required policies of insurance will be primary and non-contributory and with an insurance company financially acceptable to Distributor with a current A.M. Best rating of not less than A-VII, will name Distributor Stationers Supply Co., its parent and affiliates and their respective customers (the "Distributor Insureds") as additional insureds on a broad form vendors' endorsement acceptable to Distributor and will contain a severability of interests clause, to the effect that the provided insurance applies separately to each insured against whom a claim is made or suit is brought, subject to applicable policy limits. Lexmark waives, and will require its insurers to waive, subrogation against the Distributor Insureds under all such insurance policies. In addition, Lexmark will endeavor to provide Distributor with at least thirty 30 days prior written notice of any material change, expiration or cancellation of the policy. Lexmark will deliver to Distributor a certificate of insurance (issued by an authorized representative of Lexmark's insurer(s) and in form and substance reasonably acceptable to Distributor) evidencing the coverage under all applicable policies in conformity with these requirements and will provide a new certificate evidencing complying renewal or replacement insurance at least thirty (30) days prior to the expiration or cancellation date of any policy. This Section will survive the expiration or termination of this Agreement for two years.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2842

## 24.0  TERMINATION

Either party may terminate the Agreement, with or without cause. Lexmark will provide three month written notice to you of such termination, except as otherwise provided in this Section. You must provide one month written notice to Lexmark.

In the event that Lexmark gives you such notice for cause, Lexmark may provide you with an opportunity to cure deficiencies. In such event, Lexmark will establish a reasonable time, not to exceed three months, in which you must remedy such deficiencies.

In addition, Lexmark considers certain actions so serious and inconsistent with your obligations as a Distributor as to warrant immediate termination. Such breaches will include, but not be limited to, situations in which 1) you made material misrepresentations to Lexmark in your application to become a Distributor, at any later time through oral or written statements, or by submission of any false or fraudulent documentation or claim to Lexmark, or 2) you marketed Products to other than a Reseller.

Lexmark may also terminate the Agreement immediately in the event that a Distributor or its personnel knowingly or negligently engage, directly or indirectly, in the manufacture, sale, resale, brokerage, distribution, storage or handling of counterfeit goods and/or gray market goods (that is, goods bearing the trademark, trade name or trade dress of Lexmark which have been acquired from a source other than Lexmark or an Authorized Lexmark Wholesaler or Distributor in the U.S.).

In the event of termination of the Agreement by you or Lexmark, all monies due Lexmark will immediately become due and payable.

If you or Lexmark elects to terminate the Agreement, Lexmark may repurchase some or all of the Products in your inventory at a price determined by Lexmark. In such event, you will pay return-shipping charges. Products returned must be in the original shipping containers, which must not have been opened, damaged, marked or labeled.

A termination of the Agreement may also be only a partial termination of, for example, an Authorized Location, an eligible Product family, a part of a marketing coverage area, a specific Reseller relationship, or the approval to market to Distributor Associates.

## 25.0  CONFIDENTIAL INFORMATION

1) Any information concerning Lexmark customers furnished to you by Lexmark and identified as confidential, shall be treated and held in confidence by you. You shall not publish, disclose or disseminate it for a period of five years after its receipt, except as may be authorized by Lexmark in writing. You shall not be entitled to use this information for any purposes other than for marketing of Products in furtherance of this Agreement, or as specified in the information provided.

2) Upon termination or expiration of this Agreement, you shall deliver to Lexmark or destroy with an accompanying certification of said destruction (as you elect) all materials, of any kind, containing such confidential information.

3) Other than as set forth above, no information will be given or received in confidence by either party unless it is covered by a separate written agreement.

## 26.0  GENERAL

Either party's waiver of any instance of the other party's noncompliance with the Agreement will not be deemed a waiver of any future noncompliance.

You may not assign the Agreement or any of its rights or duties without Lexmark's prior written consent unless the assignment is part of the sale of the company.

