Nos. 2014-1617, -1619

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**LEXMARK INTERNATIONAL, INC.,**
*Plaintiff-Cross-Appellant,*

v.

**IMPRESSION PRODUCTS, INC.,**
*Defendant-Appellant,*

**QUALITY CARTRIDGES, INC., JOHN DOES, 1–20, BLUE TRADING LLC, EXPRINT INTERNATIONAL, INC., LD PRODUCTS, INC. PRINTRONIC CORPORATION, TESEN DEVELOPMENT (HONG KONG) CO. LTD., BENIGNO ADEVA AND HIS COMPANIES,**
*Defendants.*

---

On Appeal from the United States District Court for the Southern District of Ohio, Case No. 1:10-cv-00564-MRB, Judge Michael R. Barrett

---

**BRIEF OF *AMICUS CURIAE* THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION
IN SUPPORT OF DEFENDANT-APPELLANT IMPRESSION PRODUCTS**

---

Matthew Levy
*Counsel of Record*
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mlevy@ccianet.org
*Counsel of Record*

June 19, 2015

# CERTIFICATE OF INTEREST

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Federal Circuit Rule 47.4, Matthew Levy, counsel for *amicus curiae* the Computer & Communications Industry Association certifies the following:

1. The full name of the party represented by me is the Computer & Communications Industry Association.

2. The name of the real party in interest represented by me is the Computer & Communications Industry Association.

3. The Computer & Communications Industry Association is not a subsidiary of any corporation and has issued no stock.

4. The names of all law firms and attorneys that appeared for the party now represented by me in this proceeding are Matthew Levy, see below.

June 19, 2015  /s/ Matthew Levy
Matthew Levy
Patent Counsel
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mlevy@ccianet.org
*Counsel of Record*

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE* ................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 2

ARGUMENT ......................................................................................................... 3

    I.  *Jazz Photo* and *Mallinckrodt* Are Harmful to Commerce ............................. 3

        A.  *Jazz Photo* and *Mallinckrodt* Allow Companies to Use Patents to Enforce Restrictive Use Conditions Against Customers and Distributors ...................... 4

        B.  *Jazz Photo* and *Mallinckrodt* Harm Small Businesses ............................. 8

    II.  The Supreme Court Has Never Limited Patent Exhaustion Geographically  8

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Boesch v. Graff*, 133 U.S. 697 (1890) ................................................................ 8, 9

*Disenos Artisticos E Industriales S.A. v. Costco Wholesale Corp.*,
   97 F.3d 377 (9th Cir. 1996) ................................................................................ 8

*Jazz Photo Corp. v. Int'l Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001)
   .................................................................................................................. passim

*Kirtsaeng v. John Wiley & Sons*, 133 S.Ct. 1351 (2013) ................................ 2, 5, 9

*K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).................................................. 5

*Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992) .............. passim

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917) ....... 7

**Other Authorities**

D. Blanchard, "How to Manage a Global Supply Chain," *IndustryWeek* (Aug. 15, 2012), http://www.industryweek.com/supply-chain/how-manage-global-supply-chain................................................................................................................ 6

D. Rogers, Z. Rogers, and R. Lembke, "Creating value through product stewardship and take-back," 2 Sustainability Accounting, Management and Policy J., 133 (Vol. 1, 2010)...................................................................... 7

# INTEREST OF *AMICUS CURIAE*[1]

The Computer & Communications Industry Association ("CCIA") represents over twenty companies of all sizes providing high technology products and services, including computer hardware and software, electronic commerce, telecommunications, and Internet products and services – companies that collectively generate more than $465 billion in annual revenues.[2]

---

[1] No counsel for any party authored this brief in whole or part; no such party or counsel made a monetary contribution intended to fund its preparation or submission; and no person other than *amicus* made such a contribution.

[2] A list of CCIA members is available at http://www.ccianet.org/members. CCIA is a trade association with a wide and diverse membership. It was unable to resolve the reservations of one of its members, Microsoft Corporation, prior to the filing of this brief. These views should therefore not be associated with Microsoft.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

An authorized purchaser of a good should not live in fear of a patent infringement suit by the seller. The ability to use patents to enforce geographic, use, or other limitations against authorized purchasers is contrary to the purpose of the patent system and damaging to commerce.

This Court now has the opportunity to protect purchasers and bring its case law in line with the Supreme Court's interpretation of the patent exhaustion doctrine. It should do so by overruling *Jazz Photo Corp. v. Int'l Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), and *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992).

