*Appeal Nos. 14-1617(L), 14-1619(XAP)*

IN THE

# United States Court of Appeals

FOR THE FEDERAL CIRCUIT

➤➤◄◄

LEXMARK INTERNATIONAL, INC.,

*Plaintiff-Cross-Appellant,*

*v.*

IMPRESSION PRODUCTS, INC.,

*Defendant-Appellant,*

*and*

QUALITY CARTRIDGES, INC., JOHN DOES, 1-20, BLUE TRADING LLC,
EXPRINT INTERNATIONAL, INC., LD PRODUCTS, INC.,
PRINTRONIC CORPORATION, TESEN DEVELOPMENT (HONG KONG) CO. LTD.,
BENIGNO ADEVA and HIS COMPANIES,

*Defendants.*

_____

*On Appeal from the United States District Court for the
Southern District of Ohio in Case No. 1:10-cv-00564-MRB,
Honorable Michael R. Barrett*

## BRIEF OF ASSOCIATION OF SERVICE AND COMPUTER DEALERS INTERNATIONAL, INC. AND OWNERS' RIGHTS INITIATIVE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT ON THE ISSUE OF PATENT EXHAUSTION

W. Douglas Kari, Esq.
Principal in ASCDI Member
ARBITECH, LLC
15330 Barranca Parkway
Irvine, California 92618
949-936-2302

*Attorneys for* Amici Curiae

## CERTIFICATE OF INTEREST

Pursuant to Rules 29(a) and 47.4 of the Federal Circuit Rules of Practice, counsel of record certifies:

(1)     The full name of every party or *amicus curiae* represented by counsel to this brief are **Association of Service and Computer Dealers International, Inc.** and **Owners' Rights Initiative**.

(2)     The parties identified above are the real parties in interest.

(3)     The corporate disclosure statement of Rule 26.1 of the Federal Rules of Appellate Procedure is:  There is no parent corporation to or any corporation that owns 10% or more of the stock of the parties or *amici curiae* set forth in (1) above.

The only attorney who has appeared for the parties or *amici curiae* set forth in (1) above or is expected to appear from them in this court is **W. Douglas Kari.**

Dated:  June 17, 2015                      /S/ W. Douglas Kari
                                                          W. Douglas Kari
                                                          Counsel for *Amici Curiae*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES ................................................................. iii

I.   STATEMENT OF INTEREST ........................................................ 1

II.  BACKGROUND ............................................................................ 2

III. *KIRTSAENG* IS FOUNDED ON PRACTICAL CONCERNS
     AND LEGAL PRINCIPLES THAT APPLY IN THE PATENT
     ARENA ......................................................................................... 4

     A.  Foundational Concepts of Property Rights Support *Kirtsaeng*
         and Undercut *Jazz Photo* .................................................... 8

     B.  Common Law and Intellectual Property Law Abhor the Sort
         of Restraint on Alienation Imposed By *Jazz Photo* ................ 10

     C.  *Kirtsaeng* Recognized the Importance of Maintaining Access
         to Worldwide Trade ............................................................ 12

     D.  *Jazz Photo* Is Out of Step with Evolving Social Norms .......... 14

VI.  CONCLUSION ............................................................................ 16

CERTIFICATE OF COMPLIANCE .................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Burke*,
  84 U.S. 17 Wall. 453 (1873) ................................................................11

*Bobbs-Merrill Co. v. Straus*,
  210 U.S. 339 (1908) ...............................................................10, 11

*Carnegie Mellon University v. Marvell Technology Group, Ltd., et al.*, No. 2014-1492 (Fed. Cir.) .......................................................5

*Jazz Photo Corp. v. International Trade Commission*,
  264 F.3d 1094 (2001) ..............................................................*passim*

*Keeler v. Standard Folding-Bed Co.*,
  157 U.S. 659 (1895) ...................................................................9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  568 U.S. ___, 133 S. Ct. 1351 (2013) .......................................*passim*

*Lynch v. Household Finance Corp.*,
  405 U.S. 538 (1972) ...................................................................8

*Motion Picture Patents Co. v. Universal Film Manufacturing Co.*,
  243 U.S. 502 (1917) ...............................................................11, 12

*Omega v. Costco Wholesale Corp.*,
  541 F.3d 982 (9th Cir. 2008), *aff'd*, 131 S. Ct. 565 (2010) ................................3

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
  533 U.S. 617 (2008) ...............................................................10, 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ...................................................................4

## Statutes

17 U.S.C. § 109 ...................................................................11

iii

U.S. Const. Art I, § 8..............................................................................12

**Other Authorities**

Adam Smith,
2 THE WEALTH OF NATIONS (1776) ....................................................9

