**2014-1617, -1619**

In The
# United States Court of Appeals
### For The Federal Circuit

**LEXMARK INTERNATIONAL, INC.,**

*Plaintiff – Cross-Appellant*,

v.

**IMPRESSION PRODUCTS, INC.,**

*Defendant – Appellant,*

**QUALITY CARTRIDGES, INC., JOHN DOES, 1-20, BLUE TRADING LLC, EXPRINT INTERNATIONAL, INC., LD PRODUCTS, INC., PRINTRONIC CORPORATION, TESEN DEVELOPMENT (HONG KONG) CO. LTD., BENIGNO ADEVA AND HIS COMPANIES,**

*Defendants.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
IN CASE NO. 1:10-CV-00564-MRB, JUDGE MICHAEL R. BARRETT.**

---

**BRIEF OF *AMICUS CURIAE* CONEJO VALLEY BAR ASSOCIATION
IN SUPPORT OF NEITHER PARTY**

---

M. Kala Sarvaiya
Steven C. Sereboff
SoCal IP Law Group LLP
310 North Westlake Boulevard, Suite 120
Westlake Village, California  91362
(805) 230-1350 (Telephone)
(805) 230-1355 (Facsimile)
ksarvaiya@socalip.com
ssereboff@socalip.com

*Counsel for Amicus Curiae*

THE LEX GROUP^DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# CERTIFICATE OF INTEREST

Counsel for *amicus* Conejo Valley Bar Association certifies:

1. The full name of every party or *amicus* represented by me is: Conejo Valley Bar Association.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: not applicable.

3. All parent corporations and any publicly held corporations that own 10 percent or more of the stock of the party or *amicus curiae* represented by me are: not applicable.

4. The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court are: Steven C. Sereboff, M. Kala Sarvaiya, Marina Lang, SoCal IP Law Group LLP.

June 19, 2015                                     /s/ M. Kala Sarvaiya
                                                               M. Kala Sarvaiya, Esq.

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................... i

TABLE OF CONTENTS .............................................................................. ii

TABLE OF AUTHORITIES ....................................................................... iii

INTEREST OF THE *AMICUS CURIAE* ..................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 3

ARGUMENT ................................................................................................ 4

    I.    The First Sale Doctrine for Patents Should Not Be Limited to Transactions within the United States ....................... 5

        a.    The First Sale Doctrine for Copyrights is Applied on Any Lawful Sale of the Copyrighted Work ................ 5

        b.    A Geographical Limitation on the First Sale Doctrine for Patents could Unjustly Enrich a Patent Owner beyond the Intended Scope of Protection ...................................................................... 7

    II.    Post-Sale Restrictions Should Exhaust the Patent Owner's Rights ................................................................... 10

CONCLUSION .......................................................................................... 11

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Jazz Photo Corp. v. International Trade Commission*,
    264 F.3d 1094 (Fed. Cir. 2001) ................................................... *passim*

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    133 S. Ct. 1351 (2012) ............................................................... 1, 3, 6

*Mallinckrodt, Inc. v. Medi-part, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992) ................................................. 1-2, 10, 11

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U.S. 617 (2008) ............................................................................ 1

**STATUTES**

17 U.S.C. § 106 .................................................................................... 6

17 U.S.C. § 109 .................................................................................... 6

35 U.S.C. § 271 .................................................................................... 7

**RULES**

Fed. Cir. L. R. 29 ................................................................................. 1

Fed. R. App. P. 29 ............................................................................... 1

**Brief of *Amicus Curiae*
Conejo Valley Bar Association
In Support of Neither Party[1]**

**INTEREST OF THE *AMICUS CURIAE***

The Conejo Valley Bar Association hereby submits this *amicus curiae* brief in the above-captioned case under Federal Rule of Appellate Procedure and Federal Circuit Rule 29. The Court, in a *sua sponte* hearing *en banc* order dated 4/14/2015, indicated that other briefs would be entertained without consent and leave of court. This *amicus* brief addresses both issues:

1. The case involves certain sales, made abroad, of articles patented in the United States. In light of *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2012), should this court overrule *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), to the extent it ruled that a sale of a patented item outside the United States never gives rise to United States patent exhaustion?

