# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## 2014-1617, -1619

### LEXMARK INTERNATIONAL, INC.,

*Plaintiff-Cross-Appellant*,

v.

### IMPRESSION PRODUCTS, INC.,

*Defendant-Appellant,*

and

### QUALITY CARTRIDGES, INC., JOHN DOES, 1-20, BLUE TRADING LLC, EXPRINT INTERNATIONAL, INC., LD PRODUCTS, INC., PRINTRONIC CORPORATION, TESEN DEVELOPMENT (HONG KONG) CO. LTD., BENIGNO ADEVA AND HIS COMPANIES

*Defendants.*

Appeals from the United States District Court for the Southern District of Ohio in case No. 1:10-cv-00564-MRB, Judge Michael R. Barrett.

## BRIEF OF QUANTA COMPUTER INC. AND ACER INC. AS *AMICI CURIAE* SUPPORTING APPELLANT

Peter J. Wied
Vincent K. Yip
LEE TRAN & LIANG LLP
601 South Figueroa Street, Suite 3900
Los Angeles, CA 90017
Telephone No.: (213) 612-8900
Facsimile No.: (213) 612-3773

*Counsel for Amici Curiae*

June 19, 2015

## **CERTIFICATE OF INTEREST**

Counsel for Amici Curiae Quanta Computer, Inc. and Acer, Inc. certifies that:

1.      The full name of every party or amicus represented by me is:

Quanta Computer, Inc.

Acer, Inc.

2.      The name of the real party in interest is:  N/A

3.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

For Lee Tran & Liang LLP:

Peter J. Wied

Vincent K. Yip

Dated: June 19, 2015                          _____/s/ Peter J. Wied_____
                                                                Peter J. Wied

-ii-

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................. ii

STATEMENT OF RELATED CASES ................................................... vi

INTEREST OF AMICI CURIAE ........................................................... 1

INVITED QUESTIONS ....................................................................... 2

SUMMARY OF THE ARGUMENT ..................................................... 3

ARGUMENT ....................................................................................... 3

    A.    This Court Should Overrule *Jazz Photo* ............................... 3

        1.    The Holding of *Jazz Photo* is Inconsistent with *Kirtsaeng* ....... 3

        2.    The Holding of *Jazz Photo* is Not Mandated by Prior Supreme Court Precedent ........................................... 5

        3.    The Holding of *Jazz Photo* is Inconsistent with the Purpose of Patent Exhaustion ................................... 7

        4.    All Authorized Foreign Sales Should Exhaust ......................... 8

    B.    This Court Should Overrule *Mallinckrodt* .......................... 11

CONCLUSION .................................................................................. 16

CERTIFICATE OF SERVICE .......................................................... 17

CERTIFICATE OF COMPLIANCE .................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams v. Burke*, 84 U.S.,
    *(17 Wall.) 453 (1873)* .................................................................. 12

*Bloomer v. McQuewan*,
    *55 U.S. 14 How. 539 (1852)* ..................................................... 12

*Boesch v. Graff*,
    133 U.S. 697 (1890) ................................................................. 5, 6

*General Talking Pictures Corp. v. Western Electric Co.*,
    304 U.S. 175 (1938) ............................................................... 12, 13

*Harkness v. Russell*,
    118 U.S. 663 (1886) .................................................................. 14

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp., Inc.*,
    123 F.3d 1445 (Fed. Cir. 1997) ................................................. 11

*Hobbie v. Jennison*,
    149 U. S. 355 ............................................................................. 12

*Jazz Photo Corp. v. International Trade Commission*,
    264 F.3d 1094 (Fed. Cir. 2001) ......................................... passim

*Keeler v. Standard Folding Bed Co.*,
    157 U. S. 659 ........................................................................ 12, 14

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    133 S. Ct. 1351 (2013) ....................................................... passim

*Lifescan Scotland v. Shasta Techs.*,
    734 F.3d 1361 (Fed. Cir. 2013) ....................................... 4, 9, 10

*Litecubes, LLC v. N. Light Prods.*,
    523 F.3d 1353 (Fed. Cir. 2008) ................................................... 7

*Mallinckrodt, Inc. v. Medipart, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992) ........................................... passim