Neither party is responsible for failure to fulfill its obligations under the Agreement due to causes beyond its control.

The Agreement will not be supplemented or modified by any course of dealing or trade usage. Variance from or addition to the terms and conditions of the Agreement in any purchase order or other written notification from you will be of no effect.

The provisions of the Agreement which by their nature extend beyond the termination or expiration of the Agreement will survive and remain in effect until all obligations are satisfied.

Each party agrees to pay the other's reasonable attorney's fees and costs of litigation if the party, for any cause whatsoever, brings suit against the other party and the other party is finally adjudicated not to have liability.

Neither you nor Lexmark will bring an action, regardless of form, arising out of the Agreement more than two years after the cause of action has arisen. In the case of an action for non-payment, the action may not be brought more than two years from the date the last payment was due.

Both parties agree to comply with all applicable governmental laws and regulations.

The laws of the State of New York will govern the Agreement, exclusive of its conflict of law provisions.

## 27.0 DISTRIBUTOR SPECIFIC INFORMATION

**Eligible Products**
You are approved to market the following Product families, as specified with a "YES" or identified portions as designated. Specific Products are listed in notices and an electronic file. Specific certification may also be required for certain Products.

Printers  Yes_____              Supplies  Yes_____

**Minimum Renewal Criteria**
Lexmark may establish Minimum Renewal Criteria (MRC) for a contract period for some or all Products. The MRC (Listed below or on attachments) designates the minimum level of sales performance expected of you. Sales performance objectives may be established which modify your MRC.

The Minimum Renewal requirement for Printer product is

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2843

The Minimum Renewal requirement for Supplies product is

**Marketing Coverage Area**
Your approved marketing coverage area(s), listed by Authorized
Location, by county and state, is:


United States


**Authorized Ship to and Bill to Locations**
All Authorized ship to and bill to Locations must be approved in
writing by Lexmark and listed on an attachment to this
Agreement.    Any change in the location or any significant
change in the characteristics of your Authorized Locations must
be approved by Lexmark.


**Ship to a Non-Authorized Location**
If you request Lexmark to ship Printer Products to a Non
Authorized Location, a 1% Drop Ship fee will be added to your
order. The Drop Ship fee will be calculated on all Printer
Products, which are being Drop Shipped to the Non-Authorized
location.  A minimum fee of $50.00 will be imposed.

Supplier Code of Ethics
By signing below on behalf of Lexmark, Lexmark's signatory
certifies that all of Lexmark's representatives who have contact
with associates of United Stationers Inc. have read the Supplier
Code of Ethics attached hereto as Exhibit B and agree to be
bound by it while doing business with United Stationers Inc. or
any of its subsidiaries.

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2844

Exhibibit A

Exhibit A

CONFIDENTIAL - OUTSIDE COUNSEL ONLY    A2845



CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2846

## ███████████ **Supplier Code of Ethics**

At ███████████ and our subsidiaries ███████████████████████████████ (collectively,
█████ our associates seek to outperform our competition fairly and honestly through superior performance
and never through unethical or illegal business practices. We are confident that our suppliers also desire to
operate in this manner and in an environment that is free from inappropriate influence due to unethical
business practices.

To this end ████ suppliers are required to abide by the following ethical principles:

- Avoid the intent or appearance of unethical practices in relationships, actions and communications with
████ nd all of its associates.
- Avoid creating any conflict of interest with a ████ associate, particularly any associate involved in
negotiating agreements or making purchasing decisions.
- Disclose to ████ senior management any family or other personal relationships that your representatives
may have with any ███ associate.
- Refrain from offering money, gifts of other than nominal value, excessive hospitality, trips, loans or
other special treatment to ████ associates that might influence or appear to influence their relationship with
you.
- Refrain from requesting agreements that restrict resale pricing or restrain competition.
- Comply with all applicable laws and regulations relating to the conduct of business which relates in any
way to ████

CONFIDENTIAL - OUTSIDE COUNSEL ONLY  A2847