*Jazz Photo* incorrectly held that a sale outside the United States cannot exhaust patent rights. The Supreme Court has never placed any geographic restriction on patent exhaustion. When faced with the same question in the context of copyright, the Court held that there was no geographic restriction on the first sale provision, 17 U.S.C. § 109(a). *Kirtsaeng v. John Wiley & Sons*, 133 S. Ct. 1351, 1371 (2013). Moreover, the rule in *Jazz Photo* substantially increases supply chain costs by allowing suppliers to charge for the right to move components into the United States.

*Mallinckrodt* incorrectly held that use restrictions against purchasers are within the scope of the patent right. *Mallinckrodt* has encouraged an environment of overly restrictive and anti-competitive conditions of sale. This includes this case, where Lexmark seeks to use its patents to keep the price for its ink cartridges artificially high by blocking the creation of a secondary market in refilled cartridges.

The technology sector in particular benefits from the free flow of goods. Modern software, for example, is frequently the product of international collaboration. And allowing post-use restrictions to be enforced by patents unnecessarily raises the cost of doing business.

## ARGUMENT

### I.　*Jazz Photo* and *Mallinckrodt* Are Harmful to Commerce

*Jazz Photo* and *Mallinckrodt* should be overruled. Both decisions are harmful to commerce and innovation, because they interfere with a basic principle of transactions: once a good is purchased, the purchaser is free to do whatever she wishes with it.

While licenses can be geographically restricted, once an authorized sale is made, the purchaser is free to move the good wherever she likes. It would be absurd to say that someone who validly purchases a television set in Oklahoma

3

could commit patent infringement by moving to Montana. And yet, under the rule of *Jazz Photo*, someone could commit patent infringement by validly purchasing a television in Japan and moving to the United States (with the television) to take a job here.

Similarly, it would be absurd to say that a valid purchaser of a television could commit patent infringement by using the television more than 10 hours per week. And yet *Mallinckrodt* approved a single-use restriction on a medical device. *Mallinckrodt*, 976 F.2d at 708–09.

At the commercial level, the consequences are more severe. Companies can be discouraged from taking advantage of opportunities in the United States because of the threat of patent infringement. Companies can be prevented from developing advantageous commercial relationships, again because of the threat of patent infringement. Patents should not be discouraging commerce; they are intended to promote it.

### A.   *Jazz Photo* and *Mallinckrodt* Allow Companies to Use Patents to Enforce Restrictive Use Conditions Against Customers and Distributors

Producers of consumer goods have "waged a full-scale battle in legislative, executive, and administrative fora" for regulations that would grant them power to control the downstream importation of secondary market goods into the United

States. *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 295-96 (1988) (Brennan, J., concurring in part and dissenting in part). As a result, patent owners who have already been compensated for these goods are now attempting to use patent law to hamper the ability of consumers and resellers to re-distribute goods and comparison shop from different vendors. Manufacturers are also attempting to squash secondary markets, which provide many efficiencies and benefits to consumers and companies.

In particular, *Jazz Photo* encourages manufacturers to use patents to control downstream sales of goods in the United States. Reducing consumer rights in this dramatic way is inconsistent with the purposes of patent law and should not be endorsed by this Court. As the Supreme Court noted in *Kirtsaeng*, the common law "first sale" doctrine, which is the foundation of patent exhaustion, had no geographic restriction. *Kirtsaeng*, 133 S. Ct. at 1363-64.

*Mallinckrodt* similarly interferes with competition and encourages waste. *Mallinckrodt* enables manufacturers to force consumers to unnecessarily buy brand new products when used ones are available for purchase. *Mallinckrodt* also allows manufacturers to block repairs of goods, forcing customers to pay for replacement. Indeed, that is what Lexmark seeks in this case.

1.    *Jazz Photo* **Adds Costs and Complexity to Supply Chains**

Modern supply chain technologies combined with free trade agreements allow for goods to be purchased by manufacturers from nearly anywhere in the world. In fact, global supply chains are becoming increasingly common, as companies look to smooth out supplies and expand into new markets. D. Blanchard, *How to Manage a Global Supply Chain*, INDUSTRYWEEK (Aug. 15, 2012), http://www.industryweek.com/supply-chain/how-manage-global-supply-chain. The complexity of managing global supply chains is one of the biggest challenges that many companies face. *Id.*

*Jazz Photo* adds transaction costs by requiring distributors to pay not only the base price of a good, but also for the right to ship the good where it is needed. This additional cost is a tax that flows to end consumers in the form of higher prices.