Aldona Jonaitis,
CHIEFLY FEASTS: THE ENDURING KWAKIUTL POTLATCH (1991) ........9

Ben Kuchera,
*Patents on Video Game Mechanics Strangle Innovation, Fun,*
ARS TECHNICA (Mar. 9, 2008), http://arstechnica.com/gaming/
2008/03/patents-on-video-game-mechanics-may-strangle-
innovation...........................................................................................2

Benj Edwards,
*If It Ain't Broke, Don't Fix It: Ancient Computers in Use Today,*
PCWORLD (Feb. 19, 2012), http://www.pcworld.com/article/
249951/if_it_aint_broke_dont_fix_it_ancient_computers_in_use_
today.html...........................................................................................13

Catherine Clifford,
*International Online Shopping Expected to Almost Triple
in Next 5 Years,* ENTREPRENEUR (July 22, 2013),
http://www.entrepreneur.com/article/227519 ..................................14

Chris Moran,
*More People Getting DVD's from Library than from
Netflix or Redbox,* CONSUMERIST (JULY 29, 2010),
http://consumerist.com/2010/07/29/more-people-getting-dvds-
from-library-than-from-netflix-or-redbox.......................................10

Christina Mulligan and Timothy B. Lee,
*Scaling the Patent System,* 68 NYU ANNUAL SURVEY
OF AM. LAW 289 (March 16, 2012)..................................................15

David Hume,
A TREATISE OF HUMAN NATURE (*Of the Origin of Justice
and Property*) (1739)...........................................................................8

iv

Doug Kari,
  *How an eBay Bookseller Defeated a Publishing Giant
  at the Supreme Court,* ARS TECHNICA (Nov. 25, 2014),
  http://arstechnica.com/tech-policy/2014/11/how-an-ebay-
  bookseller-defeated-a-publishing-giant-at-the-supreme-court ..........................3

Editorial, *The Limits of Copyright Law,* LA TIMES (March 20, 2013),
  http://articles.latimes.com/2013/mar/20/opinion/la-ed-copyright-
  kirtsaeng-supreme-court-20130320 ..................................................................4

THE FEDERALIST NO. 10 (1787) ...............................................................................8

Gary Shapiro,
  *Supreme Court Gives American Consumers Victory Over
  Copyright Owners in Kirtsaeng vs. John Wiley & Sons,*
  FORBES (March 20, 2013), http://www.forbes.com/sites/
  garyshapiro/2013/03/20/ supreme-court-gives-american-
  consumers-victory-over-copyright-owners-in-kirtsaeng-vs-john-
  wiley-sons ........................................................................................................4

HP *QuickSpecs* (Oct. 12, 2012),
  www8.hp.com/h20195/v2/getpdf.aspx/ c04282672.pdf?ver=7.........................6

SEC, Form S-1 Registration Statement, RPX Corporation 59
  (Sept. 2, 2011), http://www.sec.gov/Archives/edgar/data/
  1509432/000119312511240287/ ds1.htm#toc226103_1...............................15

Jeremy Waldron,
  *Property and Ownership,* STANFORD ENCYCLOPEDIA OF
  PHILOSOPHY (2004) .........................................................................................8

Joe Mullin,
  *Chipmaker Hopes to Overturn Largest Patent Verdict Ever:
  $1.5 Billion*, ARS TECHNICA (April 10, 2015),
  http://arstechnica.com/tech-policy/ 2015/04/chipmaker-hopes-to-
  overturn-largest-patent-verdict-ever-1-5-billion................................................5

John Locke,
  TWO TREATISES OF GOVERNMENT AND A LETTER CONCERNING
  TOLERATION (1689)..........................................................................................8

Kurt Orzeck, *Fox, MGM Combat Nissim Royalty Claims Over DVD Patents*, LAW360, http://www.law360.com/articles/548744/fox-mgm-combat-nissim-royalty-claims-over-dvd-patents (June 17, 2014)...............................................................................................7

Marcel Mauss,
FORMS AND FUNCTIONS OF EXCHANGE IN ARCHAIC SOCIETIES (1967) ...................................................................................................9

Marshall Sahlins,
STONE AGE ECONOMICS (1972) .........................................................8

Michael Armah and Teresita Teensma,
*Estimates of Categories of Personal Consumption Expenditures Adjusted for Net Foreign Travel Spending*, BUREAU OF ECONOMIC ANALYSIS, U.S. DEPARTMENT OF COMMERCE 15 (April 2012), http://bea.gov/scb/pdf/2012/04%20April/0412_pce.pdf ...................14

*Omega S.A. v. Costco Wholesale Corporation*,
Nos. 11-57137 & 12-56342 (9th Cir. Jan. 20, 2015), http://cdn.ca9.uscourts.gov/datastore/opinions/2015/01/20/11-57137.pdf............................................................................................16

Richard A. Epstein,
*Why Restrain Alienation?*, 85 COLUM. L. REV. 970 (1985)...............9