2. The case involves (i) sales of patented articles to end users under a restriction that they use the articles once and then return them and (ii) sales of the same patented articles to resellers under a restriction that resales take place under the single-use-and-return restriction. Do any of those sales give rise to patent exhaustion? In light of *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), should this court overrule *Mallinckrodt, Inc. v. Medi-*

---

[1] Pursuant to Federal Rule of Appellate Procedure, Amicus states that no counsel for a party authorized this brief in whole or in part and that no person or entity other than Amicus, its members, and its counsel contributed monetarily to the preparation or submission of this brief. With the consent of the parties, the Conejo Valley Bar Association submits this amicus curiae brief in support of neither party.

1

>    *part, Inc.*, 976 F.2d 700 (Fed. Cir. 1992), to the extent it ruled that a sale of a patented article, when the sale is made under a restriction that is otherwise lawful and within the scope of the patent grant, does not give rise to patent exhaustion?

Based in the heart of Southern California's 101 Technology Corridor, the Conejo Valley Bar Association draws its membership from local law firms and in-house attorneys serving small, mid-market and large companies. Our members' clients are predominantly high tech, high growth companies in fields such as software, biotech, computer networking, telecommunications and semiconductors. Our members' clients are innovators who vend in some of the world's most competitive markets.

When public policies of the patent system are at issue, the Conejo Valley Bar Association regularly participates as *amicus curiae* in cases before the Court and *en banc* panels of the Court of Appeals for the Federal Circuit. We are unconcerned with the outcome of the cases, though decidedly concerned about the issues. We wish to see the American public benefit from innovation, from technical disclosure, and from competition in product and service markets. In short, we support the purpose of the patent system. The Conejo Valley Bar Association believes that the patent laws should be interpreted in ways that best serve these important public policies.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The underlying purpose of intellectual property law is to encourage the development of innovative ideas that provide value and benefit for society. Copyrights and patents exist to provide inventors with exclusive rights to their writings and discoveries. In exchange for an inventor's innovative ideas, the inventor gets ownership of the commercialization of an idea. This ownership right is not absolute, but rather comes with certain limitations.

In copyright and patent law, one such limitation relates to the exhaustion of a copyright or patent owner's rights after a lawful first sale of the protected work. This limitation exists to prevent an owner's right to control all future sales of the protected work. While both copyright law and patent law recognize the first sale doctrine, the case law has diverged from applying the doctrine in the same manner to both types of property right holders.

The first sale doctrine as it relates to copyrights is applied to any lawful sale of the copyrighted work, regardless of where the sale occurred.[2] In other words, a lawful sale of a copyrighted work that occurred anywhere outside of the United States would exhaust the copyright owner's right to

---

[2] *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2012)

assert his copyright in that protected work. In contrast, the first sale doctrine as it relates to patents has been seen to be limited to only those sales that have occurred in the United States.[3] The courts have applied the doctrine differently in part due to the statutory language of the respective acts. However, the Patent Act does not explicitly state that the first sale doctrine be confined to a geographic limitation. The interest of the public is best served by rejecting a geographic limitation for the doctrine and applying the first sale doctrine uniformly for sales of copyrighted or patented works.

## ARGUMENT

The public policy for the first sale doctrine of copyright law and the patent exhaustion doctrine is the same – namely, to provide a reasonable limit on a rights-owner's ability to control future sales. Yet while the public policy is the same, the application of the doctrine has been varied significantly. The difference in application of the doctrine in the patent context risks patent owners having control of future sales, which runs opposite to the intended purpose of the first sale doctrine. Therefore, the first sale doctrine as it relates to patents, should be applied to any lawful sale of

---

[3] *Jazz Photo Corp. v. International Trade Commission,* 264 F.3d 1094 (Fed. Cir. 2001).

the patented work, regardless of the location of where the transaction occurred.

### I.　The First Sale Doctrine for Patents Should Not Be Limited to Transactions within the United States

In recent years, technological innovations have increased the ability for consumers to participate in a global marketplace. For example, consumers residing in France can purchase items from online stores that are operated outside of France. This advancement provides consumers greater access to products located outside of their geographic location. In some instances, as with copyrighted works, products protected with a United States patent can lawfully be purchased from geographic locations outside of the United States. A potential loophole may arise in these instances if the first sale doctrine is limited to the geographic location of where the sale occurred. Such a loophole could unjustly enrich a patent owner because it would permit a patent owner to potentially benefit from a lawful sale outside of the United States, while also benefiting further downstream with future purchasers of the product.