*Mitchell v. Hawley*,
    83 U.S. (16 Wall.) 544 (1873) .............................................. 6, 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*,
  243 U.S. 502 (1917).......................................................................13, 14, 15

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
  553 U.S. 617 (2008)............................................................................ passim

*Straus v. Victor Talking Mach. Co.*,
  243 U.S. 490 (1917)........................................................................................4

*Tessera, Inc. v. Int'l Trade Comm'n*,
  646 F.3d 1357 (Fed. Cir. 2011) .........................................................4, 7, 15

*United States v. General Electric Co.*,
  272 U.S. 476 (1926)......................................................................................12

*United States v. Masonite Corp.*,
  316 U.S. 265 (1942)...............................................................................7, 9, 10

## UNREPORTED CASES

*SanDisk Corp. v. Round Rock Research LLC*,
  2014 WL 2700583 (N.D. Cal. June 13, 2014)................................................8

## <u>STATEMENT OF RELATED CASES</u>

Amici Curiae is unaware of any case before this or any other Court that will directly affect or be directly affected by this Court's decision in the current appeal.

# INTEREST OF AMICI CURIAE[1]

Quanta Computer Inc. is a computer manufacturer, and was the petitioner in the case *Quanta Computer, Inc. v. LG Electronics, Inc*., 553 U.S. 617 (2008) .  In the course of its business, it both purchases and sells products that embody U.S. patents.  It conducts business throughout the world, and with companies located in many different countries.  Likewise, Acer Inc. is a consumer electronics manufacturer based in Taiwan that conducts business throughout the world.  Knowing with certainty when U.S. patent rights are or are not applicable due to the doctrine of patent exhaustion is important in allowing Quanta and Acer to structure their business activities to avoid both unnecessary transaction costs and improper claims of patent infringement.

Furthermore, both Quanta and Acer are licensees under various licenses to U.S. Patents that give them a worldwide right to sell products.  Quanta and Acer have a strong interest in knowing that their customers are protected from patent infringement claims by those worldwide licenses and the doctrine of patent exhaustion.

---

[1] No counsel for any party authored this brief in whole or in part; no such counsel or party made a monetary contribution intended to fund its preparation or submission; and no person other than amici and their counsel made such a contribution.  The filing of this brief is authorized pursuant to the Court's April 14, 2015 Sua Sponte Hearing En Banc Order.

## <u>INVITED QUESTIONS</u>

(a) The case involves certain sales, made abroad, of articles patented in the United States.  In light of *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013), should this court overrule *Jazz Photo Corp. v. International Trade Commission*, 264 F.3d 1094 (Fed. Cir. 2001), to the extent it ruled that a sale of a patented item outside the United States never gives rise to United States patent exhaustion?

(b) The case involves (i) sales of patented articles to end users under a restriction that they use the articles once and then return them and (ii) sales of the same patented articles to resellers under a restriction that resales take place under the single-use-and-return restriction.  Do any of those sales give rise to patent exhaustion?  In light of *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), should this court overrule *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992), to the extent it ruled that a sale of a patented article, when the sale is made under a restriction that is otherwise lawful and within the scope of the patent grant, does not give rise to patent exhaustion?

## SUMMARY OF THE ARGUMENT

This Court should overrule *Jazz Photo*. Patent exhaustion derives from the same common law origin as the first sale doctrine in copyright law. The Supreme Court's recent clarification in *Kirtsaeng* that there was no geographical limitation under common law should apply equally to patent law. Moreover, the original *Jazz Photo* decision was based on an overly expansive reading of Supreme Court precedent and is inconsistent with the principles underlying patent exhaustion.

This Court should also overrule *Mallinckrodt*. Both *Quanta* and earlier cases make clear that once an authorized sale is made, patent rights may no longer be asserted against the item sold. Instead, contract law provides the appropriate remedy (if any). The analysis of Supreme Court precedent which underlies the *Mallinckrodt* decision is inconsistent with the analysis of those cases by the Supreme Court in *Quanta*.

## ARGUMENT

### A.    This Court Should Overrule *Jazz Photo*

#### 1.    The Holding of *Jazz Photo* is Inconsistent with *Kirtsaeng*

Although *Kirtsaeng* dealt with statutory interpretation and copyrights, the theoretical basis of *Kirtsaeng* suggests that overseas sales can lead to patent

exhaustion.  In construing the statutory provision in question, the Court noted that the statute was presumed not to have altered the previously existing common law. 133 S.Ct. at 1363.  The first sale doctrine in copyright, the Court observed, traces back to the common law prohibition against restraints on the alienation of chattels. *Id*. (citing Lord Coke).