2.    *Mallinckrodt* **Stifles Secondary Markets and Harms Low-Income Consumers**

Allowing post-sale use restrictions stifles secondary markets. This case is a perfect example. Lexmark seeks to block any secondary market for refilled printer

6

cartridges through the use of its patents in order to enable it to maintain high profit margins for new cartridges.

The primary purpose of patents is not to to enrich the patent owner. As the Supreme Court has explained, "the primary purpose of our patent laws is not the creation of private fortunes for the owners of patents but is 'to promote the progress of science and useful arts…'" *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 511 (1917).  Patentees are remunerated by exercising their right to exclude others from practicing the patent.  *Jazz Photo* and *Mallinkrodt* erroneously enlarged that incentive by inviting patentees to cloud the title to physical goods moving in the stream of commerce with the equivalent of servitudes.

Moreover, secondary markets provide important benefits to consumers. Resale markets ensure a more efficient allocation of goods, and the possibility of resale increases consumers' willingness to pay for a product.  Secondary markets also give low-income consumers access to used goods, where new versions are too expensive. And secondary markets perform an important function in reducing waste. *See* D. Rogers, Z. Rogers, & R. Lembke, *Creating value through product stewardship and take-back*, 2 SUSTAINABILITY ACCOUNTING, MGMT. & POLICY J., 133, 133–34 (Vol. 1, 2010).

### B. *Jazz Photo* and *Mallinckrodt* Harm Small Businesses

Likewise, small businesses are particularly burdened by increased transaction costs. As the Ninth Circuit has recognized in the copyright context, without the first sale doctrine, "every little gift shop in America would be subject to copyright penalties for genuine goods purchased in good faith from American distributors, where unbeknownst to the gift shop proprietor, the copyright owner had attempted to arrange some different means of distribution several transactions back." *Disenos Artisticos E Industriales S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996). Increasing supply chain costs and limiting secondary markets continues to damage small businesses: whereas larger business actors may have the capacity to investigate whether every product they purchase or inventory they stock is encumbered by some patent right, smaller businesses and individuals cannot manage such investigations.

## II. The Supreme Court Has Never Limited Patent Exhaustion Geographically

No Supreme Court decision has ever held that patent exhaustion is limited to the United States. *Jazz Photo* relied on *Boesch v. Graff*, 133 U.S. 697, 701–03 (1890) for the proposition that in order "[t]o invoke the protection of the first sale

doctrine, the authorized first sale must have occurred under the United States patent." *Jazz Photo* at 1105. This is a misreading of *Boesch*.

Graff purchased infringing lamp burners in Germany from a German manufacturer. *Boesch* at 701. The manufacturer was allowed to manufacture the burners because German law permitted him to do so despite Graff's patent. *Id.* at 701–02. The Court held that German law could not exhaust Graff's patent rights, even if the sales were authorized at the time and place they were made. *Id.* at 703. There was no sale authorized under the U.S. patent; accordingly there was no patent exhaustion. *Id.*

This is distinguishable from the question presented, namely whether a sale of a patented item outside the United States can give rise to United States patent exhaustion. *Boesch* only addressed one very specific situation: a foreign law authorizing the sale of a patented item. *Boesch* made no holding at all with respect to sales authorized by the patent owner.

There is no other Supreme Court decision that addresses the issue with respect to patents. The Supreme Court clearly held in *Kirtsaeng* that the common law first sale doctrine, i.e., the basis for both the first sale doctrine in copyright and patent exhaustion, does *not* have a geographical limitation. *Kirtsaeng,* 133 S.Ct. at 1363-64. The same reasoning should apply here.

9

# CONCLUSION

For the foregoing reasons, *amicus* CCIA requests that this Court overrule *Jazz Photo Corp. v. Int'l Trade Commission*, 264 F. 3d 1094 (Fed. Cir. 2001), and *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992), to the extent that they limit patent exhaustion.

Respectfully submitted,

/s/ Matthew Levy
 *Counsel of Record*
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mlevy@ccianet.org
*Counsel of Record*

June 19, 2015

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 1,629 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the types style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Matthew Levy
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mlevy@ccianet.org
*Counsel of Record*

June 19, 2015

**CERTIFICATE OF SERVICE**

I hereby certify, that on this 19th day of June 2015, a true and correct copy of the foregoing Brief of *Amicus Curiae* the Computer & Communications Industry Association was timely filed electronically with the Clerk of the Court using CM/ECF, which will send notification to all counsel registered to receive electronic notices.

/s/ Matthew Levy
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mlevy@ccianet.org
*Counsel of Record*