Steven Church,
*Sony's Blu-Ray Patent Group Sue Imation Over Blank Discs*, BLOOMBERGBUSINESS (May 22, 2013), http://www.bloomberg.com/news/articles/ 2013-05-22/sony-s-blu-ray-patent-group-sues-imation-over-blank-discs-1-.....................................7

*ThinkPad USB Port Replicator with Digital Video User Guide*,
at Appendix C, http://www.tei.org/chapters/testchpt/ Public%20Documents/USB%20Port%20 Documentation.pdf .........................6

Thomas Fuller,
*Thailand Flooding Cripples Hard-Drive Suppliers*, NEW YORK TIMES (Nov. 6, 2011) ...........................................................................4

# I. STATEMENT OF INTEREST

The organizations represented in this brief urge the court to side with appellant Impression Products, Inc. on the issue of patent exhaustion.[1]  Overruling *Jazz Photo Corp. v. International Trade Commission*[2] and embracing *Kirtsaeng v. John Wiley & Sons, Inc.*[3] will harmonize patent law's exhaustion doctrine with copyright law's first sale doctrine, and will advance a rule that is legally sound, intuitively fair and administratively efficient.

*Amicus curiae* Association of Service and Computer Dealers International, Inc. ("ASCDI") is a trade group of 327 small-to-medium technology companies. ASCDI members deal in technology products that practice U.S. patents.  These products, some of which are acquired after a first sale abroad, support technology users throughout America.

*Amicus curiae* Owners' Rights Initiative ("ORI") is a broad coalition that seeks to protect ownership rights in personal property.  The steering committee of ORI includes:  eBay Inc. ("eBay"), a global platform and payments business including online marketplaces, digital payment services and online retailing and

---

[1] This brief is filed in accordance with the court's April 14, 2015 order allowing amicus briefs to be filed without consent and leave of court.  Pursuant to Federal Circuit Rule 29(c)(5), the *amici curiae* submitting this brief and its counsel represent that no party to this case or its counsel authored this brief in whole or in part, and no person other than *amici curiae* and its counsel paid for or made a monetary contribution toward the preparation and submission of this brief.

[2] 264 F.3d 1094 (2001).

[3] 568 U.S. ___, 133 S. Ct. 1351 (2013).

marketing solutions; Radwell International, Inc., which sells and repairs industrial electrical and electronic control devices; United Network Equipment Dealers Association (UNEDA), an alliance of more than 250 used network equipment dealers worldwide; the American Library Association, which has more than 55,000 member libraries; the Association of Research Libraries, whose 124 members include major university, national and public research libraries; and ASCDI.

## II. BACKGROUND

Intuitively and under deeply-rooted legal principles, ownership of personal property includes the right to move it from point A to point B, and to trade, loan or give it away.  For example, an eBay user who buys a video game[4] from a seller in Japan naturally expects that she can have the game shipped to her home in the U.S. and later, if she wishes, sell, loan or gift the game to a friend.

However, prior to *Kirtsaeng*, uncertainty existed under copyright law about rights to engage in such everyday transactions.  Perhaps the most chilling example came when the Swiss watchmaker Omega etched a tiny, copyrighted design onto the casing of its Seamaster watches as a tactic to prevent unwanted importation and

---

[4] Video games are subject to numerous patents. *See* Ben Kuchera, *Patents on Video Game Mechanics Strangle Innovation, Fun,* ARS TECHNICA (Mar. 9, 2008), http://arstechnica.com/gaming/ 2008/03/patents-on-video-game-mechanics-may-strangle-innovation.

resale of the watches in the U.S.[5]  When the Ninth Circuit Court of Appeals sided with Omega and the Supreme Court affirmed on a 4-4 split,[6] the possibility loomed that any product lawfully made and sold abroad could, at the manufacturer's whim, be excluded from the American market.

When *Kirtsaeng* went up to the Supreme Court, ASCDI and the American Library Association submitted amicus briefs arguing that a first sale doctrine without territorial limitation was essential to their members' interests and to the people and institutions they served.  Both briefs were cited with approval in the Court's opinion.[7]

By establishing a rule of exhaustion without territorial limitation, *Kirtsaeng* struck the proper balance between copyright and ownership.  The opinion by

---

[5] See Doug Kari, *How an eBay Bookseller Defeated a Publishing Giant at the Supreme Court,* ARS TECHNICA (Nov. 25, 2014) 2, http://arstechnica.com/tech-policy/2014/11/how-an-ebay-bookseller-defeated-a-publishing-giant-at-the-supreme-court.

[6] *Omega v. Costco Wholesale Corp.*, 541 F.3d 982 (9th Cir. 2008), *aff'd*, 131 S. Ct. 565 (2010) (*per curium*).