### a.　The First Sale Doctrine for Copyrights is Applied on Any Lawful Sale of the Copyrighted Work

The Copyright Act grants a copyright owner certain "exclusive rights" including the right "to distribute copies of the copyrighted work to the public

5

by sale or other transfer of ownership."[4] These rights are limited by statute to doctrines including the fair use doctrine and the first sale doctrine. The first sale doctrine, 17 U.S.C. § 109, states:

> Notwithstanding the provisions of section §106(3) the section that grants the owner exclusive distribution rights, the owner of a particular copy or phonorecord lawfully made under this title . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.[5]

This section states that once a copyrighted work has been lawfully sold, the purchaser of the copyrighted work can sell or distribute that copyrighted work in any manner that the purchaser wants. The Supreme Court, in *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013), held that the sale of a copyrighted work outside the United States still exhausts a copyright owner's rights under the first sale doctrine. In *Kirtsaeng.* the Court noted that the statute and legislative intent favored a non-geographical interpretation of the first sale doctrine because the statute nowhere specifically included a geographic limitation.

---

[4] 17 U.S.C. § 106.
[5] 17 U.S.C. § 109.

6

### b. A Geographical Limitation on the First Sale Doctrine for Patents could Unjustly Enrich a Patent Owner beyond the Intended Scope of Protection

While the non-geographical interpretation of the first sale doctrine for copyrights is well established, such is not the case for the patent exhaustion doctrine. Contrary to the first sale doctrine for copyrights, the Court in *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), held that in order to invoke the first sale doctrine for patents, the authorized first sale must have occurred within the United States. The Court's reasoning was that a foreign sale of a patented product did not relieve the purchaser of the need to obtain a license if that patented product was then imported back into the United States, otherwise the purchaser could be liable for infringement under 35 U.S.C. § 271.

Yet, requiring the sale of a patented product to occur in the United States in order to assert the first sale doctrine runs the risk that the patent owner can control all future sales or distributions of its patented product, despite having chosen not to obtain patents outside of the United States. Such would create the rather bizarre outcome that a product authorized on one side of the border becomes unauthorized on the other. This has granted the patent owner an even greater exclusive right than that intended under the patent right.

We recognize that this divergence in the application of the doctrine occurred in part because the scope of a United States patent is limited to the United States. Therefore, arguably, the sale of a product covered by a United States patent that occurs outside the U.S. is not a lawful sale. Yet, as of May 13, 2015, inventors may now apply for an International Design Patent through the Hague Agreement which permits an international application designating member countries that participate in the Hague Agreement. For any patent owners who own such an international design patent, there would be no basis to impose a geographic limitation on the transaction. Further, the risk of allowing a patent owner to maintain control of future sales of a patented product appears to be a loophole that can create far-reaching implications, beyond the intended scope of the patent right.

For example, imagine a patent owner who owns a United States patent for a bicycle. The patent owner may offer an exclusive license to a distributor in Asia to distribute the protected bicycle in certain territories. A consumer lawfully purchases the protected bicycle from the distributor, and eventually imports the protected bicycle back into the United States. In this example, the purchaser of the protected bicycle would risk a claim of infringement by the patent owner when he imports the protected bicycle back into the United States because he initially purchased the protected

bicycle outside of the United States. However, since he purchased it from an exclusive licensee, it should be considered an authorized, lawful first sale. The purchaser should be allowed to assert the first sale doctrine since he purchased the product from an authorized distributor and it constitutes a lawful sale. Yet, under the first sale doctrine as it stands now, the purchaser will not be able to use the first sale doctrine because the sale occurred outside of the United States. The patent owner in this instance may benefit multiple times from the commercialization from the product, as the patent owner may receive compensation from the exclusive licensee as well as the purchaser.

This scenario highlights that requiring a geographical limitation for the patent exhaustion doctrine can allow a patent owner to control future sales and distributions of a patented product, *even after an arguably lawful first sale*. As more and more transactions occur across geographic lines, such an interpretation may result in unjustly compensating a patent owner.