The doctrine of patent exhaustion likewise traces back to attempts to "place restraints upon its further alienation, such as have been hateful to the law from Lord Coke's day to ours." *Straus v. Victor Talking Mach. Co*., 243 U.S. 490, 500-01 (1917).  This prohibition of postsale restrictions on the use of an article is "the fundamental purpose of patent exhaustion." *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011).

This Court has recognized that the first sale doctrine in copyright law is "comparable to the patent exhaustion doctrine" and the Supreme Court's discussion of copyright's common law roots was relevant to the application of patent exhaustion.  *Lifescan Scotland v. Shasta Techs.*, 734 F.3d 1361, 1375-76 (Fed. Cir. 2013); *see also id*. at n.9 ("The Supreme Court has frequently explained that copyright cases inform similar cases under patent law.")  Although in *Lifescan* this Court looked to the *Kirtsaeng* decision in deciding whether patent exhaustion applies to gifts, there is no reasoned basis why the Supreme Court's decision would be relevant in that context, but not in the analysis of whether patent

exhaustion applies to overseas sales. *See id.* at 1376 ("Thus, the policy underlying the first sale doctrine draws no distinction between gifts and sales. The same policy undergirds the doctrine of patent exhaustion.")

As the Court noted in *Kirtsaeng*, "[t]he common-law doctrine makes no geographical distinctions." 133 S.Ct. at 1363. Since patent exhaustion derives from this same common law origin, there is no basis for the geographical distinction announced in *Jazz Photo*.

Even if *Jazz Photo's* statement that "the authorized first sale must have occurred under the United States patent" were correct, 264 F.3d at 1105, the Supreme Court has rejected the idea that "under" implies a geographical limitation. In *Kirtsaeng*, the Supreme Court interpreted the phrase "lawfully made under this title" in the Copyright Act. It concluded that "under this title" did not require the copyrighted material to have been created or initially sold in the United States. 133 S.Ct. at 1358. This suggests that a product can also be sold "under" a United States patent even if the initial sale does not take place in the United States.

## 2.   The Holding of *Jazz Photo* is Not Mandated by Prior Supreme Court Precedent

The rule announced in *Jazz Photo*, that sales outside of the United States can never give rise to patent exhaustion, was based upon an overly-expansive reading of *Boesch v. Graff*. *See Jazz Photo*, 264 F.3d at 1105 (citing

*Boesch*, 133 U.S. 697 (1890)).  In *Boesch*, the accused infringer purchased the infringing burners from a dealer in Germany.  Although the U.S. patent holder held a corresponding German patent, the dealer who sold the infringing burners was not licensed under either the German or U.S. patents.  However, the dealer was permitted under German law to continue selling the burners because it had made preparations to do so prior to the application for the German patent.  *Boesch*, 133 U.S. at 701-02.

      The Supreme Court's ruling did not turn upon the fact that the sales took place in Germany, but on the fact that they were made "without the license or consent of the owners of the United States patent." *Id*. at 702.  In short, there was never a sale authorized by the owner of the patent, either inside or outside of the United States.  The Supreme Court has consistently held that patent exhaustion does not apply when a sale is not authorized by the patentee.  *See Mitchell v. Hawley*, 83 U.S. (16 Wall.) 544 (1873) (allowing a patent infringement case to proceed where the seller had the right to make and use, but not sell, the patented machines).  *Boesch* did not create a geographic limitation on patent exhaustion, but simply followed the long-standing rule that an authorized sale is a necessary precursor to patent exhaustion.  *See Quanta*, 553 U.S. at 636 ("Exhaustion is triggered only by a sale authorized by the patent holder.")