[7] See 133 S. Ct. at 1365.

Justice Stephen Breyer garnered widespread praise and there has been no legislation introduced in Congress to undermine it.[8]  Put simply, the rule works.

In this brief, ASCDI and ORI respectfully contend that *Kirtsaeng* should apply with equal force in patent law.[9]

## III. *KIRTSAENG* IS FOUNDED ON PRACTICAL CONCERNS AND LEGAL PRINCIPLES THAT APPLY IN THE PATENT ARENA

A real-life example illustrates the stakes in this case.  Four years ago Thailand was battered by typhoons – it was the worst monsoon season in half-a-century.  Floodwaters inundated the industrial zone where most of the world's computer hard drives are manufactured.[10]  ASCDI members, wanting to secure supply for their U.S. customers, began buying up hard drives from around the globe.  Following are a few of the technology users in the U.S. who received

---

[8] *See, e.g.,* Editorial, *The Limits of Copyright Law,* LA TIMES (March 20, 2013), http://articles.latimes.com/2013/mar/20/opinion/la-ed-copyright-kirtsaeng-supreme-court-20130320; Gary Shapiro, *Supreme Court Gives American Consumers Victory Over Copyright Owners in Kirtsaeng vs. John Wiley & Sons,* FORBES (March 20, 2013), http://www.forbes.com/sites/garyshapiro/2013/03/20/supreme-court-gives-american-consumers-victory-over-copyright-owners-in-kirtsaeng-vs-john-wiley-sons.

[9] *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 (1984) (analogies between patent and copyright law are appropriate "because of the historic kinship between patent law and copyright law").

[10] Thomas Fuller, *Thailand Flooding Cripples Hard-Drive Suppliers,* NEW YORK TIMES (Nov. 6, 2011), http://www.nytimes.com/2011/11/07/business/global/07iht-floods07.html.

shipments of hard drives that were acquired by ASCDI's membership during the

worldwide hard drive shortage:

| Defense | Medical | Education |
|---|---|---|
| US Navy Strategic Systems | VA Medical Center | Vassar College |
| Northrop Grumman | Texas Children's Hospital | Yale Public Schools |
| General Dynamics | St. Jude Medical | Brookdale College |
| **Nonprofit** | **Finance** | **Corporate** |
| NY Museum of Modern Art | Wells Fargo Capital | Alcoa Inc. |
| The Nature Conservancy | Farmers Nat'l Bank | Ticketmaster |
| Underwriters Laboratories | Bayview Financial | Nikon Inc. |
| **Legal** | **Small Business** | **Phone/Media** |
| Sullivan & Cromwell | Tasty Tacos | AT&T Global |
| Weil, Gotshal & Manges | Marshalltown Tools | Verizon |
| Latham & Watkins | Coeur d' Alene Resort | RR Donnelley & Sons |

The table above is just a sampling – ASCDI members imported thousands of

hard drives to help relieve the shortage and assist their customers.  However, hard

drives are subject to numerous patents; the largest patent verdict in history,

currently on appeal to this court, involves hard drives.[11]  Vigorous enforcement of

the *Jazz Photo* territorial limitation on patent exhaustion might have stopped these

---

[11] *Carnegie Mellon University v. Marvell Technology Group, Ltd., et al.,* No. 2014-1492 (Fed. Cir.).  S*ee also* Joe Mullin, *Chipmaker Hopes to Overturn Largest Patent Verdict Ever: $1.5 Billion*, Ars Technica (April 10, 2015), http://arstechnica.com/tech-policy/ 2015/04/chipmaker-hopes-to-overturn-largest-patent-verdict-ever-1-5-billion.

mission-critical products at the border. That is reason enough for *Jazz Photo* to be overruled.

Indeed, when players in this case who have supported *Jazz Photo* are in need of patent-protected computer hardware, they buy the products without regard to the country of first sale:

● In June of 2010, cross-appellant Lexmark International, Inc. ("Lexmark") was in need of twenty "port replicators" – docking stations for notebook computers. Port replicators are subject to numerous patents.[12] Lexmark bought the port replicators online and had them shipped to the company's offices in Lexmark, Kentucky. The port replicators had originally been sold in Denmark.[13]

● In August of 2013, Sidley Austin LLP ("Sidley"), counsel for Lexmark in this case, was in need of four host bus adapters ("HBA's") – devices that enable a computer server to transfer data to a storage system. The HBA's that Sidley needed includes patented features.[14] Sidley bought the HBA's online and had them

---

[12] *See ThinkPad USB Port Replicator with Digital Video User Guide*, at Appendix C, http://www.tei.org/chapters/testchpt/Public%20Documents/USB%20Port%20 Documentation.pdf.

[13] ASCDI member Arbitech, LLC ("Arbitech") fulfilled the order by drop-shipping the port replicators to the attention of an employee in Lexmark's IT department.