Therefore, as with copyright law, the patent exhaution doctrine also should reject any geographical limitation and should permit the applicability of the first sale doctrine as long as the first sale was a lawful sale, regardless of where the sale occurred. If the first sale was not a lawful sale, then the importation of the patented product should constitute infringement for which

a patent owner can assert his patent rights. For example, in the example used above regarding a patented bicycle product, if a purchaser had purchased the product from an unauthorized distributor outside of the United States, then the sale would not constitute a lawful sale. As such, the patent owner could assert his rights if the patented product was imported back into the United States. However, if the first sale was a lawful sale, then the patent owner's rights should be exhausted with that first sale, regardless of where the sale occurred. Accordingly, the Court should overturn *Jazz Photo* and hold that the first sale doctrine be applied uniformly for copyrights and patents by foregoing any geographical restriction on application of the doctrine.

## II.  Post-Sale Restrictions Should Exhaust the Patent Owner's Rights

This Court previously held in *Mallinckrodt, Inc. v. Medi-part, Inc.*,[6] that a post-sale restriction on a single-use device sold to hospitals did not exhaust the patent owner's rights. The Court held that private parties may contract certain conditions of a sale, and as long as the restrictions do not increase the scope of the patent right, then the restriction is enforceable and does not exhaust the patent owner's rights.

---

[6] 976 F.2d 700 (Fed. Cir. 1992).

However, post-sale restrictions pose the risk of creating a loophole through which patent owners can control the downstream distribution of a patented product. Patent owners who impose post-sale restrictions do so typically to control future sales of the product after an authorized first sale. Such control, when applied to products lawfully obtained, seem beyond the scope of the intended purpose of a patent right. As such, as with the geographical limitations, these post-sale restrictions on products that were lawfully obtained, should give rise to patent exhaustion. Post-sale restrictions often times are imposed to allow a patent owner to control the downstream distribution of the protected product. This would go beyond the intended purpose of the right granted to the patent owner. Therefore, this Court should overturn *Mallinckrodt*, and hold that post-sale restrictions exhaust a patent owner's rights in the product.

## CONCLUSION

In sum, geographical limitations and post-sale restrictions both risk allowing a patent owner to control future sales of a patented product, even after an authorized first sale. For the foregoing reasons, we, the Conejo Valley Bar Association, urge the Court to overturn *Jazz Photo* and *Mallinckrodt*, as both of these holdings create a risk that the scope of patent protection will be extended beyond its intended scope.

Respectfully submitted,

/s/ M. Kala Saraiya
M. Kala Sarvaiya
Steven C. Sereboff
SoCal IP Law Group LLP
310 N Westlake Blvd., Ste. 120
Westlake Village, CA 91362
(805) 230-1350
(805) 230-1355 (Facsimile)
ksarvaiya@socalip.com
ssereboff@socalip.com

COUNSEL FOR AMICUS CURIAE CONEJO VALLEY BAR ASSOCIATION

June 19, 2015

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 19th day of June, 2015, I caused this Brief of *Amicus Curiae* Conejo Valley Bar Association in Support of Neither Party to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Edward F. O'Connor, I
AVYNO LAW, P.C.
6345 Balboa Boulevard, Suite 190
Encino, California  91316
(949) 291-2894
eoconnor@avynolaw.com

*Counsel for Defendant – Appellant*

Timothy Colin Meece
Audra Carol Eidem Heinze
Bryan Medlock, Jr.
Jason Steven Shull
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Chicago, Illinois  60606
(312) 463-5420
tmeece@bannerwitcoff.com
aheinze@bannerwitcoff.com
bmedlock@bannerwitcoff.com
jshull@bannerwitcoff.com

Benjamin Beaton
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
bbeaton@sidley.com

Steven B. Loy
STOLL, KEENON & PARK, LLP
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000
steven.loy@skofirm.com

Constantine L. Trela, Jr.
SIDLEY AUSTIN LLP
Bank One Plaza
1 South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000
ctrela@sidley.com

*Counsel for Plaintiff – Cross-Appellant*

Any counsel for Amici Curiae appearing at the time of this filing will be served via the email notice from the CM/ECF system. Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of *Amicus Curiae* Conejo Valley Bar Association in Support of Neither Party will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ M. Kala Saraiya
*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,456*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: June 19, 2015                    /s/ M. Kala Saraiya
                                        *Counsel for Amicus Curiae*