### 3. The Holding of *Jazz Photo* is Inconsistent with the Purpose of Patent Exhaustion

A blanket prohibition of patent exhaustion is also inconsistent with the principle announced by the Supreme Court, and recognized by this Court in *Jazz Photo*, that "[t]he test has been whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article." *United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942); *Jazz Photo*, 264 F.3d at 1105 (quoting *Masonite*). Indeed, the Supreme Court "has quite consistently refused to allow the form into which the parties chose to cast the transaction to govern." *Masonite*, 316 U.S. at 278. Yet a rule which allows a patentee to avoid patent exhaustion by locating a sale outside of the United States is exactly the type of form over substance that the Supreme Court has refused to allow.

Finally, this Court has made clear that there is no mechanical test for determining the location of a sale. *See Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1369-71 (Fed. Cir. 2008). A doctrine of patent exhaustion that turns upon the "location" of the sale, therefore, "would cast a cloud of uncertainty over every sale," which is contrary to the purpose of patent exhaustion. *See Tessera*, 646 F.3d at 1370. Moreover, it would invite patentees to attempt to evade exhaustion by arranging to have the "location" of the sale classified as outside of the United

States.  Just as the Supreme Court rejected attempts by parties to structure transactions in *Quanta* and *Masonite* to avoid patent exhaustion, the territorial restriction imposed by *Jazz Photo* should likewise be rejected as defeating the purpose of patent exhaustion by leaving it unclear whether patent rights may be asserted against a later purchaser.

### 4.    <u>All Authorized Foreign Sales Should Exhaust</u>

There are two situations in which a sale outside the United States may be authorized by the owner of a U.S. Patent: 1) when the sale is made by a licensee with a worldwide license to the patent; or 2) when the sale is made by the owner of the patent.

Plaintiff-Cross-Appellant appears to acknowledge that the first situation could lead to patent exhaustion.  It notes the district court decision in *SanDisk Corp. v. Round Rock Research LLC*, 2014 WL 2700583 (N.D. Cal. June 13, 2014), which found patent exhaustion applied to overseas sales by a licensee with a worldwide license.  See Opening Brief at 52 n.16.  Plaintiff argues that *SanDisk* is distinguishable from the present case, because Lexmark did not grant any worldwide licenses.  The opinion in *Jazz Photo*, if upheld, would not allow for such a distinction.  Rather, this Court held in *Jazz Photo* that "United States patent rights are not exhausted by product of foreign provenance" without any reference to the circumstances of the overseas sale or the entity making it.  264 F.3d at 1105.

By attempting to distinguish *SanDisk* from the present case, Plaintiff thus implicitly recognizes that the holding of SanDisk may be correct, and that patent exhaustion should apply to sales outside the United States made by a worldwide licensee. Since this is contrary to the absolute bar of *Jazz Photo*, the rule as it presently stands should not be upheld.

Applying patent exhaustion to sales by a worldwide licensee is consistent with the Supreme Court's framing of the issue in *Masonite* as "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article." *Masonite*, 316 U.S. at 278. Where a patentee grants a worldwide license, such that the licensee has the choice whether to sell the patented product within or outside of the United States, the patentee has received its reward, regardless of which choice the licensee makes.

Likewise, in the situation where the patented item is sold directly by the patent owner rather than a licensee, it is clear that the patentee has received its reward for the use of the item. This Court has rejected the notion that a patentee could avoid patent exhaustion "by showing the absence or inadequacy of the patentee's reward in a transfer." *Lifescan*, 734 F.3d at 1375. Indeed, in *Lifescan*, patent exhaustion was held to apply even when the patentee had given away the patented item, and thus had received no direct "compensation" or "reward." *Id*. It

-9-

can hardly be argued that a patentee is adequately compensated when it gives away a patented product in the United States, but not when it sells it in another country.

The fact that a patentee may desire to sell an item at different prices in different markets does not mean it can later assert patent rights in an attempt to obtain a further "reward." *See id.* ("Where a patentee unconditionally parts with ownership of an article, it cannot later complain that the approach that it chose results in an inadequate reward and that therefore ordinary principles of patent exhaustion should not apply.")  The argument that a party should be able to charge different prices in different markets, and that thus a foreign sale might not reflect the full value of U.S. rights, was soundly rejected by the Supreme Court in *Kirtsaeng*.  It noted that Article I, Section 8 of the Constitution, the provision that authorizes the grant of both copyrights and patents, provides for a limited exclusive right.  "But the Constitution's language nowhere suggests that its limited exclusive right should include a right to divide markets or a concomitant right to charge different purchasers different prices…" 133 S.Ct at 1371; *see also Masonite*, 316 U.S. at 278 ("[T]he promotion of the progress of science and the useful arts is the 'main object' [of the patent system]; reward of inventors is secondary and merely a means to that end.")