[14] *See, e.g.,* HP *QuickSpecs* (Oct. 12, 2012) 11, http://www8.hp.com/h20195/v2/ getpdf.aspx/ c04282672.pdf?ver=7.

shipped to Sidley's offices in Chicago, Illinois.  The HBA's had originally been sold in Denmark.[15]

● In October of 2011, the U.S. District Court for the Southern District of Ohio, the lower court in this case, was in need of six DVD drives for computer servers.  DVD drives are subject to various patents owned by different companies.[16]  The court bought the DVD drives from a reseller and had them shipped to the U.S. District Court in Columbus.  The DVD drives had originally been sold in Singapore.[17]

ASCDI and ORI respectfully submit that transactions such as these should be allowed.  It is impractical and unworkable for Lexmark, Sidley, the U.S. District Court and other technology users to vet the first-sale provenance of the computer hardware that they need.  *Kirtsaeng* is the right approach and the territorial limitation of *Jazz Photo* is bad law.

---

[15] Arbitech fulfilled the order by drop-shipping the HBA's to the attention of an IT manager at Sidley.

[16] DVD and Blu-ray technologies are subject to numerous patents.  *See* Steven Church, *Sony's Blu-Ray Patent Group Sue Imation Over Blank Discs,* BLOOMBERGBUSINESS (May 22, 2013), http://www.bloomberg.com/news/articles/2013-05-22/sony-s-blu-ray-patent-group-sues-imation-over-blank-discs-1-; Kurt Orzeck, *FOX, MGM Combat Nissim Royalty Claims Over DVD Patents, LAW360,* http://www.law360.com/articles/548744/fox-mgm-combat-nissim-royalty-claims-over-dvd-patents (June 17, 2014).

[17] Arbitech fulfilled the order by drop-shipping the DVD drives to a networking manager for the court.

## A. Foundational Concepts of Property Rights Support *Kirtsaeng* and Undercut *Jazz Photo*

Ownership rights trace to the dawn of humanity.  The English philosopher John Locke theorized that ownership originated when humans began converting objects in nature to personal use.[18]  The Scottish philosopher David Hume posited that a desire for stability led people not to dispossess each other of such objects.[19]  Later, as property law came into being, it formalized these deeply-rooted conventions.[20]

In America, property rights are revered.  James Madison, in THE FEDERALIST No. 10, called protection of property the "first object of government."[21]  The Supreme Court has stated that a "fundamental interdependence exists between the personal right to liberty and the personal right in property."[22]

The right of alienation is universally understood to be part of the ownership-rights bundle.  Anthropologists who study indigenous cultures have found that gift-giving is a widespread practice.[23]  As for trade, the French sociologist Marcel

---

[18] John Locke, TWO TREATISES OF GOVERNMENT AND A LETTER CONCERNING TOLERATION, Ch. V §27 (1689).

[19] David Hume, A TREATISE OF HUMAN NATURE §2 (*Of the Origin of Justice and Property*) (1739).

[20] Jeremy Waldron, *Property and Ownership,* STANFORD ENCYCLOPEDIA OF PHILOSOPHY 534 (2004).

[21] THE FEDERALIST No. 10 at ¶ 6 (1787).

[22] *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 (1972).

[23] *See, e.g.,* Marshall Sahlins, STONE AGE ECONOMICS 169, 186 (1972).  In some indigenous cultures of the Pacific Northwest, ritual exchanges of gifts, a practice

Mauss observed that "the market is a human phenomenon which we believe to be familiar to every known society."[24]  Adam Smith, in THE WEALTH OF NATIONS, characterized trade as a "natural liberty."[25]

Intuitively, the right of alienation vests in the person who has possessory ownership – if not him then who else?  The Supreme Court has stated that the "inconvenience and annoyance" of allowing patentees to interfere with a buyer's ownership "are too obvious to require illustration."[26]  As one commentator has observed, "[t]here seems no better place in which to locate exclusive rights of alienation than with the parties already entitled to possession and use."[27]

*Jazz Photo* runs counter to these principles.  As to patent-protected products first sold abroad, it effectively dispossesses the owner of the rights to sell, loan or gift that property in the U.S., because the patentee's rights are not fully exhausted upon the first sale.  For example, a researcher working in Europe could buy a set of foreign films – become the sole owner of the DVD's – but be prohibited by patent

---

called potlatch, is a cornerstone of the economy.  *See* Aldona Jonaitis, CHIEFLY FEASTS: THE ENDURING KWAKIUTL POTLATCH (1991).

[24] Marcel Mauss, FORMS AND FUNCTIONS OF EXCHANGE IN ARCHAIC SOCIETIES (1967).

[25] Adam Smith, 2 THE WEALTH OF NATIONS 30 (1776).