If one were to accept the argument that overseas sales do not provide adequate compensation to a patentee for its U.S. patent rights, then all overseas

sales have an implied covenant not to use the product in the United States.  *Cf.*

*Lifescan*, 734 F.3d at 1375 n.8 (suggesting the amount of compensation may

indicate conditions upon the sale).  There is no basis for the imposition of such a

sweeping implied covenant into every foreign sale.  Even if a patentee charges

different prices under such an assumption, "a seller's intent, unless embodied in an

enforceable contract, does not create a limitation on the right of a purchaser to use,

sell, or modify a patented product." *Hewlett-Packard Co. v. Repeat-O-Type Stencil*

*Mfg. Corp., Inc.*, 123 F.3d 1445, 1453 (Fed. Cir. 1997).  Moreover, even if such a

restriction is embodied in an enforceable contract, the remedy lies in that contract,

not patent law, as will be seen below.

### B.    This Court Should Overrule *Mallinckrodt*

"The longstanding doctrine of patent exhaustion provides that the

initial authorized sale of a patented item terminates all patent rights to that item."

*Quanta*, 553 U.S. at 625.  Despite this "traditional bar on patent restrictions

following the sale of an item," *id*. at 628, this Court held in *Mallinckrodt* that a

patentee could place restrictions on the use of an item after sale so long as the

restriction did not constitute patent misuse.  The ruling in *Mallinckrodt* was based

on a misreading of prior Supreme Court precedent; the Court's explanation of

those cases in the subsequent *Quanta* decision makes that reasoning untenable.

Accordingly, this Court should overrule *Mallinckrodt*.

As the *Quanta* Court made clear, the question is whether there has been an authorized sale of the patented item. There can be no question that when a product is sold by the patentee itself, it has been "authorized by the patent holder." 553 U.S. at 636.

The *Mallinckrodt* Court relied, in part, on *General Talking Pictures Corp. v. Western Electric Co.*, 304 U.S. 175 (1938) and other cases that establish a patentee's right to grant restricted licenses. That analysis, however, conflates the ability of a patentee to restrict the rights of another to sell a patented product in the first instance, with the ability of a patentee to restrict the right of a party to use an item once sold. While the former is permissible, the latter is not. Indeed, the case that *General Talking Pictures* relies upon, *United States v. General Electric Co.*, 272 U.S. 476 (1926), states:

It is well settled, as already said, that, where a patentee makes the patented article and sells it, he can exercise no future control over what the purchaser may wish to do with the article after his purchase. It has passed beyond the scope of the patentee's rights. *Adams v. Burks*, 17 Wall. 453; *Bloomer v. McQuewan*, 14 How. 539; *Mitchell v. Hawley*, 16 Wall. 544; *Hobbie v. Jennison*, 149 U. S. 355; *Keeler v. Standard Folding Bed Co.*, 157 U. S. 659. But the question is a different one which arises when we consider what a patentee who

-12-

grants a license to one to make and vend the patented article may do

in limiting the licensee in the exercise of the right to sell.

*Id*. at 489-90.

Thus, in *General Talking Pictures*, patent exhaustion was found not to

apply because the seller was not licensed to sell to commercial users, and thus

there was no authorized sale. *See Quanta*, 553 U.S. at 636 ("The Court [in

*General Talking Pictures*] held that exhaustion did not apply because the

manufacturer had no authority to sell the amplifiers for commercial use.")  It was

not that the purchaser violated a restriction on the use of the patented item, but that

the seller was not authorized to sell to the purchaser in the first place.

In contrast, while LGE attempted to provide similar notices that

purported to limit the use of the patented items, the *Quanta* Court explained that

"Intel's authority to sell its products embodying the LGE Patents was not

conditioned on the notice or on Quanta's decision to abide by LGE's directions in

that notice."  *Id*. at 636-37.  When an article is sold in an authorized sale, the item

is "carried outside the monopoly of the patent law and rendered free of every

restriction which the vendor may attempt to put upon it."  *Id*. at 626 (quoting

*Motion Picture Patents Co. v. Universal Film Mfg. Co*., 243 U.S. 502, 516 (1917)).