[26] *Keeler v. Standard Folding-Bed Co.*, 157 U.S. 659, 667 (1895).

[27] Richard A. Epstein, *Why Restrain Alienation?*, 85 COLUM. L. REV. 970, 971 (1985).

law from donating them to her university library in America without the patentees' consent.[28]  This offends basic sensibilities of how property ownership works.[29]

### B.  Common Law and Intellectual Property Law Abhor the Sort of Restraint on Alienation Imposed By *Jazz Photo*

Because the rights of a possessory owner to sell, loan or gift her property are so deeply engrained, the common law has a long tradition of abhorring restraints on alienation.  *Kirtsaeng* cited a 1628 decision of Lord Coke, which held that restraining alienation of chattels was "against Trade and Traffi[c], and bargaining and contracting betwee[n] man and man."[30]

Around the turn of the 20th Century, copyright law evolved the first sale doctrine to protect rights of alienation.  In *Bobbs-Merrill Co. v. Straus*,[31] the publisher placed a legend inside the novel THE CASTAWAY, purporting to set a minimum retail price at which the book could be resold.  The Court held this restriction to be unenforceable:

> [O]ne who has sold a copyrighted article… has parted with all right to control the sale of it.  The purchaser… may sell it again….[32]

---

[28] *See* Chris Moran, *More People Getting DVD's from Library than from Netflix or Redbox,*" CONSUMERIST (JULY 29, 2010), http://consumerist.com/2010/07/29/more-people-getting-dvds-from-library-than-from-netflix-or-redbox.

[29] *See Quanta Computer, Inc. v. LG Electronics, Inc.,* 533 U.S. 617, 630 (2008) (a patentee's retention of post-sale rights presents the danger that downstream purchasers "could nonetheless be liable for patent infringement").

[30] 133 S. Ct. at 1363.

[31] 210 U.S. 339 (1908).

[32] *Id*. at 350.

During roughly the same time period, patent law was developing the doctrine of patent exhaustion. When the patentees' successor in *Adams v. Burke*[33] tried to restrict the use of coffin lids beyond a ten-mile radius of Boston, the Court held that when a patentee "sells a machine or instrument whose sole value is in its use… he parts with the right to restrict that use."[34] In *Motion Picture Patents Co. v. Universal Film Manufacturing Co.*,[35] when the patentee of a film projector tried to restrict the owner from using third-party film reels, the Court held that the film projector had been "carried outside the monopoly of the patent law and rendered free of every restriction that the vendor may attempt to put upon it."[36]

In copyright law, the first sale doctrine of *Bobbs-Merrill* became incorporated into the statutory framework.[37] In the patent arena, the doctrine of patent exhaustion remained a creature of common law – one that has repeatedly been reaffirmed. As recently as 2008, in *Quanta Computer, Inc. v. LG Electronics, Inc.*,[38] the Court reiterated the doctrine, unanimously holding that "the initial authorized sale of a patented item terminates all patent rights to that item."[39]

---

[33] 84 U.S. 17 Wall. 453 (1873).
[34] *Id.* at 456.
[35] 243 U.S. 502 (1917).
[36] *Id.* at 516.
[37] Currently codified at 17 U.S.C. § 109.
[38] 553 U.S. 617 (2008).
[39] *Id.* at 625.

11

The court should honor this broad language and overrule *Jazz Photo* to the extent it excludes "products of foreign provenance" from the doctrine of patent exhaustion.[40]  Limiting a possessory owner's rights in property first sold abroad, so that patentees can practice price discrimination and regulate supply in the U.S., does not fit with the intent of the Copyright & Patent Clause.[41]  As the Court observed in *Kirtsaeng*, "the Constitution's language nowhere suggests that its limited exclusive right should include a right to divide markets or a concomitant right to charge different purchasers different prices ...."[42]  Instead, the Court suggested that division of territorial markets is best handled through ordinary commercial practices such as contracts.[43]

### C. *Kirtsaeng* Recognized the Importance of Maintaining Access to Worldwide Trade

In analyzing whether copyright law's first sale doctrine was limited by geography, *Kirtsaeng* also recognized the "ever-growing importance of foreign trade."[44]  ASCDI and ORI respectfully contend that this court should do the same, because at stake, among other things, are the computer systems of American schools, hospitals, businesses and governments.

---

[40] *See* 264 F.3d at 1105.

[41] *See, e.g.*, *Motion Picture Patents*, 243 U.S. at 518 (the primary purpose of patent law isn't the "creation of private fortunes for patentees" but rather "to promote the progress of science and the useful arts" (quoting U.S. Const. Art I, § 8)).

[42] 133 S. Ct. at 1370-71.

[43] *See id.* at 1371.

[44] *Id.* at 1367.