There can be no question that when a patentee itself sells an item, it is

authorized to do so, no matter what "conditions" it seeks to impose upon the

-13-

purchaser. Thus, there is an authorized sale and patent rights can no longer be asserted with respect to that item. This is true whether the patentee is selling directly to a consumer, or to a reseller who then imposes "conditions" when the consumer purchases from them. The patentee's remedy (if any) lies in the contract governing the purchase.[2]

Some confusion in the application of patent exhaustion may arise from the reference to "a single, unconditional sale" in *Motion Picture Patents*. 243 U.S. at 516. A conditional sale, in the context in which the Supreme Court was writing, is "a mere agreement to sell upon a condition to be performed." *Harkness v. Russell*, 118 U.S. 663, 666 (1886). In other words, in a conditional sale title did not transfer until the condition was satisfied.

Not applying patent exhaustion to such conditional sales is consistent with the common law "first sale" doctrine, which allowed for restrictions on use if title had not yet passed or if there were the possibility that title would revert to the

---

[2] *See Keeler v. Standard Folding-Bed Co.*, 157 U.S. 659, 666 (1895) ("[O]ne who buys patented articles of manufacture from one authorized to sell them becomes possessed of an absolute property in such articles, unrestricted in time or place. Whether a patentee may protect himself and his assignees by special contracts brought home to the purchasers is not a question before us, and upon which we express no opinion. It is, however, obvious that such a question would arise as a question of contract, and not as one under the inherent meaning and effect of the patent laws.")

seller. *See Kirtsaeng*, 133 S.Ct. at 1363. But a condition precedent should not be conflated with a post-sale restriction.

To allow an attempt to place restrictions on use to convert a sale into a "conditional" sale would render the first sale doctrine a nullity. For example, if the notice attached to the film projector in the *Motion Picture Patents* case made the sale "conditional", then patent exhaustion would not apply, even though the very purpose of the patent exhaustion doctrine is to prevent the enforcement of the noticed restriction.

With that understanding, it is clear that sales where the transfer of title is complete (such as in this case) are not conditional, and any attempt to impose restrictions on use during the purchase does not change the nature of the sale. This is consistent with this Court's recognition that, unlike a condition precedent which is the hallmark of a conditional sale, a condition subsequent does not operate to "convert initial authorized sales into unauthorized sales for purposes of patent exhaustion." *Tessera*, 646 F.3d at 1370.

In addition to being inconsistent with the reasoning of *Quanta* and other Supreme Court precedent, the rule under the *Mallinckrodt* case is inconsistent with the "the fundamental purpose of patent exhaustion—to prohibit postsale restrictions on the use of a patented article." *Tessera*, at 1370; *see also Quanta*, 553 U.S. at 638 ("The authorized sale of an article that substantially

-15-

embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article."). Preventing the "cloud of uncertainty" over every non-US sale of a patented item is consistent with multiple Supreme Court precedents and enhances clarity and efficiency for many sales occurring daily in the global marketplace.

## CONCLUSION

For the aforementioned reasons, this Court should overrule its holdings in *Jazz Photo* and *Mallinckrodt*.

Respectfully submitted,

Dated: June 19, 2015                LEE TRAN & LIANG LLP

/s/ Peter J. Wied
Peter J. Wied
Vincent K. Yip
Lee Tran & Liang LLP
601 S. Figueroa St., Suite 3900
Los Angeles, CA 90017

Counsel for Amici Curiae
Quanta Computer, Inc. and
Acer Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing document upon counsel of record by operation of the Court's CM/ECF system on June 19, 2015.

Dated: June 19, 2015

        /s/ Peter J. Wied
Peter J. Wied

# **CERTIFICATE OF COMPLIANCE**

Counsel for Amici Curiae Quanta Computer, Inc. and Acer Inc. certifies that the foregoing brief complies with the type-volume limitations of the Federal Rules of Appellate Procedure 29(d).  According to the word count of the word-processing system used to prepare this brief, there are 3,661 words in this brief pursuant to the Court's rules of counting.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 19, 2015                                      /s/ Peter J. Wied
                                                                   Peter J. Wied