Technology products are often layered with patents; as seminal patents expire, incremental patents remain in force.  Although the patent term is shorter than the term for copyright protection, in the lifecycle of technology products it is practically forever.  So what happens a few years out, when the patents remain in force, the products remain mission-critical to the user, but the manufacturer no longer carries spare parts?

Here's a real-world example:  Because many defense systems continue to use older technology, defense contractors are sometimes "desperate to find the parts they need."[45]  For more than three decades, ASCDI members such as Sotel Systems LLC in Maryland Heights, Missouri, have supplied technology equipment to the military, defense contractors and federal agencies.  Sometimes the only way for Sotel Systems and other ASCDI members to supply older parts is to acquire products that were first sold overseas.

These ASCDI members, when acquiring products in the world market to support their American customers, should not be faced with a Gordian knot of determining where the first sale took place, which U.S. patents may apply, and whether those patents remain in force.  The approach in *Kirtsaeng*, which vests

---

[45] Benj Edwards, *If It Ain't Broke, Don't Fix It: Ancient Computers in Use Today,* PCWORLD 2 (Feb. 19, 2012), http://www.pcworld.com/article/249951/if_it_aint_broke_dont_fix_it_ancient_computers_in_use_today.html.

rights of alienation in the possessory owner, provides the market with simplicity and clarity.

**D. *Jazz Photo* Is Out of Step with Evolving Social Norms**

As noted by the Supreme Court in *Kirtsaeng*, more than $2.3 trillion worth of foreign goods were imported into the U.S. in 2011, "many of these goods after a first sale abroad."[46] International online trading has become a burgeoning market.[47] U.S. travelers spend billions of dollars shopping overseas.[48] These travelers and online traders expect that they can buy goods from around the world and enjoy full ownership rights, yet if the transactions were scrutinized under *Jazz Photo*, it is likely that many would be held infringing. Is the citizenry out of step with the law, or vice-versa?

Even if the parties wanted to comply with the territorial limitation of *Jazz Photo*, and ensure that every patent-protected product was first sold in the U.S. or had the patentee's consent for use in the U.S., it would be next-to-impossible to

---

[46] 133 S. Ct. at 1365.

[47] *See* Catherine Clifford, *International Online Shopping Expected to Almost Triple in Next 5 Years,* ENTREPRENEUR (July 22, 2013), http://www.entrepreneur.com/article/227519.

[48] Michael Armah and Teresita Teensma, *Estimates of Categories of Personal Consumption Expenditures Adjusted for Net Foreign Travel Spending*, BUREAU OF ECONOMIC ANALYSIS, U.S. DEPARTMENT OF COMMERCE 15 (April 2012) (estimated overseas spending by U.S. residents exceeded $119 billion in 2008, up from $78 billion in 2002), http://bea.gov/scb/pdf/2012/04%20April/0412_pce.pdf.

conduct such an analysis.[49]  Consider the smartphone:  ubiquitous, actively traded, and implicated by approximately 250,000 patents.[50]  How can a buyer ensure that none of the components in a smartphone was acquired abroad without the patentee's consent?

Patentees dismiss such concerns as hypothetical, arguing in effect that the *Jazz Photo* territorial limitation fails in theory but functions in practice.  But as the Court observed in *Kirtsaeng* with respect to copyright, a "law that can work in practice only if unenforced is not a sound [] law.  It is a law that would create uncertainty, would bring about selective enforcement, and, if widely enforced, would breed disrespect …."[51]

Also, if emboldened by an *en banc* decision from this court, patentees may push the envelope.  *Kirtsaeng* is a case in point from the copyright context:  Supap Kirtsaeng paid full price in Thailand for the textbooks he acquired, and John Wiley & Sons realized a profit.  But when the graduate student resold the textbooks on eBay to American students, the publishing house came after him with both barrels

---

[49] *See* Christina Mulligan and Timothy B. Lee, *Scaling the Patent System*, 68 NYU ANNUAL SURVEY OF AM. LAW 289, 291-92 (March 16, 2012) (noting that the costs of researching, identifying, and analyzing the software patents relevant to a given product "are so high that most firms don't even try to avoid infringement by investigating them").

[50] *See* SEC, Form S1 Registration Statement, RPX Corporation 59 (Sept. 2, 2011), http://www.sec.gov/Archives/edgar/data/1509432/000119312511240287/ds1. htm#toc226103_11.

[51] *Kirtsaeng*, 133 S. Ct. at 1366.

blazing.  Wiley sought prejudgment asset seizure, tried to have him held in contempt, took the case to jury trial, and as a post-judgment remedy obtained an order that he surrender his golf clubs.[52]  Similarly, Omega was ultimately found to have misused its copyright in trying to restrain trade in Seamaster watches.[53]  A bright-line rule of exhaustion reduces the likelihood of such excessive litigation.

## VI.  CONCLUSION

The territorial limitation of *Jazz Photo* does not withstand scrutiny; the bright-line approach of *Kirtsaeng* is the way of the future.  ASCDI and ORI respectfully submit that the court should side with appellant on the issue of patent exhaustion.

Dated:  June 17, 2015                    /S/ W. Douglas Kari
                                         W. Douglas Kari
                                         Counsel for *Amici Curiae*

---

[52] *See* Kari, *supra* n.5 at 1-3.

[53] *See Omega S.A. v. Costco Wholesale Corporation,* Nos. 11-57137 & 12-56342, Opinion at 5 (9th Cir. Jan. 20, 2015), http://cdn.ca9.uscourts.gov/datastore/opinions/2015/01/20/11-57137.pdf.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B), 28.1(e)(2), and 29(d).  The brief contains 3,549 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in proportionately-spaced typeface using Times New Roman 14-point font.

Dated:  June 17, 2015            /S/ W. Douglas Kari
                                 W. Douglas Kari
                                 Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2015, a true and correct copy of the **Brief of**

**Association of Service and Computer Dealers International, Inc. and Owners'**

**Rights Initiative as Amici Curiae in Support of Appellant on the Issue of Patent**

**Exhaustion** was caused to be served on the below-listed counsel by CM/ECF and

email:

Timothy Colin Meece
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Chicago, IL 60606
tmeece@bannerwitcoff.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Benjamin Beaton
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005
bbeaton@sidley.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Audra Carol Eidem Heinze
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Chicago, IL 60606
aheinze@bannerwitcoff.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Steven B. Loy
Stoll, Keenon & Park, LLP
300 West Vine Street
Suite 2100
Lexington, KY 40507-1380
steven.loy@skofirm.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Bryan Medlock Jr.
Banner & Witcoff, Ltd.
Suite 3000
Ten South Wacker Drive
Chicago, IL 60606
bmedlock@bannerwitcoff.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Jason Steven Shull, Attorney
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Chicago, IL 60606
jshull@bannerwitcoff.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Constantine L. Trela Jr., Esq., -
Sidley Austin LLP
Bank One Plaza
1 South Dearborn Street
Chicago, IL 60603
ctrela@sidley.com
Attorneys for Plaintiff-Cross-Appellant Lexmark International, Inc.

Edward F. O'Connor I, Esq., Attorney
Avyno Law, P.C.
Suite 190
6345 Balboa Boulevard
Encino, CA 91316
eoconnor@avynolaw.com
Attorneys for Defendant-Appellant Impression Products, Inc.

Kristin Leigh Yohannan Moore
Cadwalader, Wickersham & Taft LLP
700 6th Street NW
Washington, DC 20001
kristin.yohannan@cwt.com
Attorneys for Amicus Curiae American Intellectual Property Law Association

Tihua Huang, Esq., -
Cadwalader, Wickersham & Taft LLP
700 6th Street NW
Washington, DC 20001
Tihua.Huang@cwt.com
Attorneys for Amicus Curiae American Intellectual Property Law Association

Lisa K. Jorgenson, Esq., -
American Intellectual Property Law Association
241 18th Street, South
Suite 700
Arlington, VA 22202
ljorgenson@aipla.org
Attorney for Amicus Curiae American Intellectual Property Law Association

Melissa N. Patterson, Attorney
Department of Justice
Appellate Staff, Civil Division
Room 7230
950 Pennsylvania Avenue, NW
Washington, DC 20530
melissa.patterson@usdoj.gov
Attorneys for Amicus Curiae United States of America

Mark R. Freeman, Attorney
Department of Justice
Appellate Staff, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
mark.freeman2@usdoj.gov
Attorneys for Amicus Curiae United States of America

Seth David Greenstein
Constantine Cannon LLP
Suite 1300N
1001 Pennsylvania Avenue, NW
Washington, DC 20004
sgreenstein@constantinecannon.com
Attorneys for Amicus Curiae International Imaging Technology Council
and Amicus Curiae Auto Care Association

I hereby certify that I am over the age of 18 years and not a party to this case and that on June 19, 2015, I caused a true and correct copy of the **Brief of Association of Service and Computer Dealers International, Inc. and Owners' Rights Initiative as Amici Curiae in Support of Appellant on the Issue of Patent Exhaustion** to be served on the below-listed counsel by United States Mail, postage prepaid:

Margreth Barrett
Amicus Curiae
University of California - Hastings College of Law
PO Box 347
The Sea Ranch, CA 95497

Frederick M. Abbott
Amicus Curiae
Florida State University College of Law
425 West Jefferson Street
Tallahassee, FL 32301


Dated:  June 19, 2015                    /S/ W. Douglas Kari
                                         W. Douglas Kari
                                         Counsel for *Amici Curiae*